JS 44 (Rev. 12/07) (cand rev 1-16-08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

## I. (a) PLAINTIFFS

Paul Jones

## DEFENDANTS

R. Horel, G. Stewart, K. Brandon

**(b)** County of Residence of First Listed Plaintiff  Del Norte County
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

In pro se

Attorneys (If Known)

Erin Sullivan, Deputy Attorney General (State Bar #242757)
Office of the Attorney General
Correctional Law Section

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [ ] 1  U.S. Government Plaintiff
- [X] 3  Federal Question (U.S. Government Not a Party)
- [ ] 2  U.S. Government Defendant
- [ ] 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business in This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

### CONTRACT
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

### REAL PROPERTY
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

### TORTS
**PERSONAL INJURY**
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury

**PERSONAL INJURY**
- [ ] 362 Personal Injury— Med. Malpractice
- [ ] 365 Personal Injury — Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

### CIVIL RIGHTS
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 444 Welfare
- [ ] 445 Amer. w/Disabilities – Employment
- [ ] 446 Amer. w/Disabilities – Other
- [ ] 440 Other Civil Rights

### PRISONER PETITIONS
- [ ] 510 Motions to Vacate Sentence
Habeas Corpus:
- [ ] 530 General
- [ ] 535 Death Penalty
- [ ] 540 Mandamus & Other
- [X] 550 Civil Rights
- [ ] 555 Prison Condition

### FORFEITURE/PENALTY
- [ ] 610 Agriculture
- [ ] 620 Other Food & Drug
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 630 Liquor Laws
- [ ] 640 R.R. & Truck
- [ ] 650 Airline Regs.
- [ ] 660 Occupational Safety/Health
- [ ] 690 Other

### LABOR
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Mgmt. Relations
- [ ] 730 Labor/Mgmt.Reporting & Disclosure Act
- [ ] 740 Railway Labor Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Empl. Ret. Inc. Security Act

### IMMIGRATION
- [ ] 462 Naturalization Application
- [ ] 463 Habeas Corpus – Alien Detainee
- [ ] 465 Other Immigration Actions

### BANKRUPTCY
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 840 Trademark

### SOCIAL SECURITY
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

### FEDERAL TAX SUITS
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit
- [ ] 490 Cable/Sat TV
- [ ] 810 Selective Service
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 875 Customer Challenge 12 USC 3410
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 892 Economic Stabilization Act
- [ ] 893 Environmental Matters
- [ ] 894 Energy Allocation Act
- [ ] 895 Freedom of Information Act
- [ ] 900 Appeal of Fee Determination Under Equal Access to Justice
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN (Place an "X" in One Box Only)

- [ ] 1 Original Proceeding
- [X] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 U.S.C. Section 1983, United States Constitution

Brief description of cause:
Plaintiff alleges violations of his 1st, 8th, and 14th Amendment rights.

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes [X] No

## VIII. RELATED CASE(S) IF ANY

PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)

- [ ] SAN FRANCISCO/OAKLAND
- [ ] SAN JOSE

DATE  8/26/08

SIGNATURE OF ATTORNEY OF RECORD  Erin Sullivan

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:   **P. Jones v. Horel, et al.**

No.:

     (Del Norte Superior Court Case No. CVUJ 06-1359)

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made.  I am 18 years of age or older and not a party to this matter.  I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service.  In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On **August 26, 2008**, I served the attached

### CIVIL COVER SHEET

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA  94102-7004, addressed as follows:

**Paul Jones, B-26077**
**Pelican Bay State Prison**
**P.O. Box 7000**
**Crescent City, CA  95531-7000**
Pro Per

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on **August 26, 2008**, at San Francisco, California.

| | |
|---|---|
| J. Palomino | _(signature)_ |
| Declarant | Signature |

20135995.wpd

1 | EDMUND G. BROWN JR.
Attorney General of the State of California
2 | DAVID S. CHANEY
Chief Assistant Attorney General
3 | ROCHELLE C. EAST
Senior Assistant Attorney General
4 | JONATHAN L. WOLFF
Supervising Deputy Attorney General
5 | ERIN SULLIVAN, State Bar No. 242757
Deputy Attorney General
6 |   455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
7 |   Telephone: (415) 703-5716
Fax: (415) 703-5843
8 |   E-mail: Erin.Sullivan@doj.ca.gov

9 | Attorneys for Defendants G. Stewart, K. Brandon, and
R. Horel

10

11

                        SUPERIOR COURT OF CALIFORNIA

12

                           COUNTY OF DEL NORTE

13

14

15 | **PAUL JONES,**                               CASE NO. CVUJ 06-1359

16 |                       Plaintiff,      (United States District Court,
Northern District of California
17 |         v.                    Case No. _____)

18 | **HOREL, et al.,**                  **NOTICE TO COURT AND TO
ADVERSE PARTY OF**
19 |                  Defendants.   **REMOVAL TO FEDERAL
COURT**

20

21

22 | TO THE CLERK OF THE SUPERIOR COURT AND TO PLAINTIFF:

23 |      PLEASE TAKE NOTICE that Defendants R. Horel, G. Stewart, and K. Brandon

24 | (Defendants) filed a Notice of Removal of this action on August 26, 2008 in the United States

25 | District Court, Northern District of California, Case No. _____.

26 | ///

27 | ///

28 | ///

                                  1

1    A copy of the Notice of Removal is attached to this Notice.

2        Dated:  August 26, 2008

3                                                Respectfully submitted,

4                                                EDMUND G. BROWN JR.
                                                 Attorney General of the State of California

5                                                DAVID S. CHANEY
                                                 Chief Assistant Attorney General

6
                                                 ROCHELLE C. EAST
7                                                Senior Assistant Attorney General

                                                 JONATHAN L. WOLFF
8                                                Supervising Deputy Attorney General

9                                                *Erin Sullivan*

10
                                                 ERIN SULLIVAN
11                                               Deputy Attorney General
                                                 Attorneys for Defendants G. Stewart, K.
12                                               Brandon, and R. Horel

13

14    20131406.wpd
      SF2008200411
15

16

17

18

19

20

21

22

23

24

25

26

27

28

Not. Ct. & Adverse Party of Removal to Fed. Ct.          *Jones v. Horel, et al.*, Case No. CVUJ 06-1359.

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:   **P. Jones v. Horel, et al.**

No.: **CVUJ 06-1359**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On **August 26, 2008,** I served the attached

### NOTICE TO COURT AND TO ADVERSE PARTY OF REMOVAL TO FEDERAL COURT

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102-7004, addressed as follows:

**Paul Jones, B-26077**
**Pelican Bay State Prison**
**P.O. Box 7000**
**Crescent City, CA 95531-7000**
Pro Per

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on **August 26, 2008,** at San Francisco, California.

_____
J. Palomino
Declarant

_____
Signature

20136127.wpd

# ATTACHMENT

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DAVID S. CHANEY
   Chief Assistant Attorney General
3  ROCHELLE C. EAST
   Senior Assistant Attorney General
4  JONATHAN L. WOLFF
   Supervising Deputy Attorney General
5  ERIN SULLIVAN, State Bar No. 242757
   Deputy Attorney General
6    455 Golden Gate Avenue, Suite 11000
     San Francisco, CA  94102-7004
7    Telephone: (415) 703-5716
     Fax: (415) 703-5843
8    Email: Erin.Sullivan@doj.ca.gov

9  Attorneys for Defendants G. Stewart, K. Brandon, and
   R. Horel

10

11              IN THE UNITED STATES DISTRICT COURT

12          FOR THE NORTHERN DISTRICT OF CALIFORNIA

13

14

15
   PAUL JONES,                              Case No. _____
16
                           Plaintiff,       (Del Norte Superior Court, Case
17                                          No. CVUJ 06-1359)
                  v.
18                                          NOTICE OF REMOVAL OF
   HOREL, et al.,                           ACTION UNDER 28 U.S.C.
19                                          1441(b) (FEDERAL
                          Defendants.       QUESTION)
20

21 TO THE CLERK OF THE ABOVE-ENTITLED COURT AND TO PLAINTIFF PAUL JONES,

22 PRO SE:

23      PLEASE TAKE NOTICE that Defendants G. Stewart, K. Brandon, and R. Horel

24 (Defendants) remove to this Court the state-court action described below:

25      1.   On September 8, 2006, Plaintiff Paul Jones, an inmate incarcerated at Pelican Bay

26 State Prison (Pelican Bay) in Crescent City, filed a civil suit in the Superior Court of the State of

27 California, Del Norte County, Case No. CV UJ 06-1359.

28      2.   On June 24, 2008, Plaintiff filed a Second Amended Complaint/Amended

1   Supplemental Complaint. The Second Amended Complaint/Amended Supplemental Complaint

2   named or mentioned the following defendants: R. Horel, G. Stewart, K. Brandon, M. Yax, S.

3   Bradley, M. Castellaw, P. Dillard, R. Kirkland, J. Woodford, N. Grannis, and 20 Doe

4   Defendants.[1/]  (Am. Compl. ¶¶ 4-7, 15, 39.)

5        3.    Defendants R. Horel, G. Stewart, and K. Brandon were served by the Del Norte County

6   Sheriff's Office with a copy of the Second Amended Complaint/Amended Supplemental

7   Complaint and Summons on July 30, 2008 via the Pelican Bay Litigation Coordinator.  All

8   served defendants join in this removal.

9        4.    Under 28 U.S.C. § 1331, the district courts of the United States shall have original

10  jurisdiction over all civil actions arising under the Constitution, laws, or treatises of the United

11  States.  This Court has original jurisdiction over this action because the Second Amended

12  Complaint/Amended Supplemental Complaint alleges, among other things, violations of federal

13  constitutional rights.  Plaintiff's Second Amended Complaint/Amended Supplemental Complaint

14  alleges that Defendants violated the following constitutional rights:

15            a.    Plaintiff's First Amendment rights to receive mail.  (*Id.* ¶ 48.)

16            b.    Plaintiff's Fourteenth Amendment right to equal protection by "intentionally

17  discriminating against him on the basis of his race."  (*Id.* ¶ 53.)

18            c.    Plaintiff's First Amendment right against retaliation.  (*Id.* ¶ 56.)

19            d.    Plaintiff's Eighth and Fourteenth Amendment rights by "maliciously mis-

20  classifying Plaintiff as guilty of criminal conspiracy gang activity."  (*Id.* ¶ 66.)

21       Based on the above allegations, removal to this Court is appropriate under 28 U.S.C. §

22  1441(b) because Plaintiff's allegations raise claims and rights under 42 U.S.C. § 1983 and the

23  United States Constitution.

24       5.    In compliance with 28 U.S.C. § 1446(a), attached is a copy of the state-court file in this

25  case, as served on Defendants:

26  _____

27       1. To the Office of the Attorney General's best knowledge, no summons has been properly
    served on M. Yax, S. Bradley, M. Castellaw, P. Dillard, R. Kirkland, J. Woodford, or N. Grannis.
28  Accordingly, no appearance is entered on their behalf.

Not. of Removal                                          *P. Jones v. Horel, et al.*
                                                         Case No. _____

2

1        a.    Exhibit A:    Summons and Notice and Acknowledgment of Receipt (4 pages).

2        b.    Exhibit B:    Second Amended Complaint/Amended Supplemental Complaint

3                  and attached exhibits (114 pages), filed June 24, 2008.

4     6.    Under the California Rules of Court Rule 3.220, a Civil Cover Sheet is filed separately

5 and concurrently with the notice of removal.

6        Dated:  August 26, 2008

7                 Respectfully submitted,

8                 EDMUND G. BROWN JR.
                     Attorney General of the State of California

9                 DAVID S. CHANEY
                     Chief Assistant Attorney General

10               ROCHELLE C. EAST
                     Senior Assistant Attorney General

11

12               JONATHAN L. WOLFF
                     Supervising Deputy Attorney General

13

14

15

16               ERIN SULLIVAN
                     Deputy Attorney General
                     Attorneys for Defendants G. Stewart, K. Brandon, and R. Horel

17

18   20131290.wpd

19   SF2008200411

20

21

22

23

24

25

26

27

28

Not. of Removal

*P. Jones v. Horel, et al.*
Case No. _____

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:    **P. Jones v. Horel, et al.**

No.:
    (Del Norte Superior Court Case No. CVUJ 06-1359)

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On **August 26, 2008**, I served the attached

### NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. 1441(b) (FEDERAL QUESTION)

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102-7004, addressed as follows:

**Paul Jones, B-26077**
**Pelican Bay State Prison**
**P.O. Box 7000**
**Crescent City, CA 95531-7000**
Pro Per

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on **August 26, 2008**, at San Francisco, California.

|  |  |
|---|---|
| J. Palomino | _(signature)_ |
| Declarant | Signature |

20135883.wpd

# EXHIBIT A

COPY

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:** ROBERT HOREL, Warden of P.B.S.P.;
(AVISO AL DEMANDADO) G. STEWART, SGT/COUNSELOR UNIT D4;
MID. YAX, P.B.S.P. CAPTAIN; S. BRADLEY, "SHU SERGEANT;
M. CASTELLAW, " CAPTAIN; P. DILLARD, "Associate Warden,"
and DOES 1-20, inclusive, each being sued in their individual
and official capacities.
**YOU ARE BEING SUED BY PLAINTIFF:** PAUL JONES, Jr.
(LO ESTÁ DEMANDANDO EL DEMANDANTE):

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol) o poniéndose en contacto con la corte o el colegio de abogados locales.

| | |
|---|---|
| The name and address of the court is: DEL NORTE COUNTY SUPERIOR COURT<br>(El nombre y dirección de la corte es): 450 H Street<br>Crescent City, Ca 95531 | CASE NUMBER:<br>(Número del Caso): CV UJ-06-1359 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: PAUL JONES, Jr. (B26077)
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):

Pelican Bay State Prison, 5905 Lake Earl Dr. /P.O. Box 7500-d4/107, Crescent City, Ca 95532

DATE: 05-29-07          Sandra Linderman      Clerk, by _____, Deputy
(Fecha)                              (Secretario)                            (Adjunto)

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citation use el formulario Proof of Service of Summons, (POS-010)).

**NOTICE TO THE PERSON SERVED:** You are served
1. ☒ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):

3. ☐ on behalf of (specify):

under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
       ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
       ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
       ☐ other (specify):
4. ☐ by personal delivery on (date):

Page 1 of 1

[SEAL] SUPERIOR COURT OF CALIFORNIA COUNTY OF DEL NORTE - EUREKA

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

SUMMONS

Code of Civil Procedure §§ 412.20, 465

American LegalNet, Inc.
www.USCourtForms.com

EXHIBIT

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| PAUL JONES Jr.<br>Pelican Bay State Prison<br>CdC Id. No. B26077<br>P.O. Box 7500-D4/107, Crescent City, Ca 95532 | |

TELEPHONE NO:                     FAX NO. (Optional):

E-MAIL ADDRESS (Optional):

ATTORNEY FOR (Name): IN Pro Se>

SUPERIOR COURT OF CALIFORNIA, COUNTY OF DEL NORTE
STREET ADDRESS: 450 H Street
MAILING ADDRESS:
CITY AND ZIP CODE: Crescent City, Ca 95531
BRANCH NAME:

PLAINTIFF/PETITIONER: JONES, Jr.

DEFENDANT/RESPONDENT: STEWART, et al.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>CV-UJ-06-1359 |
|---|---|

TO (Insert name of party being served): ROBERT HOREL

## NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing:

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

## ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of (to be completed by sender before mailing):
1. [ ]  A copy of the summons and of the complaint.
2. [ ]  Other (specify):

(To be completed by recipient):

Date this form is signed:

_____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)

▶ _____
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-015 [Rev. January 1, 2005] | NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL | Code of Civil Procedure,<br>§§ 415.30, 417.10<br>www.courtinfo.ca.gov |
|---|---|---|

American LegalNet, Inc.
www.USCourtForms.com

POS-015

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br><br>PAUL JONES Jr.<br>Pelican Bay State Prison<br>CDCId. No. B26077<br>P.O. Box 7500-D4/107, Crescent City, Ca 95532<br>TELEPHONE NO.:                                                     FAX NO. *(Optional):*<br>E-MAIL ADDRESS *(Optional):*<br>ATTORNEY FOR *(Name):*    〈IN Pro se〉 | FOR COURT USE ONLY |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  DEL NORTE
  STREET ADDRESS: 450 H street
  MAILING ADDRESS:
  CITY AND ZIP CODE: Crescent City, Ca 95531
  BRANCH NAME:

PLAINTIFF/PETITIONER:  JONES, Jr.
                                              v
DEFENDANT/RESPONDENT: STEWART, et al.

| | |
|---|---|
| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>CV-UJ-06-1359 |

TO *(Insert name of party being served):*  G. STEWART

### NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing:

_____                    ►  _____
(TYPE OR PRINT NAME)                                          (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

### ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing):*
1. ☐  A copy of the summons and of the complaint.
2. ☐  Other *(specify):*


*(To be completed by recipient):*

Date this form is signed:


_____                    ►  _____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,          (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ON WHOSE BEHALF THIS FORM IS SIGNED)                          ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-015 [Rev. January 1, 2005] | NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL | Code of Civil Procedure,<br>§§ 415.30, 417.10<br>www.courtinfo.ca.gov |
| | | American LegalNet, Inc.<br>www.USCourtForms.com |

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| PAUL JONES Jr. <br> Pelican Bay State Prison <br> CdC Id. No. B26077 <br> P.O. Box 7500-d4/107, Crescent City, Ca 95532 <br> TELEPHONE NO.:                    FAX NO. (Optional): <br> E-MAIL ADDRESS (Optional): <br> ATTORNEY FOR (Name): &lt;IN Pro se&gt; | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  DEL NORTE
    STREET ADDRESS: 450 H Street
    MAILING ADDRESS:
    CITY AND ZIP CODE: Crescent City, Ca 95531
    BRANCH NAME:

PLAINTIFF/PETITIONER: JONES, Jr.
                v
DEFENDANT/RESPONDENT: STEWART, et al.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER: <br> CV-UJ-06-1359 |
|---|---|

TO (insert name of party being served): K. BRANDON PEL

## NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing:

_____
TAM. WILLIAMSON
(TYPE OR PRINT NAME)

_____
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

## ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of (to be completed by sender before mailing):

1. ☐   A copy of the summons and of the complaint.
2. ☐   Other (specify):

(To be completed by recipient):

Date this form is signed:

_____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)

_____
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

| Form Adopted for Mandatory Use <br> Judicial Council of California <br> POS-015 [Rev. January 1, 2005] | NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL | Code of Civil Procedure, <br> §§ 415.30, 417.10 <br> www.courtinfo.ca.gov |
|---|---|---|

American LegalNet, Inc.
www.USCourtForms.com

# EXHIBIT B

Paul Sangu Jones
B26077/ P.B.S.P.
P.O. Box 7500/d4-107
Crescent City, CA
95532

<In Pro Se>

COPY

IN THE CALIFORNIA SUPERIOR COURT
COUNTY OF DEL NORTE

ENDORSED
FILED

JUN 2 4 2008

SUPERIOR COURT OF CALIFORNIA
COUNTY OF DEL NORTE

Civil Case No. CVUJ-06-1359

Paul Sangu Jones,　　　　)
　　　　Plaintiff,　　　　)
　　　　　　　　　　　　　)
Vs.　　　　　　　　　　　)
ROBERT HOREL, (Warden of Pelican )
Bay State Prison), G. Stewart, )
K. Brandon, et al.,　　　 )
　　　　Defendants.　　　 )

SUPPLEMENTAL/AMENDED
COMPLAINT COMPENSATORY,
PUNITIVE DAMAGES, DECLA-
RATORY AND INJUNCTIVE
RELIEF (Cal. Code Civil
Procedure 42 et seq.)

PLAINTIFF'S SUPPLEMENTAL/AMENDED
COMPLAINT

PAUL SANGU JONES
B26077/P.B.S.P.
P.O. BOX 7500/D4-107
Crescent City, CA
95532

[IN Pro se]

COPY

IN THE CALIFORNIA SUPERIOR COURT
COUNTY OF DEL NORTE

Paul sangu Jones,
        Plaintiff,

    Vs.
Robert Hosel (warden, of Pelican
Bay State Prison), G. Stewart,
K. Brandon, et al.,

        Defendants.

Civil Case no. CVUJ-06-1359

SUPPLEMENTAL
AMENDED COMPLAINT COMPENSA-
TORY, PUNITIVE DAMAGES, DECLA-
RATORY and INJUNCTIVE
RELIEF (Cal. Code Civil Proce-
dure 42 et seg.)

PLAINTIFFS SECOND AMENDED COMPLAINT/AMEND-
ED SUPPLEMENTAL COMPLAINT

1. Plaintiff Paul sangu Jones, submits his second amended compl-
aint substituting/Adding and striking parties, as well as additional
factual allegations, cause(s) of action and damages-relief
sought, pursuant to section 473, et seg. of California code of Civil
Procedures.

I.
JURISDICTION

2. This is a Civil action authorized under California Civil Codes to
redress the deprivations and damages, under color of state law, se-
cured by the Statutes, Codes and Constitution of the state of Cali-

page 1 of 20

fornia and United States. This Court has Jurisdiction, in that
at least one defendant named herein currently reside in its Juri-
dictional area and/or the alleged Acts occurred within said County.
Plaintiff Also invokes the Pendent Jurisdiction of this Court.

## II.

## PLAINTIFFS

3. Plaintiff Paul Sangu Jones, who is of African descent (And
from said community in America and globally), is And was at all
times mentioned herein, a Prisoner of the State of California
in the custody of the Department of Corrections And Rehabili-
tution. He is currently confined at its branch institution Peli-
can Bay State Prison (SHU), where Similarly-situated others
has And continues to be Affected.

## III.

## DEFENDANTS

4. Defendant Robert Horel is the warden of Pelican Bay Prison.
He is legally responsible for the daily operation of the prison and
for the welfare of all the inmates at the prison in 2006.

5. Defendant G. Stewart is a Correctional officer of the Depart-
ment of Corrections and Rehabilitation who, at all times men-
tioned in this Amended Supplemental Complaint, held the rank
of Sergeant and was Assigned to Pelican Bay Prison, as insti-
tutional gang investigator, then unit 4 counselor (a).

6. Defendant K. Brandon is a Correctional officer of the
Department of Corrections and Rehabilitation who, at all
times mentioned in this Supplemental Amended Complaint,
held the rank of Captain and was assigned to PBSP investiga-

Jones v. Stewart, et
al. D.N. Super. Ct.

3

tive Service Unit.("ISU")

7. Defendant Does 1 through 20 is unnamed defendants involv-ed in the acts complained of herein. The true names and ca-pacities of defendants DOES 1-20 are presently unknown to plain-tiff. Many of the DOES were supervisors involved in policy-making decisions and are sued in their individual and official capacities. Plaintiff is informed and believes and therefore alleges on information and belief. that each of them is responsible in some manner for the constitutional violations and damages to plaintiff alleged herein. Plaintiff therefore sues DOES 1 through 20 by such fictitious names and will seek leave to amend this complaint to add their true names when when the same have been ascertained.

### III.
### INTRODUCTION OF FACTS

8. This action arises from the defendants' practices, acts and/or policies which have caused plaintiff's rights protected under the Constitutions of the State of California and United States to be viola-ted, as well as state statutory laws, guaranteing his civil rights.

9. Plaintiff and similar-situated other CDCR-confined prisoners of Afri-can descent, heritage and ancestry, currently housed at Pelican Bay State Prison (hereafter referred to as "P.B.S.P.") enjoined in a collective legal ef-fort to exercise their First Amendment-protected rights to com-plain (of their class' treatment, conditions, practices, duration and long term effects.) contact outside officials (elected/appointed) and to petition the government for redress. (see attached Exhibits "E-F")

10. Said legal efforts was enjoined, aided/supported by outside U.S. law-abiding citizenry and community correspondents of plaintiff, et al. (Id.)

Jones; Stewart, et al

1  ᵭᵭ. According to the established official record of the United States

2  and Californian governments, including prison officials own departmen-

3  tal/guard union records (below) demonstrates that the governments

4  recent ban on petitioners' community from sharing its annual Black

5  August Culture (and related news, information, literature, art, etc.), with its

6  imprisoned citizenry throughout C.D.C.R./P.B.S.P. (including petitioner and

7  other politicized prisoners held in solitary confinement for the last se-

8  veral years/decades), is a continuation of a long history of racial

9  discrimination, political repression, persecution, etc. toward this nation

10  New Afrikan (Black) population and their Afrikan cultural heritage

11  (such as Suswahili names, language, kinship, etc.) (See Below)

12  ᵭᵭ. This historical official record includes (but not limited to) the

13  following U.S./California governmental records, demonstrative of

14  a continuous pattern and practice of institutionalized racism toward

15  said cognizable racial, national, political and cultural group/class:

  13. • U.S. vs. Libelants & Claimants of the Schooner, Amistad (10 L. Ed. 926 (1841))

16  • California Constitutional Convention of 1849
    (official decision by State government to "disenfranchise Africans, African
17    descendants and Indians."

18  • FUGITIVE SLAVE ACT LAWS (1850)        (Institutionalized Slavery)

19  • Dred Scott v. Sanford, 60 U.S. [19 How. 393] 16 L.Ed. 691 (1857)
    (U.S. Supreme Court Law legalizing Slavery, in which Chief Justice Taney
20    Stated "Blacks have no rights that Whites are bound to respect...")

21  • Ku Klux Klan Act (April 20, 1861)/Civil Rights Act/Jim Crow-Black Codes (1865)

  • Peonage Abolition Act (1867)
22  (Re: Use of governments Criminal Justice System's laws, jails, prisons,
    chain gangs, etc., to Keep New Afrikans enslaved, post Emancipation Procla-
    mation)

23  • Civil Rights Cases, 109 U.S. 3 (1883)    (Institutionalize Racism/Class Discrimination)
             "    "    Plessy v. Ferguson, 163 U.S. 537 (1896)
24  • Brown v. Board of Education, 347 U.S. 483 (1954) ( "    "    "    in Education system)

25  • Robinson v. California, 370 U.S. 660 (1962)  (Equal Protection against Racial Discrimination)

  • NAACP v. Alabama, 377 U.S. 288, 307 (1964)  ( "    "    "    "    "    )
26  • California McCone Commission Report (1965) (Watts Rebellion caused by Racism)

27  • Cal. Department of Corrections 'Task Force Report' (1963/1965/1986)
    (Re: Creation of an official Racial Class Identification profile study, in relation
     to Black prisoners, and institutional segregation, racial tensions, etc.)

-Page 4 of 20

5

14. The alleged facts occurred around several events at defendants' Pelican Bay State Prison, following defendants and unnamed other prison employees of CDCR learning of Plaintiff, et al, pursuing legal efforts against the prison, its employees, the mistreatment, conditions, et al, that was described and set forth in "complaints/appeals/grievances," "communications" with elected officials; "petitions/complaints" to outside government courts, etc. (see Attachment 1&E) The most recent legal effort was the "Affidavits" by Plaintiff, et al, filed in the California Supreme Court (on behalf of a habeas action challenging defendants' OP 205/206 policy) on April 27, 2005. (Ibid. Exh. "5" – Jones Affidavit)

15. The first event occurred on February 9, 2005, in which guard M. Yax stopped, confiscated, and claimed to have "destroyed" a "letter" from a law abiding Tax paying citizen from plaintiffs' black community, named "Sha Ka at-Thinnin," who is the brother-in-law of plaintiff. Defendants issued a "NOTICE OF DISAPPROVAL" with guard G. Stewart named thereupon, and stated the mail contained the text "Black August", thus violating Rule 3023 "Gang Activity". (Exhibit "A" Cdc 1819, dated 2/9/05) (See also ¶ 26, infra)

16. The second event occurred on June 1, 2005, defendants stopped, confiscated, and (alleged) "destroyed" a community circulated "flier" sent to plaintiff (and inmates around the country, including Pelican Bay where it was prohibited), from Makini I-Yapo, member of the "International Association of Black Yoga Teachers," (who also offers a religious/spiritual ministry community outreach self rehabilitation support service with her Elders' church). Said confiscated mailing was simply an invitation to "participate in our 6th Annual Yoga Summit" by submitting "writings, art work, short stories, [a] short autobiography, or whatever your heart desires" for inclusion in a booklet/pamphlet that would be distributed at the summit. (Exh. "c")

17. Again, defendants Yax, Stewart, et al, alleged their prohibition of said "July 1, 2005, mailing" was based on it containing the text "Black August," (Exhibit "A" cdc 1819, 6/1/05) the same as in the first event.

18. The third event occurred on June 24, 2005, which was a letter (dated 6/22/05) follow up to the earlier June 1, 2005, Flier (see above) from Makini I-Yapo, to the same country-wide list of inmates, including Plaintiff, referencing the booklet and submissions made by various inmates for the "6th Annual Yoga Summit". Again, defendants stopped, confiscated and allegedly "destroyed" said mailing on the same basis as before, ie, for containing the text "Black August" violating 15 C.C.R. 3023 "Gang Activity" (Exh. "A" & "D")

19. The fourth event occurred on June 24, 2005, in which defendants again stopped, confiscated and claimed to have "destroyed" a mailing sent to plaintiff from his brother-in-law, Shaka at-Thinnin, a Community Culture Service volunteer for the Community's Black August Organizing Committee (B.A.O.C.). Defendants failed to identify the name(s) of the employees taking action to deny said Letter. (Exh. "A" cdc 1819, note No. 8. "Authority to Disallow") The same basis was alleged as the denial, "talking about organizing Black August on the streets" (Ibid., Box No.s 5-6) Plaintiff's brother-in-law had wrote similar letters for decades.

20. The fifth event occurred on July 28, 2005, when defendants Yax, Stewart, et al, stopped, confiscated and destroyed educational pamphlets sent to plaintiff from the "South Chicago ABC zine Distro." on the same basis as the others, "Black August" related. (Exh. "A", cdc 1819)

21. Several other events occurred following this same patterned practice, such as,

(i) on October, 2005, defendants denied a News publication sent to numerous CDCR inmates, from California Prison Focus, only prohibited for Plaintiff and the black inmates at PBSP. (Exh. "E" & "D")

1   (ii) On August 11, 2005, defendants Stewart, et al, denied a

2   letter sent to plaintiff from his brother Shaka at-Thinnin on the same basis as the other denials. (Ibid.)

3   (iii) On August 30, 2005, defendants Stewart, et al. stopped,

4   confiscated and possibly destroyed a news article

5   sent to plaintiff from California Prison Focus Staff (M. Rubich on the same basis as all the other denials. (Id.)

6   (iv) On October 12, 2005, defendants Stewart, et al. stopped,

7   confiscated, denied and possibly destroyed a letter to Plaintiff

8   from his brother-in-law Shaka at-aThinnin, alleging the same basis of expressing "Black August" text as before. (Id.)

9   (v) Between January and September of 2006, defendant Stewart

10  was selected, assigned and designated by and/or with the consent of said co-defendants to acting unit d4 Counselor, and secreted false information into his prison file.

11  22. In addition to the above, other related events includes

12  those such as: (vi) Defendants took a letter being sent out by a PBSP/ed co-complainant named Richard Johnson, to an outside correspondent named

13  

14  Ms. Sylena Issac, simply for expressing the words "Black August" in Saluta-

15  tion context; (Exh. "G") (vii) Defendants confiscated and destroyed a

16  letter sent to another co-complainant, J. Williamsun (D34288) on June

17  20, 2005, inviting his participation in the "6th Annual Yoga Summit," (Exh "D

18  (viii) The removal, reading (and possible photocopying) of plaintiff and his

19  cellmate Williamsun's legal mailings. (Exh. "G")

20  (ix) The removal, reading (and possible photocopying) of all plaintiff and his cell-

21  mates' legal property and court papers. (Ibid.)

22  (x) Confiscation of joint Petition of Plaintiff, et al, out of co-petitioner/

23  complainant "Marcus Harrison (cdc No. H-5407 () legal property.

24  (xi) First case of Defendants utilizing the joint "petition/complaint" of plain-

25  tiff, et al, and the mail from outside correspondent Makini I-Vapo "inviting"

26  participation in the 6th Annual Yoga Summit," (see above) as the basis to deny

27  co-petitioner/complainant "Joseph Salvant" (C08365) release from inde-

28  finite Solitary Confinement/SHU for at minimum six (6) more years.

23. Another related series of events involving plaintiff's mailing are as follows:

(a) On February 6, 2007, a citizen complaint petitioning the government was filed with state and federal officials. (See attached Exhibit E.) The complaint involves a patterned practice of acts, omissions, policies and continuous violations, depriving plaintiff and similar-situated others of the state's imprisoned new afrikan black population (being kept indefinitely with solitary("SHU") confinement, whose remain exposed and subjected to mis-treatment, conditions and long term effects after decades) of their human, civil and constitutional rights: (Ibid)

(b) For instance, on February 1, 2006, following numerous grievances and other related legal efforts to seek governmental redress, from prison officials actions, plaintiff was singled out placed on a list and sent to a more restrictive, modified control unit known as the "Short Corridor" program.

(c) While in the restrictive "Short Corridor" program's Unit D4, plaintiff initiated his civil action in this case,[1] filing his civil complaint on September 6, 2006.

(d) As stated previously, defendant Horel, reassigned defendant Stewart from his assigned post of Investigation Service Unit gang investigator to the post of Counselor over plaintiff's prison case in Short Corridor Unit D4. (See 'Facts' ¶s 26, 34, 39-44, supra.)

(e) Petitioner filed his 'First Amended Complaint' on May 5, 2007, and attempted to serve the Clerk's official Summons/complaint/Acknowledgment of receipt personally in June 2007, and again on July 14, 2007, via a non-party substitute server (his cellmate).[2] Defendants Horel, Stewart and their agents resisted by refusing to return the 'Acknowledgement of Receipt' back to plaintiff for official filing with the Court.

(f) Since his attempts to serve defendants in 2007, plaintiff's mail has been mishandled, unduly censored, lost, etc. by defendants and their agents.

1/ Assigned as Del Norte Superior Court no. CV-UJ-06-1359.
2/ Ibid, see Court Case file.

(g). On November 6, 2007 Plaintiff's confidential legal mailing was again opened by defendants and their agents. (Exhibit "G-1" cdc602)

(h). Plaintiff's legal mailing to Del Norte Superior Court Clerk, dated November 25th 2007, and January 17, 2007, never reached the Court. (Exhibits "G-3" copies of Pltf.s & Ct. Clerk mailings.)

(i). On November 26, 2006, Plaintiff's attempt to file a grievance concerning defendants and their agents' interference with his efforts to get his court case summons-complaint process-served. (Exh. "G-2" cdc602)

(j). Early 2008, plaintiff learned that defendants and their agent had been with holding/stopping/delaying and inhibiting his general correspondence mailings to and from his outside correspondents; including by-passing their own cdcr-PBSP mailroom and usurping its established mandatory mail handling accountability process rules by utilizing a mail censoring form that intimidates correspondents creating a "chilling effect." (Exhibit "G-4" Deft's mail censor forms

(k). Defendants and their agents applied their censoring acts upon plaintiff main two correspondents Ms. Chrissie Jay Marshall (Exhibit "G-5") and Mr. Shakir Al-Thinnin, (Exhibit "G-") who both happen to aid plaintiff with legal materials who (Ibid. "G-5"; also see "Fact "(I)s 19 & 21 supra.

//
//
//
//
//
//
//

(9)

FACTS PERTAINING To Pen C 2601 Violation CONSPIRA-
AND FIRST AMENDMENT INFRINGEMENT "CHILLING Effect"

1  24. On July 28, 2005, a mailing of a published education pamphlet
2  sent to plaintiff from the lawful publishing vendor named "south
3  CHICAGO ABC ZINE Distribution" was denied issuance to him and kept
4  by defendants alleging that it violated CCR 3023. (Exhibit "A" & "B")
5  without producing any material facts to support their charge.
6  At no time was plaintiff issued a rules violation report charging
7  that said material violate CCR 3023, or any other regulation or law. (Ib
8  id.) Yet between January and September 2006, defendant Stewart, et al, se-
   creted information of their accusatory Mail denials inside plaintiffs cdc file.
9  25. Again on August 11, 2005, and other occasions, Defendants denied
10 numerous of mailings—both "correspondences" (incoming/outgoing) and
11 "publications" alike — sent to and from plaintiff, et al, which defen-
12 dants alleged violated Regulations 3023 and/or 3006(c) and kept said
13 personal property mailings. (Exhibit "A", "C" & "D")

14

15 26. No rules violation reports was issued by Defendants charging
16 plaintiff, et al, with any such regulation violation, permitting the
17 correspondents adequate notice of said new policy and a fair
18 opportunity to be heard before suffering such loss of their per-
19 sonal property mailings/materials, (Jones' Decl. ¶ I; Exh.s "A- D")
20 and legal documents - property. (Id, Exh. "D", cdc 602)
21 27. One such mailing sent to plaintiff, et al by the California
22 Prison Focus was a "newsletter" called "Prison Focus", in which
23 defendants denied issuance to plaintiff and his race with-
24 in PBSP-SHU, on the same basis as the other occasions. (see ¶s
25 No.s 21(iii) supra; Exhibits A-B) However, based on information and
26 belief, plaintiff alleges that this same publication "Summer 2005,
27 No.23 Issue" was not denied to the other non-Black CCR prisoners
28 at the same prison -SHU location. (see ACLU Letter, dated 11/16/06)

PLTF.S Compl.
(1st Amended)

Jones v. Stewart, et al.
CV-UT-06-1359

1   28. On October 3, 2005, defendants was contacted regarding its

2   prohibition of said mailings sent to and from plaintiff, et al and their

3   outside law abiding Correspondents, which notified defendants of their

4   declared rights being violated on the following basis:

5      (A) Mailings sent in furtherance of establishing and main-

6         taining family and community ties merely expressing

7         the same context as allowed in CDCR/PBSP for de-

        cades (ie, stating the words "Block August" culture, etc.) pro-

8      hibited, infringes upon the right to Communicate by mail under

9         the First Amendment to the U.S. Constitution; (Exh. "D")

       (B) Mailings of legal support information/documentation/Transcripts

10     (C) Mailings sent to inmates around the country, including

11        defendants' prison system/PBSP-One being simply an

          invitation to "participate in our 6th Annual Yoga Summit"

12        by submitting "writings, art work, short stories, [or] short

          autobiography, or whatever your heart desires" for in-

13        clusion in a booklet/pamphlet to be distributed at the

14        summit; and the other being a letter, dated June 22, 2005,

          re: the International Association of Black Yoga Teachers-

15        Makini I-Yapo in reference to said booklet and the submis-

16        sions made by various inmates, as part of the broader

          prohibition on mailings expressing the non-contextual

17        words "Black August" culture—which runs afoul of

        California's statutory law Penal Code §2601   (Ibid.)

18

19

20     (D) Mailings which context does not "knowingly promote, fur-

21        ther or assist any gang as defined in Section 3000," as

          constituting gang activity under California Code of Regula-

22        tions(CCR), Title 15, Section 3023(a), precludes prohibition

          of said mailing as "contraband" under 3006(c) and 3136.

23     Thus, accordingly said materials is not reasonably deemed to

24     be a threat to any (non-exaggerated) legitimate penologi-

       cal purpose. (*Procunier v. Martinez*, 416 U.S. 396; *Thornburgh*

25     *v. Abbott* (1989) 109 S. Ct. 1874; *Turner v. Safely* (1987)107 S. Ct 2256. (Id.)

26

27   # 29. Defendant Horel is the designated Chief executive officer of Pelican Bay

28   And is responsible for the custody, treatment, training and discipline of

29   all inmates under his charge.

Facts pertaining to racial Discrimination

30.
1  Plaintiff is Black/african american, and alleges the following
   based on information and belief:
2  31. Blacks/africans housed in CDCR's SHU at PBSP are the only
3  racial group of CDCR prisoners subjected to defendants' mail
4  (ie, publications, correspondences, Fliers) ban practices and policy;
5  While the other races (Mexicans, Whites, Other) are not banned
6  from receiving such mailings containing the text "Black August."
   (Exh. "B")
7  32. A clear instance of said racial discrimination was in
8  Summer 2005, when the California Prison Focus, a non profit
9  organization monitoring human rights conditions at PBSP and
10 publishes a "newsletter" that goes out to all requesting inmates
11 in CDCR, sent said publication "Prison Focus" (Summer 2005, No. 23
12 issue) out to majority of PBSP inmates, defendants disapproved
13 issuance/deliverance to Plaintiff, et al, black inmates, but not
14 to the other races. (Exh. "B" & "D")
15 33. A large diverse populations and communities in the World
16 (eg. Brazil, Haiti, etc.) and United States - including California -
17 of different racial backgrounds has demonstrated their
18 support in the cultural ideas, practices, etc. Known as "Black
19 August" culture. And as such, the other non-Black populaces
20 freely express the text "Black August" within their mail-
21 ing exchanges with their non-Black inmate correspondents
22 throughout CDCR in general and within PBSP particularly. (Id.)
23 34. The double standard, race-selective ban policy is a result
24 of racial discrimination practiced by defendants. In particular
25 defendants' entire process from its sudden inception, target
26 race determination, subjectivity in the disapproval screening and
27 racial/cultural/political premise on applying its Rule 3023 to Plaintiffs
28 et al, race, cultural and political expressions. Resulting in the unfair

1 and unjust accusing, charging, judging, determining, labeling
2 and defaming each and every outside correspondents (including
3 U.S. law abiding Tax Paying Black Citizenry referenced herein,) as
4 "gang affiliates involved in gang activity," as applied under CCR 30-
5 00 and 3023, Title 15.    Defendants Stewart.et.al. secreted such into his prison files.
6  35. Defendants have chosen to ascribe significance only to
7 petitioners contact with members of his own race and/or
8 those whose share the same cultural/political ideas, views
9 beliefs and free speech/expressions of same. (Exh.s "B" & "D")
10  36. Defendants have no legitimate penological interest in assu-
11 ming that petitioner, members of his race (whether imprisoned or
12 outside in society), and others who exercise their freedoms to ex-
13 press their political ideas, views, beliefs, etc. had engaged in "gang
14 activity... knowingly committed any unlawful act. or acts of miscon-
15 duct on behalf of a gang, posing an "immediate threat to institutional
16 safety and security " from the innocuous expressed text "Black Au-
17 gust" in publication and/or correspondence/Flier, (Ibid.)
18 To the contrary, defendants' policy of blaming correspondents expres-
19 sing the text "Black August" in their otherwise lawful U.S. Postal mailings
20 as "gang activity" violation of over broad Rule 3023, runs afoul of its
21 established penological interest of establishing and main-
22 taining family and community ties conducive to rehabilita-
23 tion, as opposed to creating a "chilling effect" upon the correspon-
24 dents first Amendment exercises. (Id.)
25  37. Supervisory defendants' orientation and indoctrination training
26 practices pertaining to selective identification, targeting, subjective based
27 mail screening review and determination process perpetuate the racial pro-
28 filing of Black inmates at PBSP. and fails to address the risk of inaccurate race.
* "C.C.R." refers to California Code of Regulation, Title 15.

Jones v. Stewart, etal
Civil #. 06-1956

38. Plaintiff appealed, seeking administrative relief between the periods of February 2005, thru April 2006, raising the grounds that, the sudden practices and new policy prohibiting the confiscated mailings was: (1) A racial-based practice and policy applied only to plaintiff and CDCR's black prisoner populace at PBSP constituting racial discrimination. (Exh.") (2) The prohibited mailings alleged to express the text "Black August Culture" were allowed into the prison and sent to plaintiff and CDCR's black populace for decades due to its contents not posing an "immediate threat to institutional security" and/or gang activity. (Ibid. Parts A-B F & H) (3) Prison employees actions suddenly banning plaintiff, et al, mailings expressing the text "Black August Culture", and other related acts (e.g. opening, reading, etc. confidential legal mail, removing all legal/court mail out of cell, etc.) was taken in "retaliation" for plaintiff joint legal efforts complaining against prison employees'/mistreatment/conditions, etc., particularly those outside correspondents (e.g., California Prison Focus / Makini I-Yapo/Never Forget Ministry, A.C.L.U., Shaka at-Thinnin/B.A.D.C., etc.) who was involved in aiding in plaintiff, et al joint legal efforts to contact outside elected officials/representatives, complain and petition the government for redress. (Exh.s "B" - "G")

39. Plaintiff requested in administrative relief that prison cease and desist said new practice and policy of prohibiting CDCR/PBSP's black prisoner populace mailings for the mere expression of the words Black August Culture regardless of context, and to allow said withheld mailings to be issued to said black correspondents, including the return to sender of any justifiably denied. 39.1. Defendants Stewart, Bradley, Castellaw, Dillard, Kirkland, and Woodford/Grannis denied plaintiff, et al, appeals at all levels, alleging that said prohibited mailings constituted "gang activity", issuing the final decision on April 10, 2006, exhausting all avenues. (Exh. "B")

Plff.'s 1st Amend.
Compl.

Jones v. Stewart, et al,
Civ. No. 06-1250

## FACTS PERTAINING TO RETALIATORY DISCRIMINATION

40. In addition to the factual allegations asserted above in preceding paragraphs, plaintiff alleges that another incident event occurred unbeknown to him at the time of his initial bring said civil complaint before the Court, in that,

41. On September 15, 2006, plaintiff received a document entitled "Confidential Information listing-cdc 810" given to him by the newly assigned Unit Counselor, who recently replaced defendant G. STEWART that was "acting" in said capacity.

42. Upon reviewing the paper, plaintiff learned for the first time that while functioning as the "acting Counselor" of this assigned housing Unit, defendant STEWART had taken plaintiff's Central prison file and secreted into it said disputed accusatory information on plaintiff and his community's exercised First Amendment expressions, resulting in defendants actions and deprivations, alleged in said Causes of action, giving rise to this civil action. (See paragraphs 23-39.)

43. As stated elsewhere herein, plaintiff realleges that said First Amendment political, social, cultural expressions of his community and their exercised legal activities (eg. contacting appointed/elected public officials and to complain/petition the government for redress) (Ibid.) was suddenly targeted by defendants as retaliatory acts and racial discrimination under the pretext of criminal gang conspiracy acts. (Id.)

44. Although defendant Stewart was designated by his administrative boss, defendant Horel, to function in the capacity of institutional gang investigation, ("IGI") defendants suddenly placed Stewart in the designated housing unit with plaintiff, at which he did not delay in writing their disputed pretextual accusations and arbitrary, racist conclusions upon memorandum papers to "officiate" their retaliatory and discriminatory actions as legitimate. Then defendant classified their acts, accusations and arbitrary conclusions as "confidential" preventing anyone from plaintiff, his community and/or elected/appointed public officials outside CDC from independently reviewing and ascertaining the validity of defendants Stewart, et al, accusatory statement/documentation. As such, plaintiff remains indefinitely in SHU.

IV
*LEGAL CLAIMS*
*FIRST CAUSE OF ACTION*
(VIOLATION OF Penal Code 2601-State Law)

45. Plaintiff realleges and incorporates by reference all previous paragraphs of this complaint.

46. Defendants confiscation and asserted destruction of educational and news publications sent to plaintiff and similar-situated others housed at P.B.S.P./SHU from "South Chicago ABC zine Distributor" and "California Prison Focus" human rights organization, etc. for the innocuous expression of the text "Black August Culture" regardless of context violates California Penal Code Section 2601, which statutorily guarantee the "right to purchase, read, share and receive any and all legal materials, newspapers, periodicals and books accepted for distribution by the United States Post Office, except those who describe the making of any weapon explosive, poison or destructive device... " (Cal Pen C 2600/2601) Wherefore defendants are liable pursuant to California laws.

47. Title 15 California Code of Regulations Section 3138(f) "Publications" places the statutory mandates of Penal Code 2600/2601 on defendants and each of them to allow plaintiff et al the "right to purchase, read, share and receive any and all legal materials, newspapers, periodicals and books accepted for distribution by the U.S. Post Office... " And that any effort to restrict such Free Speech must pass the required strict scrutiny level of review applied to each individual item.

*SECOND CAUSE OF ACTION*
(First Amendment - Right to PETITION)

48. Plaintiff realleges and incorporates by reference all previous paragraphs of this complaint.

Defendants have violated plaintiff's First Amendment rights by selectively applying their new practice and policy of prohiting mailings to him, his co-complainants/petitioners, due to their legal efforts, challenging said prison officials.

PLtf.S 1st Amend.

Jones v. Stewart, et al
CV-UJ-08-1359

(18)

## THIRD CAUSE OF ACTION
### (State Equal Protection Clause)

49. Plaintiff realleges and incorporates by reference all previous paragraphs of this pleading.

50. Defendants have denied plaintiff equal protection of the law as guaranteed by Article 1, section 7 of the California constitution by intentionally discriminating against him on the basis of his race, and said racial groups historical, social, cultural and political background, evolutionary development interconnected in their international celebrated "Black August Culture", expressed in exchanged communications between Petitioner, countless other CDCR/PBSP/US prisoners and the outside world for several decades.

51. California Code of Regulations, Title 15, Section 3005(c) states in pertinent part: "... employees will not subject other persons to any form of discrimination because of race, religion, nationality... Political belief..."

## FOURTH CAUSE OF ACTION
### (Federal Equal Protection)

52. Plaintiff realleges and incorporates by reference all previous paragraphs of this pleading.

53. Defendants have denied plaintiff equal protection of the law as guaranteed by the Fourteenth Amendment of the U.S. constitution by intentionally discriminating against him on the basis of his race, said racial group, and other legal supporters' innocuous inclusion of the international celebrated text Black August in the recent communication mailings after decades of doing so with no interruption by defendants.

54. Defendants have discriminated against plaintiff based on his inalienable natural birthright and relation in a racial group in violation of the International Convention on the Elimination of All Forms of Racial Discrimination, which entered into force in the United States on November 20, 1994. Such right includes to learn and know one heritage, culture, languages,

(CAUSE OF ACTIONS, CONT'S)

CLAIM No. 5: FIRST AMENDMENT — RETALIATIONS (STATE/FEDERAL)

55. Petitioner realleges and incorporates by reference all paragraphs of this pleading.

56. Defendants have violated Article I, section 3 of the California Constitution and the First Amendment of the United States Constitution guaranteed to petitioner, in that defendants' sudden practice and policy of stopping, refusing to issue/deliver, taking and destroying personal property U.S. postal mailings to (and from) petitioner, et al, and outside correspondents/legal supporters, taken against them for the exercise of his constitutionally protected right to engage in legal and legitimate acts — both individually and jointly — to contact elected congressional representatives, complain of prison conditions, treatment, etc. and petition the government for redress, whereas petitioner et al had been allowed to exchange such exact textual innocuous communications, (expressing the text "Black August" culture) within defendants' Pelican Bay prison/SHU and throughout CDCR prison system, for decades prior to their recent legal acts and defendant retaliatory prohibiting said previously allowable mailings. This included the confiscation and destruction of his legal transcripts.

57. Title 15, California Code of Regulations section 3084.1 et al provides that no acts of reprisal, harassment and retaliation will be taken against an inmate (or their outside correspondents/legal aid supporters) for exercising the right appeal/complain and petition government for redress. Additionally, defendants are prohibited from such retaliatory act under 15 CCR, Section 3160(a).

SIXTH CAUSE OF ACTION
(FIRST & FOURTEENTH ACCESS TO COURT/PETITION FOR REDRESS/
RETALIATION—Cal. CONSTITUTION, Art. I. Sec.s 3, 5, 7(w) & 24)

1

2  58. Plaintiff realleges and incorporates by reference all previous
3  paragraphs of this complaint.

4  59. The actions of defendants stated in paragraphs 12-57,
5  violated the First and Fourteenth Amendments to the Uni-
6  ted States Constitution, as well as Article I section
   to the California Constitution.
7

8  60. Plaintiff alleges that defendants STEWART and Brandon's
9  confiscation of his mailings containing legal documents for
10 preparing his individual (and joint community) legal efforts
11 to contact, complain to elected/appointed public officials and
   petition the government for redress, coupled with defen-
12 dants. K. Brandon, Warden Hosey et al. ("Does"), joining and
13 acting concert to destroy said mailings, and legal docu-
14 ments contained therein.

15  61. Plaintiff alleges that defendants STEWART, VA, K, BRANDON,
16 Warden Hosey, et al. actions stopping/withholding/con-
17 fiscating and ultimately destroying his and community su-
18 porters legal documents, caused undue delays, obstruction
19 and impairment in his efforts to prepare and exercise those
   legal efforts described above in paragraphs —.
20

   SEVENTH CAUSE OF ACTION
21      (CONSPIRACY)

22

23 62. Plaintiff realleges and incorporates by reference the allegations con-
   tained in all previous paragraphs.
24

25 63. Defendants STEWART, K. BRANDON, R. Hosey, ill. and DOES 1-20,
   and each of them, or some of them, did conspire and agree to deprive plain-
26 tiff of his constitutional, statutory civil rights as alleged herein, in vio-
27 lation of

28 64. Said conspiratorial actions will result in defendants indefinite-
   ly keeping the Black plaintiff held in solitary confinement, because of the
29 racial and political actions alleged above in paragraphs 12-61

## EIGHTH CAUSE OF ACTION

(Cruel and Unusual Punishment — Malicious Misclassification via Institutional Racism

65. Plaintiff realleges and incorporates by reference all previous paragraphs of this Complaint.

66. The actions of defendants stated in paragraphs 1-44 violated plaintiffs' Eighth and Fourteenth Amendment rights by maliciously mis-classifying plaintiff as guilty of criminal conspiracy gang activity by and through the continuing violable patterned practice of institutionalized racism, political and religion persecution, which pre-judges/interpretes/determines and classifies his community's Afrikan/black history, culture, religious, political, etc. background factors, beliefs, views, ideas expressed in innocuous Free speech mailings be-him, Similiar-situated other new afrikan/black prisoners and their outside Community Correspondents.

## V   CAUSATION

As a direct and proximate result of the aforementioned acts and omissions on the part of defendants, plaintiff has suffered and continues to suffer general and special damages in an amount to be proven at trial. Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs described herein. Plaintiff has been and will continue to be irreparably injured by the conduct of defendants unless the Court grants the declaratory and injunctive relief which plaintiff seeks.

## RELIEF

Wherefore, Plaintiff requests the following relief:  (A) A declaratory judgment that the defendants' acts and practices described herein violated plaintiff's rights resulting in a 'chilling effect' upon him and similarly-situated others of his community, as herein stated: more specifically, defendants violated the United States Constitution and state law when they:

(1) Confiscated and destroyed Plaintiff's Community/families Supp...

Jones v. Stewart, et a
D. N. Super ct.
No. CV-HT-06-1359

20

ers incoming Personal Property innocuous mailing items (including his legal documents) without any advanced adequate notice of defendants intentions;

(2) Confiscated and/or destroyed Plaintiff's First Amendment protected personal property-community mailings and legal documents in retaliation for their joint exercised constitutional rights;

(B) An injunction which prohibits and requires that defendants, their agents, employees/successors; (1) cease harassment retaliation and reprisals for Plaintiff (and his enjoined community's) contacting their elected/appointed officials-complain/appeal and petition the government for redress/relief, whether individually or jointly;

(2) cease the practice of confiscating and destroying said innocuous context First Amendment mailings and return such previously with held and confiscated mail referencing the "Black August" culture expressions;

(3) cease the practice of misapplying a vague, overly broad interpretation of Regulation 3000/3023 upon said innocuous mailings, as a pretextual excuse to call it "gang" conduct as an exaggerated response to said community heritage cultural exercises; (b) cease writing and placing such "gang" conduct conclusory interpretations into plaintiffs (and similarly-situated others') prison files and using it to keep them discriminately from otherwise eligible-for release from SHU; (C) Remove and destroy all such prison records on file; and (d) Restore Plaintiff, et al. officially "Inactive-gang status;"

(C) Grant compensatory damages in the following amount:
1. $5,000 against defendants Stewart and Brandon;
2. $1,000 against defendant Hopel;

(D) Grant Punitive damages of $1,000 against each of the defendants;

(E) Grant such other relief as it may appear Plaintiff is entitled.

Respectfully submitted,

David George Jones
Plaintiff
[In Pro se]

Dated: June 19, 2008

(Jones v. Stewart, et al
Del Nort. Super Ct.
Case # CV-U-06-1359)





EXHIBIT A

EXHIBIT A ( )

# GINO de SOLENNI

*Attorney & Counselor at Law*
684 G. Street
Crescent City, CA 95531

(707) 464-6181

FAX: 707-464-6183

August 29, 2003

Paul Jones B26077
Pelican Bay State Prison
P.O. Box 7500
Crescent City, CA 95531

Dear Mr. Jones

      Thank you for sending your declaration regarding your use of the language which is currently banned within the prison. Unfortunately, the declaration needs to be written in a certain format. I have enclosed some guidelines and a sample of the pleading paper to assist you with this.

      Thank you.

Very Truly Yours,

Gino de Solenni,
Attorney at Law

EXHIBIT "A" (B)

~~EXHIBIT~~

PAUL JONES
CDC No. B26677
P.O. Box 7500
Crescent City, Ca
95532

IN THE CALIFORNIA SUPREME COURT

FOR THE STATE OF CALIFORNIA

RE: <u>IN RE JAMES BARIDI WILLIAMSON</u> (S124421)

DECLARATION IN SUPPORT HABEAS PETITION-CLAIMS

I, PAUL JONES, a WITNESS TO THE ABOVE-REFERENCED matter,
hereby by sworn statement declare as follows:

1. I am the same CDC-imprisoned witness named in
the related Habeas matter filed in Del Norte Superior Court
Case No. HCPB 03-5074, who was identified as the person
who witnessed the petitioner James Baridi Williamson's
serious problems in getting his case prepared and filed
with the Courts, in which I eventually was able to
help out with assistance of others on occasion. (See
<u>1st DECL. OF PAUL JONES; attachment #2, Exh. C(2)</u>"

2. Not only did I help the petitioner get his Legal Habeas
petition filed with the Lower Court due to his impaired
condition, <u>Ibid</u>.) but I also helped in getting additional
support documentation to his Court-appointed Counsel
Mr. Gino de Solenni that the Attorney had asked the Lower
court for continuance to submit if the Court Required it
to satisfy not only any questions it had regarding the
legal standing in petitioner bringing his case, such as
the exceptional circumstances surrounding the excusable
justified delay it took for him to locate legal help (via
myself and a few others) while suffering from a chronic
visual-impairing painful eye condition (<u>Ibid</u>., see also
Attachment <u>2</u>, Exh. "<u>B</u>(1)-"<u>C</u>".)

p. 1 of 3

EXHIBIT "A"

(2)    = EXHIBIT =

< JONES DECL, Cont. >

3. Also, as I conveyed to Mr. Gino de Solenni in a Declaration, I too equally suffer from the Challenged BAN OF OUR AFRIKAN Heritage, Cultural-SYNTEX Language Kiswahili. Unfortunately, while Mr. de Solenni was in the process of Acquiring my Final Draft, (Ibid #2, "A"(3) When We suprisingly learned of the lower Courts Ruling, Denying THE PETITION, on June 18, 2003.

4. As a witness, directly affected by said BAN, I know from direct experience the prejudicial affect it has on us Men OF AFRIKAN descent and our outside Community, because of the far-reaching essential influence, usage and dependable reliability of this banned Afrikan Kiswahili Cultural-Syntex language both nationally here in the U.S. & in Prison as well as Internationally.

5. Having Found myself imprisoned in CDC at a young age, without any access to any meaningful applicable "Rehabilitative" program services, I realized that the only realistic means available for me to self improve and grow, would be through "self-educational" efforts. And with the support of my outside Black Community and similar-situated Positive, Progressive-minded Black men in prison, I was Provided with educational Literature on Self-Knowledge, Humanity, History, SPIRITUALITY, CULTURE, VALUES, etc. From a more realistically applicable Afrocentristic (Via Afrikan-Centered Frame of reference) that includes the Afrikan-Kiswahili Cultural-Syntex language all of which has helped myself (and others similar-situated Like Petitioner, who also joined in this self-learning endeavor) Transform Criminal, enslaved and gangster mentality of self-destruction into productive Mentality of Community Responsibility, Respect and Contributions;

6. SINCE I HAVE BEEN IN CDC, THE STATE OF CALIFORNIA (Via CDC Administrative Law) HAS NEVER ISSUED ANY OFFICIAL NOTICE-Policy/RULE BANNING FROM ITS PUBLIC STATE government Department/Institutions, HUMANITY'S DIVERSE CULTURES-LANGUAGES-HISTORY OF Non-English/Spanish origin Peoples/Nationalities/ETHNIC LANGUAGE FAMILY GROUPS) including the Kiswahili Cultural-Syntex LANGUAGE of AFRIKAN descendants, Like myself and Petitioner Williamsun, imprison here in CDC/PBSP;

7. THE APPARENT REASON WHY THE STATE/CDC, HAS NOT OFFICIALLY BANNED Afrikan descendants "Kiswahili Cultural language", including Published Books; Literature Correspondence, etc. purchased, received via U.S. Postal Service From Approved Vendors (per P.C. 2601(c)) and correspondents (per 15 C.C.R. 3/30-3150) is Because its established mail screening Safety and Security Policies Protocols, Measures that effectively disapprove Any Unauthorized context published material, Correspondence; etc.

EX# "A" (1)

"JONES DECL", CONT.    (3)    EXHIBIT

8. As a person of Afrikan heritage-descent, which naturally includes roots in Kiswahili cultural-syntex language and others originating in the continent of Afrika and transmigrated here to this north american continent with our enslaved ancestors during slavery.

9. The reading, studying and learning of all educational information available about Afrikan history, cultural spirituality, Art, Science, MOTIF, including "Kiswahili" is essential to us Afrikan descendants here in the U.S, because it helps us rediscover, reclaim, relearn the inherent essence of Afrikan selves, as human beings with a long rich history, culture and contributions to Human Civilizations, prior to slavery's systematic institutionalized negation and/or re-pression of these inherent natural essentials of who we are, where we originated, How we Arrived to this Present Reality, and what Humanity's Natural Laws requires of us Afrikan de-scendants in the U.S. in order to ensure a bright "Quality LIFE" of Peace, security and pursuit of Happiness for our Community and Posterity, as enshrined in both the California & U.S. Constitutions and International Laws as "Unalienable HUMAN RIGHTS".

10. In pursuit of our self-rehabilitation, community reciprocation endeavors, both myself and Petitioner was enrolled in our outside Afrikan community's "Afrikan-American studies Program" sponsored and provided by the "National Association of Brothers & Sisters Inside & Outside" (NABSIO); (See accompanying "Reply" Attach'mt # , Exh. "B(2)", which centers upon the true teachings of Afrikan descendants History, Heritage, cultures, etc. utilizing lawful Published Books and Lit-erature on Afrikan Principles values, etc. known as the "Seven Prin-ciples" or "NGUZO SABA" of "KWANZAA" and requires each of us stu-dents to either purchase a "Kiswahili Cultural-Syntex Dictionary" with English Translations, or they will purchase one for us and send it via U.S. Postal service. (Ibid.)

11. In addition to these Kiswahili cultural-Related Studies with NABSIO, many of us men of Afrikan descent work to help our outside community's cultural enrichment programs, by learning these same community Afrikan Kiswahili cultural-syntex Holidays like KWANZAA, celebrations like "WEUSI AGASTI" or "Black August" annual events, "HARAMBEE" or "Pull together" Programs, etc. All of which includes use of English translated Swahili language's.

12. Over the years, I (nor anyone I know, including Petitioner) has ever violated any cdc disciplinary Rules or Criminal laws with the exercise of this inalienable Human Right to learn kiswahili.

I declare under penalty of perjury that the above is true and correct, to the best of my knowledge and belief.

Dated: April 26, 2005,

Paul Jones

Page 3 of 3

EXHIBIT

EXHIBIT "A"
COPY

J. BARIDI WILLIAMSON, et. al.
D-34288/D10-205
P.O. Box 7500
Crescent City, Ca. 95532

1

2

3          In The California Court of Appeal

4              Third Appellate District

5

6  In re Matter of the Application
7  of: James BARIDI WILLIAMSON (D34288), et. al.
   Paul Jones (B26577), Richard Johnson (E53293),
8  Charles Coleman (C66680), Harold SHAMBUR-
   GER (D16530), Joseph Salvant (C08385), Louis
9  Powell (B59564), Paul Redd (B72683), Randall
   ELLIS (C68764), Ronnie Dewberry (C35671),
10 Kenneth Carter (B52119), Daryl Burnett (B60842),
   Clyde Jackson (C33559), James Benson (D43433),
11 Michael Rhinehart (C34412), Leonard Alexander
   (B72282), Rueben Williams (B72882), Larry
12 Woodard (C21690), James Harvey (C48284),
   Michael Cooter Wood (C96411), Jeffery Franklin
13 (C08585), Tyrone Robinson (C82858), Hugo
   Pinell (A88401), LaShawn Taylor (H41167),
14 Johnell Bailey (K03590), Robert Taylor (D63780),
   Marcus Harrison (H54079), George Mosley
15 (C33188), and Families, Relatives, et. al.[]
16                                    Petitioners,
   v.
17 DEL NORTE SUPERIOR COURT,
                          Respondent.
18

(Del Norte Super. Ct. No. HCPB 03-5054)

PETITION FOR WRIT & ALTER-
NATE OR HABEAS CORPUS

(CCP §1085, et seq.; Cal. Penal
Code §§ 1473-1508; Cal.
Const. art.I, §5; and Rules
of Court 50, 56, & 201(f),
#260)

(Accompanying MOTION TO
TRANSMIT RECORD)

19 To: The Honorable Justices of the California Court of Appeals, Third Appellate District
20 Comes Now Petitioners James Baridi Williamson, et. al, and petitions this ho-
21 norable Court: for a writ of Mandamus directing Respondent Court rescind
22 its denial order, procedurally barring Petitioners from bringing their First Amend-
   ment Constitutional claims; or for an alternative writ of Habeas Corpus
23 granting Petitioners the relief sought (i.e., to exercise the statu-
24 tory rights guaranteed under Cali. Pen C §§ 2600/2601: "To Purchase & Read
25 Books" relative to their (and others) Heritage-Culture-language-religion, etc.)
26 This petition is presented pursuant to California Civil Code §§1085, et. seq.,
27 Penal Code §§1473, et. seq. and sets forth the following facts and grounds, namely:

RECEIVED
NOV 25 2003

Summary of Pleading - 1

EXHIBIT "A"                                                          EXHIBIT

EXHIBIT

Mr. Paul Jone
Cdc ID # B26077
PBSP-D10
P.O. Box 7500
Crescent City, Ca 95532

1
2
3              IN THE CALIFORNIA COURT OF APPEALS
4                  THIRD APPELLATE DISTRICT
5
6
7  J. Baridi Williamsun, et. al.,     )    CASE NO. HCPB 03-5074
                Petitioner's,         )
8                                     )    DECLARATION OF PAUL JONES IN
9  v.                                 )    SUPPORT OF PETITIONERS APPLICATION
10 CAL TERHUNE, JOE MCGRATH,          )    FOR AN ALTERNATIVE WRIT, OR
               Respondents.           )    HABEAS WRIT AND CLAIMS FOR REVIEW
11
12                  DECLARATION OF PAUL JONES
13
14   1. I am imprisoned in Cdc and housed at its Pelican Bay
15 State Prison's isolation SHU confinement facility;
16   2. I am familiar with the petitioner J. Baridi Williamsun in
17 the above-entitled legal matter;
18   3. I moved into the same assigned housing location with Mr.
19 Williamsun in the latter months of 2002, where I learned of
20 an effort underway to challenge the state prisons ban of our
21 Afrikan Swahili Heritage Language/Kwanzaa Holiday spiritual culture
22 inalienable Human rights;
23   4. I noticed that Mr. Williamsun is suffering from a severe
24 physical eye disability that progressively is degenerative, impairing
25 his ability to adequately read, write and prepare small-printed
26 documents, and legal papers. The prison's SHU Law Library do not
27 provide any Legal assistance Help program services for those
28 of us with visual impairment physical disabilities, etc., which fur-

EXHIBIT

1 ther is adverse upon him due to the already extreme restrictive
2 conditions here, including inadequate access to essential Law Lib-
3 rary material services;

4    5. I learned that most of the guys housed in pbsp-SHU is
5 apprehensive and reluctant to try and help each other with le-
6 gal assistance out of fear of being punished with longer re-
7 tention in SHU isolation confinement for prison officials arbitra-
8 ry and discriminatory policies and practices of false labeling our
9 innocent, non-threatening legal and social human communica-
10 tions as "gang activity-association- validation," etc.;

11    6. This is why Mr. Williamsun had difficulty in finding su-
12 fficient, adequate legal help in preparing and filing his Peti-
13 tion, claims in the Superior Court. And when I agreed to
14 take the risk and help out. I learned that he had sent his
15 documents to an attorney "Charles Carbone", at Cal. Prison Focus,
16 who promised on July 12, 2002, to provide Mr. Williamsun and
17 similar-situated other with legal help in getting these issues
18 filed with the Court. However, although Mr. Williamsun did ask
19 Attorney Carbone to copy and return his original documents, he
20 did not, until we noticed that nearly a year later, the attorney
21 had yet provided any information that Petitioner's case had been
22 filed, necessitating Petitioner to seek return of his original
23 documents around February/March, 2003;

24    7. With access to the prison Law Library & its services being
25 highly restricted, I eventually was able to help Mr. Williamsun
26 prepare and submit said Petition for writ of habeas corpus.

27    I declare under penalty of perjury that the foregoing is
28 true and correct to the best of my knowledge and information.

Dated: November 16, 2003.
Resubmitted: February 23, 2004    Pg. 2 of 2    Paul Jones

EXHIBIT

EXHIBIT

EXHIBIT **B**

EXHIBIT

SB
=EXHIBIT=

STATE OF CALIFORNIA
CDC 1819 (Rev. 6/98)
DEPARTMENT OF CORRECTIONS

## NOTIFICATION OF DISAPPROVAL - MAIL/PACKAGES/PUBLICATIONS

| INMATE'S NAME | CDC NUMBER |
|---|---|
| JONES PAUL A 10 - 205 | B 26077 |

### MAIL / PACKAGES SECTION (Complete for mail or package cases only)

[X] INCOMING MAIL/PACKAGE          [ ] OUTGOING MAIL/PACKAGE

LIST ITEM(S) WHICH MEET DISAPPROVAL CRITERIA
1 LETTER

DESCRIPTION OF MATERIAL THAT MEETS DISAPPROVAL CRITERIA, INCLUDE CCR, TITLE 15 SECTION
CCR 3423   LETTER TALKS ABOUT ORGANIZING BLACK AUGUST ON THE STREETS.

| DISPOSITION | (P)  SENDER INFORMATION |
|---|---|

| | | FIRST NAME | MI | LAST NAME |
|---|---|---|---|---|
| [ ] | HELD PENDING INVESTIGATION/APPEAL | BLACK AUGUST | ORGANIZING | COMMITTEE |
| [ ] | RETURNED TO SENDER (At Inmate's Expense) _____ (Date) | ADDRESS (NUMBER AND STREET) 1721 FRANKLIN ST # 100-309 | | |
| [X] | DESTROYED | CITY OAKLAND | STATE CA | ZIP CODE 94612 |

*(INMATE HAS FIFTEEN (15) DAYS, AFTER NOTIFICATION OF DISAPPROVAL HAS BEEN FORWARDED, TO LET STAFF KNOW THE CHOICE OF DISPOSAL, OTHERWISE MATERIAL WILL BE DESTROYED).

| I ACKNOWLEDGE RECEIPT OF THIS NOTIFICATION: (INMATE'S SIGNATURE) | DATE SIGNED |
|---|---|

### AUTHORITY TO DISALLOW (Must be completed in all cases)

| PRINTED NAME OF WARDEN'S DESIGNEE | SIGNATURE OF WARDEN'S DESIGNEE | DATE SIGNED | DATE FORWARDED TO INMATE |
|---|---|---|---|

### PUBLICATIONS SECTION (Complete for publication cases only)

| TITLE OF PUBLICATION (Include issue/date) | PUBLISHER | PAGE(S) WHICH MEET DISAPPROVAL CRITERIA |
|---|---|---|

DESCRIPTION OF MATERIAL THAT MEETS DISAPPROVAL CRITERIA, INCLUDE CCR, TITLE 15 SECTION

| DISPOSITION | DESIGNEE INFORMATION |
|---|---|

| | | FIRST NAME | MI | LAST NAME |
|---|---|---|---|---|
| [ ] | HELD PENDING INVESTIGATION/APPEAL | | | |
| [ ] | DESTROYED | ADDRESS (NUMBER AND STREET) | | |
| [ ] | RETURNED TO OUTSIDE DESIGNEE AT INMATE'S EXPENSE _____ (Date) | CITY | STATE | ZIP CODE |

**(INMATE HAS FIFTEEN (15) DAYS, AFTER NOTIFICATION OF DISAPPROVAL HAS BEEN FORWARDED, TO LET STAFF KNOW THE CHOICE OF DISPOSAL, OTHERWISE MATERIAL WILL BE DESTROYED).

| I ACKNOWLEDGE RECEIPT OF THIS NOTIFICATION: (INMATE'S SIGNATURE) | DATE SIGNED |
|---|---|

### AUTHORITY TO DISALLOW (Must be completed in all cases)

| FACILITY CAPTAIN'S PRINTED NAME | FACILITY CAPTAIN'S SIGNATURE | DATE SIGNED | DATE FORWARDED TO INMATE |
|---|---|---|---|

DISTRIBUTION:
ORIGINAL - MAILROOM      * ALL APPEALS REGARDING MAIL/PACKAGES SHALL BE REFERRED TO THE WARDEN'S DESIGNATED STAFF
CANARY - INMATE
PINK - SENDER / DESIGNEE      ** ALL APPEALS REGARDING PUBLICATIONS SHALL BE REFERRED TO THE FACILITY CAPTAIN.

EXHIBIT

=EXHIBIT=

STATE OF CALIFORNIA
CDC 1819 (Rev. 6/98)

DEPARTMENT OF CORRECTIONS

## NOTIFICATION OF DISAPPROVAL - MAIL/PACKAGES/PUBLICATIONS

INMATE'S NAME: Paul Jones     CDC NUMBER: B-26077

### MAIL / PACKAGES SECTION (Complete for mail or package cases only)

[X] INCOMING MAIL/PACKAGE     [ ] OUTGOING MAIL/PACKAGE

LIST ITEM(S) WHICH MEET DISAPPROVAL CRITERIA: SCAF initiated Black August related Pamphlets

DESCRIPTION OF MATERIAL THAT MEETS DISAPPROVAL CRITERIA, INCLUDE CCR, TITLE 15 SECTION: CCR 3023

#### a. DISPOSITION

[X] HELD PENDING INVESTIGATION/APPEAL
[ ] RETURNED TO SENDER (At Inmate's Expense) (Date)
[X] DESTROYED

*INMATE HAS FIFTEEN (15) DAYS, AFTER NOTIFICATION OF DISAPPROVAL HAS BEEN FORWARDED, TO LET STAFF KNOW THE CHOICE OF DISPOSAL, OTHERWISE MATERIAL WILL BE DESTROYED).

#### b. SENDER INFORMATION

FIRST NAME: South Chicago ABC Zine  LAST NAME: Distro
ADDRESS (NUMBER AND STREET): PO B 721
CITY: Homewood  STATE: Ill  ZIP CODE: 60430

I ACKNOWLEDGE RECEIPT OF THIS NOTIFICATION: (INMATE'S SIGNATURE)   DATE SIGNED

### AUTHORITY TO DISALLOW (Must be completed in all cases)

PRINTED NAME OF WARDEN'S DESIGNEE: M OVAK Capt   SIGNATURE OF WARDEN'S DESIGNEE: [signature]   DATE SIGNED: 7/28/   DATE FORWARDED TO INMATE: 8-22-05

### PUBLICATIONS SECTION (Complete for publication cases only)

TITLE OF PUBLICATION (include issue/date)   PUBLISHER   PAGE(S) WHICH MEET DISAPPROVAL CRITERIA

DESCRIPTION OF MATERIAL THAT MEETS DISAPPROVAL CRITERIA, INCLUDE CCR, TITLE 15 SECTION

#### DISPOSITION

[ ] HELD PENDING INVESTIGATION/APPEAL
[ ] DESTROYED
[ ] RETURNED TO OUTSIDE DESIGNEE AT INMATE'S EXPENSE (Date)

**(INMATE HAS FIFTEEN (15) DAYS, AFTER NOTIFICATION OF DISAPPROVAL HAS BEEN FORWARDED, TO LET STAFF KNOW THE CHOICE OF DISPOSAL, OTHERWISE MATERIAL WILL BE DESTROYED).

#### DESIGNEE INFORMATION

FIRST NAME   MI   LAST NAME
ADDRESS (NUMBER AND STREET)
CITY   STATE   ZIP CODE

I ACKNOWLEDGE RECEIPT OF THIS NOTIFICATION: (INMATE'S SIGNATURE)   DATE SIGNED

### AUTHORITY TO DISALLOW (Must be completed in all cases)

FACILITY CAPTAIN'S PRINTED NAME   FACILITY CAPTAIN'S SIGNATURE   DATE SIGNED   DATE FORWARDED TO INMATE

DISTRIBUTION:
ORIGINAL - MAILROOM   * ALL APPEALS REGARDING MAIL/PACKAGES SHALL BE REFERRED TO THE WARDEN'S DESIGNATED STAFF
CANARY - INMATE
PINK - SENDER / DESIGNEE   ** ALL APPEALS REGARDING PUBLICATIONS SHALL BE REFERRED TO THE FACILITY CAPTAIN.

=EXHIBIT=

*EXHIBIT*

STATE OF CALIFORNIA                                                    DEPARTMENT OF CORRECTIONS
DC 1819 (Rev. 6/88)        NOTIFICATION OF DISAPPROVAL - MAIL/PACKAGES/PUBLICATIONS

INMATE'S NAME                                                          CDC NUMBER
PAUL   JONES                                                           B-26077

## MAIL / PACKAGES SECTION (Complete for mail or package cases only)

☐ INCOMING MAIL/PACKAGE                    ☒ OUTGOING MAIL/PACKAGE

LIST ITEM(S) WHICH MEET DISAPPROVAL CRITERIA
1 LETTER

DESCRIPTION OF MATERIAL THAT MEETS DISAPPROVAL CRITERIA, INCLUDE CCR, TITLE 15 SECTION
1 LETTER   RELATING  TO  BLACK  AUGUST

CCR 3023

| DISPOSITION | SENDER INFORMATION | | |
|---|---|---|---|
| ☐ HELD PENDING INVESTIGATION/APPEAL | FIRST NAME: PAUL | MI: JONES | LAST NAME |
| ☒ RETURNED TO SENDER _____ (At Inmate's Expense) (Date) | ADDRESS (NUMBER AND STREET) B 26077        B10 - 205 | | |
| ☐ DESTROYED | CITY | STATE | ZIP CODE |
| *(INMATE HAS FIFTEEN (15) DAYS, AFTER NOTIFICATION OF DISAPPROVAL HAS BEEN FORWARDED, TO LET STAFF KNOW THE CHOICE OF DISPOSAL. OTHERWISE MATERIAL WILL BE DESTROYED). | I ACKNOWLEDGE RECEIPT OF THIS NOTIFICATION: (INMATE'S SIGNATURE) | | DATE SIGNED |

### AUTHORITY TO DISALLOW (Must be completed in all cases)

| PRINTED NAME OF WARDEN'S DESIGNEE | SIGNATURE OF WARDEN'S DESIGNEE | DATE SIGNED | DATE FORWARDED TO INMATE |
|---|---|---|---|
| M DYAX/C#T | (signature) | 6/2/05 | 6-6-05 |

## PUBLICATIONS SECTION (Complete for publication cases only)

| TITLE OF PUBLICATION (Include issue/date) | PUBLISHER | PAGE(S) WHICH MEET DISAPPROVAL CRITERIA |
|---|---|---|
| | | |

DESCRIPTION OF MATERIAL THAT MEETS DISAPPROVAL CRITERIA, INCLUDE CCR, TITLE 15 SECTION

| DISPOSITION | DESIGNEE INFORMATION | | |
|---|---|---|---|
| ☐ HELD PENDING INVESTIGATION/APPEAL | FIRST NAME | MI | LAST NAME |
| ☐ DESTROYED | ADDRESS (NUMBER AND STREET) | | |
| ☐ RETURNED TO OUTSIDE DESIGNEE AT INMATE'S EXPENSE _____ (Date) | CITY | STATE | ZIP CODE |
| **(INMATE HAS FIFTEEN (15) DAYS, AFTER NOTIFICATION OF DISAPPROVAL HAS BEEN FORWARDED, TO LET STAFF KNOW THE CHOICE OF DISPOSAL, OTHERWISE MATERIAL WILL BE DESTROYED). | I ACKNOWLEDGE RECEIPT OF THIS NOTIFICATION: (INMATE'S SIGNATURE) | | DATE SIGNED |

### AUTHORITY TO DISALLOW (Must be completed in all cases)

| FACILITY CAPTAIN'S PRINTED NAME | FACILITY CAPTAIN'S SIGNATURE | DATE SIGNED | DATE FORWARDED TO INMATE |
|---|---|---|---|
| | | | |

DISTRIBUTION:
ORIGINAL - MAILROOM        * ALL APPEALS REGARDING MAIL/PACKAGES SHALL BE REFERRED TO THE WARDEN'S DESIGNATED STAFF
CANARY - INMATE
PINK - SENDER / DESIGNEE   ** ALL APPEALS REGARDING PUBLICATIONS SHALL BE REFERRED TO THE FACILITY CAPTAIN.

*EXHIBIT*

EXHIBIT C



NOTE: REQUEST TO HAVE SAID PUBLICATION made available for
Review By THE Court, per Martinez V. Procunier        = EXHIBIT=

~FORNIA                                                              DEPARTMENT OF CORRECTIONS

e/PAROLEE          Location:  Institution/Parole Region     Log No.           Category (3)-7
eal FORM                      1. PBSP              DC5-02379     gang related
~ 602 (12/87)                                    2.                           mail

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|-----------|------------------|
| Paul Jones | B26077 | | A 10/205 |

A. Describe Problem: On 8/25/05, a legit Business Book Distributor named "South Chi-
cago ABC zine Distributor" from Illinois mailed me educational pamphlets
to me via the U.S. Postal Service, But the same white guards G. Stewart,
M. Yax, et al. involved in the racist attacks upon outside Black community
and Stealing U.S. Citizenry Personal Property mailings is now trying to
Steal this legit mailed publication; by marking "Destroy" upon the
mail Disapproval notice. (see attached CDC 1819, dated 7/28/05). They are
not providing any Opportunity for Court Review of these stolen U.S. mailings.

If you need more space, attach one additional sheet.

B. Action Requested: That the involved state-employed white racist guards Stewart,
Yax, Hawkes, et al. cease and desist their institutionalized patterned prac-
tice of white supremacy Racism Toward Blacks confined here, and Stealing
the Black Community's U.S. Citizenry personal property mailings, and give me the
pamphlets or Retain it as legal Property For Court Review.

Inmate/Parolee Signature: Paul Jones                        Date Submitted: Sept. 6, 2005

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: **BYPASS**

RECEIVED NOV -2 2005 INST. APPEALS BRANCH

Staff Signature: _____                        Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

**BYPASS**

RECEIVED JAN 18 2006 INMATE APPEALS BRANCH

Signature: _____                        Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim                        CDC Appeal Number:

2d DLR/AWCS
SEP 0 7 2005

= EXHIBIT =                                                          EXHIBIT

34

State of California

Department of Corrections
CDC Form 695

## INMATE/PAROLEE APPEALS SCREENING FORM

NAME: _Jones_     PBSP LOG NO: _____

CDC #: _B26077_   CDC HOUSING: _D10-205_   OTHER LOG #: _____

YOUR APPEAL IS BEING RETURNED FOR THE FOLLOWING REASON(S):

[X] 4. In violation of CCR 3084.2(b), 3084.3(c)(4) & 3084.5(a)(1), you failed and must attach evidence that shows you attempted Informal resolution prior to the appeal being assigned to the First or formal Level of Appeal review. If a staff member fails to respond after 10 working days, use the Chain of Command and submit the Appeal to that staff members Supervisor, or unit/area Supervisors.

| | | | |
|---|---|---|---|
| [ ] Counselor | [ ] PBSP R&R | [ ] Med Clinic | [ ] Records |
| [ ] Unit Officer | [ ] PSU Prop. | [ ] Dental Clinic | [ ] I/M Assign |
| [ ] Mail Room | [ ] PBSP SHU Prop. | [ ] Psych Office | [ ] PBSP Trust Office |
| [ ] Law Library | [ ] Food Serv | [ ] Med Records | [ ] Plant Ops |
| [ ] Work Supervisor | | [X] Other _IGI_ | |

[ ] 5. You have not adequately completed the CDC Form 602, or have not attached the proper documents. Follow instructions, attach the items noted below, send what documents you have, or explain why they are not available, 3084.3(c)(5):

| | |
|---|---|
| [ ] Supporting Documents & Receipts | [ ] CDC 1845 Disability Verification |
| [ ] GA-22 Request For Interview | [ ] CDC 1824 Reasonable/Accommodation |
| [ ] CDC 115 Results With final dispo | [ ] CDC 7362 Health Care Req Co-Pay |
| [ ] CDC 115 IE/DA information/Report | [ ] CDC 128-C Medical Chrono |
| [ ] CDC 115 Supplemental Reports | [ ] Cell Search Slip |
| [ ] CDC 114-D Lockup Order | [ ] Property Inventory Receipt |
| [ ] CDC 1030 Confidential Disclosure | [ ] CDC 143 Prop. Transfer Receipt |
| [ ] Lab Results Sheet | [ ] Package Inventory Slip |
| [ ] CDC 7219 Medical Report | [ ] Proof of Ownership / Value |
| [ ] CDC 128-A _____ | [ ] Board of Control Release Form |
| [ ] CDC 128-B _____ | [ ] Trust Statement |
| [ ] CDC 128-G _____ | [ ] CDC 193 Trust Acct Wthdrwl. Ord |
| [ ] CDC 629A / 629B Assess SHU Term | [ ] Legal Status Summary |
| [ ] CDC 812 A / B Critical / Enemy | [ ] Abstract of Judgment (AOJ) |
| [ ] CDC 839/840 Class/Reclass Score | [ ] CDC 1858(PC 148.6/CCR 3391(d)) Info.Advis: |
| [ ] CDC 958 Restoration Request | [ ] Emerg. unwarranted CCR 3084.7(a)(2)(A) |
| [ ] CDC 1819 Correspondence Denial | [ ] Failed to Complete Section _____ |
| [ ] Other _____ | [ ] Sign & Date Section _____ |
| | [ ] CDC Form 602 _____ |

[ ] 7. The issue has been resolved. PBSP Appeal Log No. _____. A copy of the Second (Warden's) Level of Appeal review is attached CCR 3084.2(g)(1)(2)(3).

[ ] 8. Abuse of the appeal procedure: _____

Comments: _This does not meet the criteria as for a Staff Complaint. Please obtain Informal response. Your issue is the denial of a flyer._

_D. Smith_
D. W. BRADBURY, CC-II          JUL 21 2005
PBSP Appeals Coordinator       Date

TO: APPEALS Coordinator, Yes this do meet the criteria because the motivations behind the denial is racist misconduct

This screening action may not be appealed unless the above reason/s are inaccurate _Jones_ and the inmate can provide supporting arguments against the screening decision.

## PERMANENT APPEAL ATTACHMENT - DO NOT REMOVE

PBSP     (695-SOUT.DOC) (Rev. Nov. 2, 2004) CCR 3084.3(d)     PBSP

JUN 2 9 2005

*EXHIBIT*

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

## DIRECTOR'S LEVEL APPEAL DECISION

Date:    JAN 0 9 2006

In re:    Jones, B-26077
Pelican Bay State Prison
P.O. Box 7000
Crescent City, CA 95531-7000

IAB Case No.: 0503996        Local Log No.: PBSP 05-02231

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner R. Floto. All submitted documentation and supporting arguments of the parties have been considered.

I    APPELLANT'S ARGUMENT: It is the appellant's position that he does not feel that a mail denied to him contain anything that could be perceived as a threat to security. The appellant also contends that the regulation allowing staff to determine magazine acceptability provides them with the opportunity to arbitrarily deny materials without appropriate justification. He requests to be provided mail denied to him due to security concerns.

II    SECOND LEVEL'S ARGUMENT: The reviewer found that the material sent to the appellant through the mail contains information that is threat to safety and security. The material issued by the Black August Organizing Committee was disallowed due to penological interests and being in violation of CDCR regulations.

III    DIRECTOR'S LEVEL DECISION: Appeal is denied.

  A.  FINDINGS: The appellant has not presented a compelling argument to warrant modification of the decision reached by the institution. The mail item from the Black August Organizing Committee contains matter of a character tending to incite violence/physical harm to any person. The appellant's request to be provided the requested mail would be in violation of the CCRs. The material was disallowed based upon penological interests because it contained material in violation of CDCR regulations. The institution is not obligated or capable of editing and providing acceptable portions of disallowed magazines. As per the CCRs, disapproved incoming mail shall be disposed of in the manner set forth.

  B.  BASIS FOR THE DECISION:
  California Code of Regulations, Title 15, Section: 3006, 3136, 3138, 3270

  C.  ORDER: No changes or modifications are required by the institution.

This decision exhausts the administrative remedy available to the appellant within CDCR.

*T. Surges*
4

N. GRANNIS, Chief
Inmate Appeals Branch

cc:    Warden, PBSP
       Appeals Coordinator, PBSP

= *EXHIBIT* =

To: California Department of Corrections & Rehabilitation                    = EXHIBIT =
ATTN: DIRECTOR JEANNE Woodford, et al.
Re: COMMUNITY CITIZENRY COMPLAINT (via CDCR's Appeal System (Paul Jones & Community - PBSP Log# D05-01742)

PLEASE TAKE NOTICE that while acting under the color of state authority several white
employees of your State Departmental agency are engaging in a patterned practice
of institutionalized racial/cultural discrimination and illegal theft of U.S. Citizenry Per-
sonal property mailing (from the U.S. Postal Service), targeted toward the Black Commun-
ity, its history, culture and political developmental realities, views, beliefs, ideas, etc
and the retaliation by these white guards (G. Stewart, D. Hawkes, M. Yax and others), due
to these employees subjective racial biases, prejudicial attitudes of hatred and bigoted
behavioral pattern toward Appellant, his Community, its Citizenry (including those
confined here in this C.D.C.R. institution - PBSP) and their constitutionally-protected inaliena-
ble human birthright to their own collective historical and cultural development exper-
iences, beliefs, views, ideas, etc. embodied in said Community's internationally, nation-
ally recognized, observed and celebrated Black August Culture. __

> "The right to be free from racial, cultural and political
> Discrimination and retaliation is guaranteed by state,
> Federal and international laws of California (including its
> own C.D.C.R. regulations. Title 15 C.C.R. 3004 (c), 3191. 3084,1, 3130,3135(b)
> 3391; Cal. Constitution Art. I §§ 1-4, 17&24); United States (U.S. CA. 1 &
> 14; Tit. 18 U.S.C. § 1983 & 1985); and World (United Nations: Univ. De-
> claration of Human Rights", "Body of Principles For All Persons
> Under Any Form of Det, or Imprisonment (1988), Convention
> Against Torture and Other Cruel, Inhuman, or Degrading Treat-
> ment or punishment (1984); Lee v. Washington 390 U.S. 330, 19 L.Ed.
> 2d 1212, 18 S. Ct. 994; Robinson v. California, 370 U.S. 660.)

The State of California through the Person Director of Corrections of its State
departmental agency Cal. Dept of Corr's & Rehabilitation has officially "on paper" encouraged,
promoted and approved of the "Establishment and maintenance of [Cultural-Kinship] ties be-
tween Communities/Families and their confined Citizenry [inmates" in CDCR (15 C.C.R. 3130 (a) etal;
However, in "practice", the involved white employees Stewart, Hawkes, Yax, and others, as-
signed to C.D.C.R's Pelican Bay branch institution ("PBSP") are unlawfully utilizing their po-
sitions of official state office and authority, to engage in a long continuing patterned prac-
tice of racial, cultural and political discrimination and retaliatory oppressive cruel and un-
usual punishment toward this Black Community Citizenry class (inside & outside of this state
C.D.C.R / PBSP governmental system / institution), as demonstrative in these white state
employed guards' latest overt acts of institutionalized racial discrimination ban of said Com-
(continues on BACK)

(Continuation of Comm. Lit. Compl. JONES, PBSP-D05-01742):

6. The involved guards has no legal basis to ban this Community-exercised right:

(A) The Black Community Citizenry historical sharing of this right do not involve any Criminal activities, misconduct violations of laws!

(B) Guards reference to mere expressed views, thoughts and ideas do not violate any laws. Hawkes attacks upon these constitutionally protected non-illegal/non-threatening Free expressions of Community Citizens (via U.S. Postal Service) reflects the subjective, ulterior motive of these racist guards to retaliate against the entire participating Black Community for sharing/giving their outside support of its confined-Citizens in PBSP, simply because of the long-standing subjective sentimental biases, prejudices, hatreds, etc. toward Appellant and similar-situated others, who expresses differing political, cultural views, etc. as we see in this Culture, and petition the government for redress.

(C) U.S. Citizens personal property mailings to Appellant, et al. containing nothing more that lawful, non-threatening Cultural, political, social, historical, ideological, views, thoughts, ideas, commentaries, etc., regarding the Community/world, (mailed via U.S. Postal Service) do not constitute any gang crime being committed, or contraband to be taken. Thus, these guards theft of U.S. Citizenry's personal property mailings is illegal, warranting prompt governmental intervention to cease and desist these guards violable malfeasance of office.

(D) Appellant, et al and their outside Community has collectively-shared in all their Community's annual Black August culture and related Free expressions for decades via exchanging U.S. personal property mailings through both the U.S. Postal Service/CDCR-PBSP mail security screening process Not violating any state/federal laws or CDC mail/contraband/gang crimes! And suddenly after all those decades/years these white guards Hawkes, et al. now attacks upon this long-standing CDC/PBSP accepted lawful, non-threatening decades-old community exercised, constitutional-protected rights (to freely express collective-shared and experienced history, culture, etc. through its annual Black August Culture) is suspect warranting an independent fair, impartial and full investigation into these employees here at PBSP abusing their assigned "STATE Office, Positions, Powers & Authority", to target, attack and deny/deprive Blacks constitutionally-protected human rights to freely experience, express, share, celebrate their collective history and culture by these white employees institutionalizing their personal ingrained racial biases, prejudices, etc. subjective attitudes of hatred (toward Blacks, their community, culture, history, etc.) into the larger CD.CR/PBSP prison system policy decision-making process that determines Appellant, et al. Blacks classification-validation-segregation & outside communications.

(3)

(Cont. Jones, D.05-01742)

<THIS IS AN ATTACK ON BLACKS HUMANITY!>

7. Then as soon Appellant et al. and their outside Community Citizenry collectively exercised their rights to complain, instruct their elected representatives and petition the government for redress (See Community CitComplt 2003-5) these white employees Hawkes, Yax, Stewart initiates their attack, banning the Black Community's annual Black August culture for the first time in the numerous decades/years that the Community Citizenry has been sharing their Black August culture in CDCR/PBSP.

8. Employee Hawkes targeting outside law-abiding citizens' lawful exercise of their constitutionally-guaranteed and protected human rights to freely assemble, organize collective protest, education, socio-economic justice, politics, racism, bigotry, etc. on behalf of their Community's historical freedom struggle. as is freely, lawfully expressed by the Community's Malcom X Grassroot Movement and Black August Organizing Committee. As well as individual Community Citizens lawfully exercising their free Artistic expression to make movies, like any other citizens, even if the art expresses First Amendment Views, etc. of their Community's history, political, etc. Freedom struggle, Consciousness Movement, which the Citizen has the right to entitle Black August. Also, they are entitled to lawfully purchase car license plates like any one else. None of which, violates any laws, gang crimes, etc. as Hawkes incorrectly infers and subjectively personal attacks upon all those free outside Black Community Citizens that he references in his pretextual excuse, for discriminating against their entire Black community.

9. The involved employees failed to present a single iota of evidence that Appellant, et al. lawful exercise their constitutionally guaranteed/protected human rights to continue sharing their historical cultural Kinship times (via their Community's annual Black August culture and related innocuous correspondence news, art, literature, views, ideas, etc.) as they had for decades in compliance with all U.S. postal Service and CDCR/PBSP mail screening, contraband, etc. laws, rules and regulations, and thus does not constitute gang crimes. But merely are First Amendment exercises to establish and maintain Community ties. (15CCR 3130(a)

Page 4

(Continuation, Jones, Appeal Log # DO5-01742)

10. It is clear that these ulterior-motivated racist employees, abusing offices and Authority assigned and entrusted to them by the state of California, to continue their patterned practice of institutionalized racism and impunity under the exaggerated guises of gang crimes, raises serious questions of both public/community/National/International and California/U.S. governmental interests and concern. Hawkes conclusory subjective judgment that Appellant, his community, their history, culture, political views, cultural Kinship ties, experiences. etc. are gang crime activity, without substantiating this accusatory charge with any evidence of Appellant, et al. present 2005 annual Black August cultural-sharing is a threat when its "decades old" historical past has not been any threat to CDCR/PBSP. So why now all of a sudden?

Its a shame that a "self-described" gang specialist as employee Hawkes claims to be, can not point out what Appellant is doing today that makes his decades-old celebration of his Black August culture with his community/World outside or here in CDCR/PBSP makes it an actual, genuine threat to his community outside or this prison. And its a further shame that Hawkes, et al. sees our community's Black citizens confined in this prison as obstacles to his birthright of full-time comtemplation of Racial Discrimination and Retaliation. He tells his story from the dour point of view of, someone suffering from "excessive entitlement" syndrome. Everything he brings to the fore, subjectively to mischaracterize Appellant as a threat based upon the 1970s. He Knows that no material factual evidence actually exist to justify this continuing fabrication that their attacks upon Appellant deeming him threat is due to some phantom gang crime conspiracy. In which these gaurds has never showed any evidence of how he's a threat? and to whom in particular is he a threat since they thrown him in their gulag's extreme isolation solitary confinement facilities in 1989?

Finally, Employee Hawkes reliance on the past references in his appeal response shows that he seems to be living in the 1970s- to compare our outside community's 2005 Black August culture today with what he says occurred over twenty-five years ago is sheer bathos. And reflects the petty frustrations of a racist attitude unwilling to see Black prisoners here and their outside community continue their decade-old practice of maintaining established Cultural Kinship community ties through their annual Black August Culture to effect positive change both within themselves and their outside community/world.

(Page 5 of 5)

EXHIBIT

## INMATE/PAROLEE
## APPEAL FORM
CDC 602 (12/87)

Location: Institution/Parole Region
1. **PBSP**
2. _____

Log No. **D05-00373**
2. _____

Category **3-7**
disallowed letter

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|------------|------------------|
| Jones | B26077 | PBSP-SHU | D10-205 |

A. Describe Problem: SHAKA AT-THINNIN is my brother-in-law, we have main-
tained communications for over twenty-five (25) years through
the mail. There has to be "overwhelming evidence" that he is
"promoting gang activity" for such a charge to be made - because
he is a well-known community activist, as well as prison rights
advocate. That he would all of a sudden become "involved in
gang activity" is plain ridiculous and smacks of a "PBSP-Ad-
ministration that is grabbing at straws" in order to find reasons
(see attached sheet)

If you need more space, attach one additional sheet.

B. Action Requested: That I be given my bro-in-law's letter ASAP. And
an explanation of what I am being unnecessarily
harassed for - why the harassment of my people?

Inmate/Parolee Signature: Paul Jones          Date Submitted: Feb 13, 2005

C. INFORMAL LEVEL (Date Received: _____

Staff Response: _____

Staff Signature: _____          Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

Signature: _____          Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim

CDC Appeal Number: _____

EXHIBIT



FEB 15 2005   COPY

2nd APPEALS
MAR 30 2005

(D05-00373

to claim (falsely) that "I am active" in some kind of gang conspiracy (as it's done so often in the past), as for what is termed "unauthorized business dealings," when did "Paralegal/Jailhouse lawyer work" become unauthorized? Can this administration point out what money I have made from (any business dealings with SHAKA AT-THINNIN?) No! Again, Pbsp-administration is reaching for straws with such image allegations. Mr. AT-Thinnin has helped me, on numerous occasions, with court writs, 8rt petitions, 602 appeals, etc, for over twenty-five yrs. He has made copies, typed up and worked with my legal case. In these many years without ever being accused of gang activity. And I truly suspect the only reason he is alleged as such at this time is due to the Pbsp-admin. wanting to fabricate a case against me that will claim that I am "active in gang involvement." This is clearly aimed at trying to cut off my communications with those helping me with my court cases against the California Department of Corrections.

Paul Jones, B26077
Feb. 13, 2008
D16-205

EXHIBIT

(1) Director of CDCR / WARDEN-PBSP via Appeal Office                    = EXHIBIT =

**INMATE/PAROLEE**
**APPEAL FORM**
CDC 602 (12/87)

Location: Institution/Parole Region ___    Log No. ___    Category
**PBSP**
1. ___    1. ___    3/7
2. ___    2. ___    Date ___

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

NAME: Jones    NUMBER: B-26577    ASSIGNMENT: ___    UNIT/ROOM NUMBER: D10/205

A. Describe Problem: P.C. 832.5 - Employee Misconduct Complaint against Employees M. Yox, et al for Theft of U.S. Postal Mailing from Law Abiding Tax Paying Citizenry of the Black Community (dated 6/4/05). (2) Discriminatory Depriving said Black Community from Sharing its BINET August Cultural Newsletter with said Community's imprisoned Citizenry populace, and (3) Continuing the pattern & practice of institutional Racism toward targeted Black's (Complainant Jones, et al.) and their outside Community Citizenry, all of which done in retaliation of these community Citizens (outside & imprisoned) exercise of their constitutionally protected Right to Share Political Socio-Cultural Beliefs, Ideas Different from the involved guards, & to Petition Gov. for Redress

If you need more space, attach one additional sheet.

B. Action Requested: That this Employee Misconduct Complaint be processed per cal law (Penal Code Statutes) and the PBSP Warden/CDCR Director stop this discriminatory, Racist pattern & practices and Return Said Mailing etc. on the outside Community Correspondent

Inmate/Parolee Signature: Paul R. Jones    Date Submitted: 6/21/05

C. INFORMAL LEVEL (Date Received) ___    Sent to PBSP/IGI office on 7/23/05, Returned W/No Reply!

Staff Response: ___

Staff Signature: ___    Date Returned to Inmate: ___

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

Signature: ___    Date Submitted: ___

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim    CDC Appeal Number: ___

EXHIBIT

JUN 2 9 2005

EXHIBIT

# INMATE/PAROLEE APPEAL FORM
CDC602 (12/87)



Location: Instit. PBSP    Log No. DOS-01742    Category

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly. *Paul*

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| Jones | B-26074 | | 2401 205 |

**A. Describe Problem:** On 6/21/05, state cdc employee Mr. Yax, stole a U.S. Postal Service Mailing from my Community (see attached) this is a continuing Pattern and practice of institutional Racism that started in "retaliation" of US Black Prisoners and our outside Community sharing expressing our cultural socio-cultural etc. beliefs and ideas as well as recent petitioning the government for redress from these same Pattern and practices.

If you need more space, attach one additional sheet.

**B. Action Requested:** (1) Return said Community Citizen my Mailing to the correspondent, or give it to me. (2) That these involved employees Yax et al. do not be accorded institutionalized impunity (via code of silence) but be stopped from continuing these Racist acts.

Inmate/Parolee Signature: *Paul Jones*    Date Submitted: 6/29/05

**C. INFORMAL LEVEL** (Date Received: )

Staff Response:

Staff Signature:    Date Returned to Inmate:

**D. FORMAL LEVEL**
If you are dissatisfied, explain below, attach supporting documents: Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

Signature:    Date Submitted:

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

CDC Appeal Number:

EXHIBIT

AW3
2ND/IST
JUL 05 2005  CB



= EXHIBIT =

First Level ☐ Granted  ☐ P. Granted  ☐ Denied  ☐ Other _____

☐ REVIEWER'S ACTION (Complete within 15 working days): Date assigned: _____  Due Date: _____

Interviewed by: _____

Staff Signature: _____  Date Completed: _____

Division Head Approved: _____  Returned

Signature: _____  Date to Inmate: _____

F. If dissatisfied, explain reasons for requesting a Second Level Review, and submit to the Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

Signature: _____  Date Submitted: _____

Second Level  ☐ Granted  ☐ P. Granted  ☐ Denied  ☐ Other

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: 7/5/05  Due Date: 8/10/05

☐ See Attached Letter

Signature: _____  Date Completed: 7/6/05

Warden/Superintendent Signature: _____  Date Returned to Inmate: 8/23/05

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response. (SEE ATTACHED "COMMUNITY/CITIZENRY COMPLAINT" TO C.D.C.R. DIRECTOR)

DISSATISFIED. The above involved white guards' continuing racist attack upon the Black Community, its citizenry (including those confined therein too) and the Community's history, culture and political development, as embodied in the Community's capital Black August-Umajaboa cultural celebrations throughout the world including here in the U.S. California. Accordingly, the above involved guards cannot fairly, objectively address or resolve this matter by using discrimi-

Signature: _____  Date Submitted: Sept. 5, 2005

nation to solve their own racial discrimination, in retaliation for our Community's exercising our collective First Amendment Constitutional Rights (see attached page)

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION: ☐ Granted  ☐ P. Granted  ☐ Denied  ☐ Other
☐ See Attached Letter
Date: DEC 0 9 2005

CDC 602 (12/87)

= EXHIBIT =

NOTICE: NEED MAIL FOR COURT EXHIBIT - DO NOT DESTROY                    EXHIBIT

**INMATE/PAROLEE**
**APPEAL FORM**
CDC 602 (12/87)

Location: Institution/Parole Region    Log No.    Category
PBSP    Do5-02231    (3)
1.                                      Black August
2.                                      Letter

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

NAME: Jones, Paul          NUMBER: B26037C     ASSIGNMENT: SHU      UNIT/ROOM NUMBER: d10/205

A. Describe Problem: _on 8/11/05, I received a CDC 1819 stating that "unnamed" guards at this prison was taking and "Destroying" U.S. Community Citizenry's Personal Property mailings (see attached CDC 1819) which automatically violated 15 CCR 3130(d)/3147(a)(5). I was told by Unit D10 Counselor Pena, that guard Stewart, was the unnamed employer whose office had the withheld outside citizenry mail, and that I would be receiving a completed CDC 1819 which was sent days later with another guard's substitute name on it, "W. Anthony". This entire practice violates Rules 3004(b) 3130, 3135, 3137 & 3147, and other State and Federal laws, which is again another instance demonstrating five (5) of these employees patterned practice or institutionalized racism toward me, others Black men here and our outside supportive community; banning our Afrikan culture, stealing mailings, severing Community/Familial ties indiscriminatory retaliation of our joint political beliefs, views etc and legal complaints._

If you need more space, attach one additional sheet.

B. Action Requested: _That CDC Director's Agency/Dept'l officials and/or PBSP Warden Kirkland's Administration order these employees, G. Stewart, etc. to cease and desist this unlawful practices and stop stealing/destroying these outside U.S. Citizenry's personal property mailings, and comply with the above laws._

Inmate/Parolee Signature: _Paul Jones_                          Date Submitted: Aug. 3, 2005

C. INFORMAL LEVEL (Date Received: _____)

Staff Response: _THE SUBJECT OF THIS LETTER IS THE ORGANIZATION BLACK AUGUST ON THE STREETS. BLACK AUGUST WAS STARTED BY THE BGF AND IS STILL CONSIDERED A GANG ORIENTED VIEW._

Staff Signature: _S. Bradley_                            Date Returned to Inmate: 8-13-2005

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_Dissatisfied. The theft and destruction of U.S. Citizenry personal property mailings that they entrusted to the U.S. Postal Service for deliverance without compliance with the State and Federal Constitutional Civil and Statutory laws protecting these U.S. Citizenry Personal Property mail rights is blatant, illegal, racist and violates CDC's own Reg. 15 CCR 3147(a)(5)._

Signature: _Paul Jones_                              Date Submitted: Aug. 21, 2005

Note: Property/Funds appeals must be accompanied by a completed    CDC Appeal Number:
Board of Control form BC-1E, Inmate Claim

CDC 1819 form attached

EXHIBIT

First Level ☐ Granted ☐ P. Granted ☐ Denied ☐ Other

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: 8/25/05 Due Date: 10/7/05

Interviewed by:

Bypass

Staff Signature: Title: Date Completed:

Division Head Approved: Returned

Signature: Title: Date to Inmate:

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

Bypass

Signature: Date Submitted:

Second Level ☐ Granted ☐ P. Granted ☒ Denied ☐ Other

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: 8/25/05 Due Date: 10/7/05

☒ See Attached Letter

Signature: Date Completed: 9-21-05

Warden/Superintendent Signature: Date Returned to Inmate: 9/30/05

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

In his response Sgt. G. Stewart readily admits no criminal act was committed in the letter in question, but the letter was promoting BGF ideologies. What does this mean? That Pelican Bay has been given leave to do as they please as long as they can make a claim of an implied threat to the institutions security. No one seems to investigate these outrageous allegations. We are simply attempting to become reacquainted with our history before and after enslavement and combine those values which we (see attached page)

Signature: Date Submitted: 10/5/05

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION: ☐ Granted ☐ P. Granted ☒ Denied ☐ Other

☒ See Attached Letter

Date: JAN 0 9 2006

CDC 602 (12/87)

EXHIBIT

=EXHIBIT=

# INMATE/PAROLEE APPEAL FORM
CDC 602 (12/87)

| Location: Institution/Parole Region | Log No. | Category |
|---|---|---|
| 1. _____ | 1. _____ | _____ |
| 2. _____ | 2. _____ | _____ |

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| Jones, P | B26077 | | d 10/208 |

**A. Describe Problem:** State CDC employee's C-STEWART & Mi Yax-took's(2) two News letters from Calif. Prison Focus (Summer 2005) on 10/11/05 & from "SHAKA at-Thinnin BAOC" on 10/12/05. without distributing the canary and pink copies of the "CDC 1819 NOTIFICATION OF DISAPPROVAL" to the inmate & sender as mandated by CDCR promulgated Regulation. This is just another demonstrative example of these white guards continuing subjective, racist disregard of other non-eurocentric cultures.

If you need more space, attach one additional sheet.

**B. Action Requested:** That the "canary" & "Pink" copies of the CDC 1819 (dated 10/11 & 10/12, 2005) be distributed to the "inmate" & Sender", either return the Personal Property News publications be promptly returned to Sender / Kept for The Courts Review and cease/desist these guards racist practice.

Inmate/Parolee Signature: _Paul Jones_      Date Submitted: 10/13/05

**C. INFORMAL LEVEL** (Date Received: 10-14-05)

Staff Response: CDCR REGULATIONS FOR WITHHOLDING MAIL CAN BE FOUND IN CCR TITLE 15 3147 (a)(5)(A)(6). ANY MAIL NOTED AS PROMOTING ANY PRISON GANG IS CONTRABAND AND THEREFORE NOT SUBJECT TO BEING FORWARDED. SAID MAIL IS RETAINED PENDING APPEAL AND OR INVESTIGATION.

Staff Signature: _____      Date Returned to Inmate: 10-24-05

**D. FORMAL LEVEL**
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

DISSATISFIED. Just because the words "Black August" is expressed in a mailing doesn't mean the sender(s) is violating any prison Rules! Both the Senders in this case "C.P.F." & Brother in law SHAKA/BAOC has sent their mailings to prisoners throughout the State, including PBSP, with the words "Black August" expressed therein for years with no problem until now after our joint legal efforts

Signature: _Paul Jones_      Date Submitted: 10-20-05

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

CDC Appeal Number: _____

=EXHIBIT=

EXHIBIT

SENT TO POST APPEAL OFFICE 10/14/05, RETURNED TO ME 10/22/05

First Level    ☐ Granted    ☐ P. Granted    ☐ Denied    ☐ Other _____

E. REVIEWER'S ACTION (Complete within 15 working days) Date assigned: _____    Due Date: _____

Interviewed by: _____

NO CONTENT

Staff Signature: _____    Title: _____    Date Completed: _____
Division Head Approved: _____    Returned: _____
Signature: _____    Title: _____    Date to Inmate: _____

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

Signature: _____    Date Submitted: _____

Second Level    ☐ Granted    ☐ P. Granted    ☐ Denied    ☐ Other _____

G. REVIEWER'S ACTION (Complete within 10 working days) Date assigned: _____    Due Date: _____
☐ See Attached Letter

Signature: _____    Date Completed: _____
Warden/Superintendent Signature: _____    Date Returned to Inmate: _____

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

Signature: _____    Date Submitted: _____

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION: ☐ Granted    ☐ P. Granted    ☐ Denied    ☐ Other _____
☐ See Attached Letter    Date: _____

CDC 602 (12/87)

= EXHIBIT =

EXHIBIT "D"

EXHIBIT "D"



= EXHIBIT =

# American Civil Liberties Union

OF NORTHERN CALIFORNIA
1663 MISSION STREET, SUITE 460
SAN FRANCISCO, CALIFORNIA 94103

November 16, 2005

Warden Richard J. Kirkland
Pelican Bay State Prison
P.O. Box 7000
Crescent City, CA 95531

Re:     Unlawful Censorship of Mailings by "The International Association of Black
        Yoga Teachers", Public Records Act Request

Dear Warden Kirkland:

On October 3, 2005, we sent a letter to you on behalf of Makini I-Yapo and the "International Association of Black Yoga Teachers (IABYT)" regarding your facility's prohibition on mailings sent by these parties. It was, and continues to be, our view that the prohibition on this mail, and other events surrounding "Black August" violates the First Amendment rights of both the senders of the mail and the inmates of your facility. Further, the prohibition runs afoul of Penal Code section 2601, and the CCR Section 3136(a). Thus, we have urged you to permit these mailings to be received by the intended addressees incarcerated at your facility.

We have received no response to our letter dated October 3, 2005. Moreover, since October 3rd, we have been informed that your facility has adopted an official prohibition on all mailings that may contain the text "Black August," regardless of the context. This apparently included a policy of prohibiting a "Prison Focus" newsletter in which an article contained the words "Black August." This prohibition was allegedly based on race, as white and Mexican inmates received the newsletter that was denied to Black inmates.

Additionally, we were told that the confidential legal correspondence we sent to Mr. James Williumsun (D34288) discussing this issue had been opened and read outside of his presence. California state law requires that legal mail be opened *only* in the presence of the prisoner, and solely for the purpose of checking for contraband or to determine that the letter is actually from an attorney. (*See In Re Short,* (1976) 55 Cal.App.3d 268; 15 CCR §§ 3144, 3145.) Further, legal mail cannot be *read or reviewed* by any prison officials. (*See In re Jordan* (1974) 12 Cal.3d 575.)

With the serious and distressing concerns outlined above, we are requesting (1) your response to our original letter, (2) your explanation or response to your staff's opening of legal mail outside of the presence of the addressee, and (3) to obtain information concerning your ongoing race-based policy of prohibiting mail that includes any mention of "Black August."

= EXHIBIT =

*EXHIBIT*

Warden Kirkland
November 16, 2005
Page 2

Specifically, this letter constitutes a request pursuant to the California Public Records Act (Government Code section 6250, *et seq.*) for copies of documents in the possession of your office and facility. The ACLU of Northern California seeks disclosure of records described below[1]. We intend the request to include all records with an effective date within the last two years.

1.  Any and all records distributed to or among employees of your facility discussing "Black August" mailings, events, or related activities.

2.  Any and all records, regulations, memoranda, or other writings that set forth the criteria by which Prison officials may prohibit mail to either all inmates, or to inmates who fall within a certain class.

3.  Any and all policies, regulations, memoranda, writings (including email), or reports, regardless of the source, that provide for different treatment of incoming mail based upon the race of the inmate.

4.  Any and all memorandum, regulations, writings (including email), or reports, regardless of the source, that discusses any threat, disturbance, nuisance, or danger that is posed by allowing Black inmates to be notified of "Black August" events or of the "culture of Black August".

5.  Any and all memoranda, regulations, writings (including email), or reports, regardless of the source, that discuss or explain any threat, disturbance, nuisance, or danger that is posed by mail sent by the "International Association of Black Yoga Teachers."

The California Public Records Act requires within ten (10) days either production of the requested documents and/or notice of the specific reasons why the materials requested (or portions thereof) are exempt from disclosure. Please send copies of the requested records to me at the address shown above. If necessary, we will reimburse you for reasonable copying costs.

If you have any questions regarding this request, please feel free to contact me at (415) 621-2493. Thank you in advance for your timely cooperation.

Sincerely,

Julia Harumi Mass
Staff Attorney

---

[1] These records include but are not limited to: internal and external correspondence (including email), memoranda, drafts, notes, outlines, policies, procedures, regulations, directives, instructions, orders, bulletins, handouts, training manuals, guidances, guidelines, reports, summaries, writings, logs, and other written records or records by any other means.

*EXHIBIT*

 = EXHIBIT =

STATE OF CALIFORNIA
**CONFIDENTIAL INFORMATION LISTING**
CDC 810 (Rev. 10/02)

DISTRIBUTION
ORIGINAL - CENTRAL FILE - CONFIDENTIAL FOLDER
CANARY - INMATE/PAROLEE
PINK - INMATE'S ATTORNEY OR OTHER PERSON DESIGNATED TO EXAMINE THE CENTRAL FILE (IF APPLICABLE)

DEPARTMENT OF CORRECTIONS

This is to inform the person(s) requesting to examine the Central File of the inmate/parolee noted at the bottom of this form that the below listed document(s) have been classified by the Department of Corrections as confidential for the reasons stated and will not be made available to the person(s) requesting to examine the Central File, except by order of an appropriate court. If there are no confidential documents in the inmate/parolee's Central File, "None" shall be written in the first space under "DATE OF DOCUMENT." Note: This form is only completed or updated by the staff person reviewing the Central File in preparation for *In re Olson* examination of the Central File by the inmate/parolee, his or her attorney, or other designated person.

Letter codes used below to describe why the withheld document is classified as confidential:
(A) The document contains information that, if known to the inmate/parolee or others, would endanger the safety of any person.
(B) The document contains information that would jeopardize the security of the institution.
(C) The document contains specific medical or psychological information that, if known to the inmate/parolee, would be medically or psychologically detrimental to the inmate/parolee.
(D) The document contains information provided and classified confidential by another governmental agency.

## DESCRIPTION OF WITHHELD CONFIDENTIAL DOCUMENT(S)

| DATE OF DOCUMENT | TYPE OF WITHHELD DOCUMENT (i.e., memorandum, letter, CDC 128B, etc.) | REASON FOR CONFIDENTIALITY (write applicable letter code) | DATE DOCUMENT WAS ADDED OR REMOVED FROM THIS LISTING Note: This date must match the date next to the Staff Reviewer's signature |
|---|---|---|---|
| 9·20·02 | 128B | A + B | ☒ Added   Date: 8 3-18-04 / ☐ Removed   Date: |
| 9·8·04 | CONF 128B | A B | ☒ Added   Date: 4-17-06 / ☐ Removed   Date: |
| 2-7-05 | CM | A B | ☒ Added   Date: 4-17-06 / ☐ Removed   Date: |
| 4-6-05 | CM | A B | ☒ Added   Date: 4-17-06 / ☐ Removed   Date: |
| 10-29-04 | CM | A B | ☒ Added   Date: 4-17-06 / ☐ Removed   Date: |
| 10-25-05 | CM | A B | ☒ Added   Date: 4-17-06 / ☐ Removed   Date: |
| 11-10-05 | CM | A B | ☒ Added   Date: 4-17-06 / ☐ Removed   Date: |
| 3-14-06 | CM | A B | ☒ Added   Date: 4-17-06 / ☐ Removed   Date: |
| 10-3-05 | CM | A B | ☒ Added   Date: 4-17-06 / ☐ Removed   Date: |
| 3/29/06 | CM | A + B | ☒ Added   Date: 9/15/06 / ☐ Removed   Date: |
| 4/19/06 | CM | A + B | ☒ Added   Date: 9/15/06 / ☐ Removed   Date: |
|  |  |  | ☐ Added   Date: / ☐ Removed   Date: |

## CERTIFICATION OF CENTRAL FILE REVIEW AND UPDATE OF THIS CONFIDENTIAL INFORMATION LISTING

This is to certify that I have reviewed the Central File of the inmate/parolee noted at the bottom of this form and have authorized the withholding of the above listed documents from examination by the person(s) requesting to review the Central File.

| PRINTED NAME OF STAFF REVIEWER | TITLE | SIGNATURE | DATE |
|---|---|---|---|
| M. PENA | CCI | J. Pena | 3-18-04 |
| G. STONE | CCI (A) |  | 4-17-06 |
| B. FLOWERS | CCI | B. Flowers | 9/15/06 |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

| DC NUMBER | NAME |
|---|---|
| B 26077 | JONES |

= EXHIBIT =

(1) Petitioners Community's correspondences to Senate Representatives (11/5/02) (Re: Prison officials treatment of its imprisoned citizens, Petitioner, et.al)

(2) Petitioners 'class' correspondence to Cal. Senate Representatives (July 6, 2001)

(3 pages)

# EXHIBIT "E"

= EXHIBIT =

EXHIBIT
July 6, 2001

To: Sen. Richard Polanco
& J.L. Committee—R.C.#07
Cal. Terhune, Dir. of Corr.s
Joe McGrath, Ward. Pbsp

Re: ADDRESSING CLAIMS OF HUMAN RIGHTS VIOLATIONS AGAINST
PRISONER THAT THE STATE/CDC CLASSIFY FOR SHU PUNISHMENT
AS INDETERMINATE PRISONER CLASS

We received the recent memo (via cdc) written by Sen. Polanco, concerning the current Non-Violent protest (ie, Hunger Strike) undertaken to seek authentic resolution (as opposed to Rhetoric +/or window dressing) of cdc/pbsp current policies to use its shu to punish and violate prisoners' human Rights (ie, physical-psychological-emotional-spiritual torture, sensory deprivation, inhumane interaction-social-ization condition, Restricted communication-Non Contact with family + love ones) based solely on cdc/pbsp arbitrary, discriminatory & oppressive policies to target/identify, group classify and punish entire class of prisoners' based on group-classification status (in violation of laws/rules, etc.) and not individual prisoner behavior (per law/rules etc.)

After decade(s) of such inhumane treatment, this targeted class have collectively put the State of California (in particular) & the United States government (in general) on notice that as human beings this long train of abuses designed against this distinct 'Validated-Indeterminate SHU class' can not continue. Each individual prisoner that cdc's current classification scheme lumps all into this 'Group validation-Indeterminate SHU' status was each individually sentenced to cdc by the State's Judiciary as punishment, not for cdc/pbsp to abuse the authority & powers (entrusted to it by the elected state government) and create a classification scheme designed to punish an entire class of cdc prisoners based upon "Status", and not on individual classification & punishment of "an inmate's behavior."

Currently before the state/cdc is a list of issue that Sen. Polanco's July 5th memo guarantees that the Cal. legislative Committee will discuss with cdc/pbsp. However, contained within the core of the Human Rights problem remains the central component giving rise to the mistreatment & abuse, which is the "administrative & operational" aspects of cdc/pbsp "design to punish" the validated Indeterminate SHU class. This application is realized in cdc/pbsp "program" for this distinct class. The program for the Validated Indeterminate SHU class is clear & simple: "Punish...Punish...Debrief...Punish...Snitch, Parole or Die...Punishment!

(1)

EXHIBIT                                    EXHIBIT

To administer and operate its "Validated Indeterminate SHU Class" Program, Cdc/Pbsp Upper Management designed its SHU Program to deliberately deprive SHU Prisoners of qualitative essentials (eg. sufficient food quantity, human interaction/socialization, phone calls with family/love ones contact visitation, education, religious, recreational and overall self-improvement services conducive to natural human growth & development).

Cdc's Classification custody designation (ie, Max B.) is non-existent to this Class of Prisoners, who Cdc have guaranteed the State's (& Federal) Judiciary & this Legislature is placed/retained in isolation confinement for administrative reasons and not "Punishment." However, the material facts supports a finding that Pbsp SHU "Policy-Operations-Program" conditions are designed for "Punishment"! Giving Rise to Human Rights violations.

Any argument by Cdc/Pbsp that for the last decade and more, its "SHU Policy-Operations-Programs" are designed to "Punish" individual inmate's "Behavior" violating Rules (ie, "Disciplinary Punishment", as opposed to "Administrative Housing") is contradicted by the recent Ruling by the State's Administrative (O.A.L.) & Judicial (Sac. Sup. Ct) entities that Cdc/Pbsp has been operating an illegal underground Debriefing Policy toward its "Validated-Indeterminate Class" (Housed in SHU for administrative, non-disciplinary & Punitive Reasons).

ACTION REQUESTED:

1). THAT while undertaking the addressing of the issues raised by those in SHU due to "status", as opposed to "behavioral-conduct", that Cdc place this distinct class in a facility ("C" or "D" facility) and accord us Max B-GA Privileges, as administrative housed & Not disciplinary restricted. This provides us an apparent "Good Faith Effort" by Cdc/Pbsp upper management to be authentically committed to addressing & resolving the Core issues presented to you during the initiation of the Non-Violent Protest, which have yet to conclude its effort.

2) Arrange to meet with the same Prisoners who Met with the Senate & upper Cdc/Pbsp Management during (year of April 2000) during Relative Negotiation talks on Releasing prisoners in SHU, cause of status & Not behavior.

CDC - Prisoners in Solitary Confinement (SHU)

=EXHIBIT=

(2)

To: California State Senate
    Select Committee on Cal. Correctional System
    Sen. Gloria Romero, Chair
    "  Bruce McPherson, Vice Chair
    Senators: Burton, Denham, Karnette, Kuehl, Machado,
            Vasconcellos.


Re: BLACK COMMUNITY COMPLAINT: DISCRIMINATORY PRACTICE OF EXCLUSION AFRIKAN/BLACK
CLASS ISSUES OF THE STATE-SANCTIONED UTILIZATION OF ITS PENAL SYSTEM
TO KEEP TARGETED CLASS OF MEMBERS FROM THE LARGER AFRIKAN/BLACK COM-
MUNITY "POLITICALLY-SEGREGATED" IN EXTREME ISOLATION CONFINEMENT;
DEPRIVING THEM OF THE INALIENABLE HUMYN RIGHTS TO FAIRLY COMMUNICATE,
SOCIALIZE, VISIT, INTERACT WITH THEIR FAMILIES/LOVEONES/COMMUNITY, AS WELL AS
BE AFFORDED EQUAL/FAIR ACCESS TO THOSE MEANS NECESSARY FOR MEETING 1/
THE STATE'S PAROLE REQUIREMENTS TO BE RELEASED TO RETURN HOME!

———————————— * ———————————— * ————————————

I. BACKGROUND:
    During the late Sixties/Seventies, the Peoples' social radical movements in the State of
    Kalifornia & abroad, inevitably permeated its educational & penal institutions. In which the
    State's prison population became increasingly politicized, and these political conscious
    prisoners and their struggle for Freedom, Justice and Human Rights received con-
    siderable public & legislative support, particularly in the area of segregated prisoners. 2/

    Early 1971-72; then Governor Ronald Reagan ordered the class of Political-conscious
    Afrikan/Black Prisoners activists (that the State's prison system Profiled-Classified-
    labeled as "revolutionaries", "militants", etc) to be isolated and segregated in special
    housing (A.C./B-section SQ). 3/

    In 1976, the U.S. Federal Court ruled that the State's correctional department's penal
    officials could not utilize its isolation confinement system to house prisoners for
    their political beliefs, ideas, literature, And ordered this class of Afrikan/black pri-
    soners immediate release. 4/ COMPLAINANTS HAVE REMAINED POLITICALLY SEGREGATED. ON
II. STATE-SANCTIONED    July, 2003, the newly elected officials of this govt. Branch came to where this class
    The State's prison policies (both written & unwritten) and practices of targeting this
    class of Afrikan/black politically-conscious imprisoned-person's from the Afrikan/black
    Communities is engrained in the class/Racial antagonism of how the State employed majority
    White/European Administrators, Management, supervisoral heads employes their collective
    Euro Frame of reference in subjectively deciding, Judging, classifying, labeling,
    validating, placing & retaining those Afrikan/Black Prisoners in isolation confinement.
    And for the last over thirty years; this arbitrary & discriminatory pattern and
    practice of institutional racism has enabled the State White Correctional officials
    to keep this class of imprisoned members of the Black Community in Political
    segregation, for decades, since mid-70s and before, 5/ IN VIOLATION OF Federal Law 6/

    Both the Afrikan/Black class of Politically-segregated Prisoners and their families/
    Communities (who are equally adversely affected by these State-sanctioned prison
    segregation Policies & practices) have futily attempted to seek governmental redress
    (via complaining to State Prison & Congressional officials), but these white officials in
    positions of Authority to effect genuine change over the state's prison policies has
    continuously failed to fairly & impartially Address & provide relief in this mat-
    ter.

Never Forget, Never Again, Never Alone
12759 Foothill Blvd., Suite. C151
Rancho Cucamonga, California
91739-9336
neverforgetneveralone@yahoo.com

November 5, 2002

Senator John Burton
State Capitol Room 205
Sacramento, California
95814

Dear Senator Burton,

I am writing, as a concerned loved one/family member of an inmate housed at Pelican Bay State Prison, Security Housing Unit.

We are very concerned with the conditions as well as the extended length of the indeterminate S.H.U. terms our loved ones are being forced to serve.

We are advocating for improved conditions and clear and defined criteria for these indeterminate terms; we are requesting that among these changes representatives from the S.H.U. prisoners be included in the dialogue relating the their living environment and conditions.

We look forward to hearing from you in the near future.

Sincerely,

STATE CAPITOL, ROOM 2080
SACRAMENTO, CA 95814
(916) 445-1353
(916) 324-4823 FAX

10951 W. PICO BLVD., #202
LOS ANGELES, CA 90064
(310) 441-9084
(310) 443-0724 FAX

*Senate*

*California Legislature*

**TOM HAYDEN**

SENATOR

TWENTY-THIRD DISTRICT



CHAIR:
NATURAL RESOURCES
AND WILDLIFE
SELECT COMMITTEE ON:
HIGHER EDUCATION
SUBCOMMITTEE ON COASTAL
AND OCEAN PROTECTION
AND RESTORATION
COMMITTEES:
BUDGET AND FISCAL REVIEW
EDUCATION
ENVIRONMENTAL QUALITY
TRANSPORTATION

April 12, 2000

Ronnie Dewberry
C-35671
D6/109L
Pelican Bay State Prison
Crescent City, CA 95532

Dear Mr. Dewberry,

This letter is the follow up to our meeting I promised. I hope things are going well with your discussions with department administration. Yesterday, Senator Hayden I met with CDC Director Cal Terhune. While cautious, Mr. Terhune understood what could be accomplished if Warden Ayers' proposal is implemented. However, Mr. Terhune also voiced concerns over letting SHU inmates out into GP.

His concerns notwithstanding, Mr. Terhune urged that John and myself continue to work with you and Warden Ayers on this peace process. I am honored to do so. I anticipate a return to Pelican Bay within the next few weeks to continue our talks.

Senator Hayden is very supportive and has directed John and myself to help make this inmate-involved approach to peace happen.

Sincerely,

Rocky Rushing

*EXHIBIT*

EXHIBIT
"F"

Community Citizenry's Petitioner's Collective efforts to
Petition Government officials for redress (2003 to Present)

(1) PEOPLES PETITION For Freedom, Justice & Human Rights

(2) Petitioner's (Families, Friends, Relatives, et al)/Community Class Action
Petition For relief

(3) Citizenry Complaint (re: Respondents Violation of Federal Madrid
Case, c90-3094); & Long Term Effect.

(22 pages)

# EXHIBIT "F"

EXHIBIT= (15)

## Re: CITIZEN COMPLAINT

*PLEASE BE NOTIFIED* that for the last fifteen (15) years the state agency "CDC" and its appointed state officials and employees have utilized taxpayers monies (entrusted to the *State of California* via your governmental system) to construct basically this state facility to house, feed, care for, treat and supposedly safe keep imprisoned persons entrusted to this state agency by the California Judiciary (pursuant to Cal. Penal code, section 5054, et seq.)

The *State of California* mandates that all of its agencies, departmental institutions, and facilities constructed for housing, feeding, caring, treating, and safe keeping people, officially comply with all state and federal health and safety building construction and operational codes, statutes and regulation laws.

For nearly a decade and a half, complainants and their similar situated class, imprisoned in the state's corrections department (CDC's) *Pelican Bay Isolation Facilities* (CDC's – SHU). They have been kept in haphazard, unsafe and unhealthy concrete housing structures and environs that expose and subject the complainants to hazardous conditions and elements. This so called housing is dangerous and potentially life threatening to the health, safety, and overall well-being.

## I. FACILITIES

The state's CDC facility at *Pelican Bay State Prison* comprise of two structures identified as "C" and "D" facilities. Both facilities were poorly constructed from inferior quality concrete mixture void of the required insulation necessary for human habitation. Throughout the year, the rain enters through the concrete structures, flooding the hallways, housing unit areas, and kitchen, etc. Also, the electric power is continuously cut off, and plumbing pipes leak causing more flooding.

(note: *this agency deliberately and/or willfully omitted this information from its state official environmental impact report to local, county, state and federal governments.*)

## II HOUSING UNIT CELLS

### (A) STRUCTURE:

The facilities consist of a total of 22 units with 48 cells in each unit, which house one or two people in each cell. The housing cells are manufactured from poor quality concrete slabs, held in place by steel beams. The state agency CDC has failed to provide any insulation covering upon the outside concrete wall slabs in back of the cells, allowing complainants to be exposed to the outside winter cold and summer heat elements that constantly permeate through the outside wall structure into the interior cells, causing complainants to either freeze or feel extremely overheated.

*(note: Said CDC agency deliberately & willfully omitted this information in their state official environmental impact reports to local county, state and federal governments.)*

### (B) LIVING QUARTERS:

The climate inside these cells warehousing complainants 22½ to 24 hours a day are directly impacted by the outside weather coming into the cell through the concrete walls. It is trapped within the interior (especially the back bunk areas) of the occupants living quarters. It lingers and intensifies the temperature within the cells. For example, during winter months (Dec. 1989 to present), the inside of complainants cells becomes freezing cold leaving these occupants forced to sleep, eat, sit, bathe, etc. in these inhabitable weather conditions. It causes the majority of the paint inside complainant's cells and shower areas to peel, getting on the occupant's body, hair and in their eyes, food and mouth. It is also ingested, which is creating life-threatening health conditions. *(see example sample of paint peeling).*

### (B) ARTIFICIAL LIGHTING:

For the past 15 years or so, many of the complainants warehoused in the CDC isolation facilities have been continuously exposed to artificial, poor quality lighting

= EXHIBIT =

from fixtures inside the cells, section pods, and facility.
This denies them all access to any natural sunlight,
gradually damaging and/or destroying their eyesight. For
example, upon his arrival, (Nov., 1990), one complainant
had excellent healthy eyes with 20/20 vision. After nearly
14 years of deliberately being denied access to natural
sunlight, and forced to see, read, etc. by artificial lighting,
this complainant suffers from a degenerative, debilitating
eye disease. This disease causes chronic eye pain, blurred
vision, headaches. The complainant is forced to use special
tinted eyewear. Other complainants have complained of
similar eye complications such as blurring and loss of
vision. Many are now forced to wear glasses. It is well
established from data reported by the medical science
community that little or no sunlight has a damaging effect
upon people in general, and people of color in particular.
It should be noted that the majority of persons
being kept indefinitely locked in these isolation (SHU)
facilities are people of color. This would include people of
Hispanic and African descent. *(also see above "notes")*

(C) <u>HEATING/COOLING VENTILATION</u>:

The facility's ventilation system does not provide adequate
fresh air to the complainants warehoused in the housing
unit cells. The air that is sometime provided is stale, dirty
recycled air, barely entering through the vents. In the
winter the air is extremely cold, further aggravating an
already freezing climate. The same holds true for the hot
air in the summer. All in all, whatever recycled air that is
provided through the inadequate ventilation system is full
of dust and other particles, causing complainants to suffer
respiratory complications in their breathing. For example,
many of the complainants who had no respiratory
breathing medical conditions upon arrival years ago, are
now suffering severely from such respiratory related
medical health complications as sinus problems, asthma,
etc. Many are diagnosed, and on some breathing inhalers
and other prescribed medications. *(see above note: "A &
B")*.

EXHIBIT

(D)  ANIMAL KENNEL (aka yard):

At the end of each housing unit – pods A-F, there exists what the state officials/employees refer to as a "yard". The "yard" is actually a small concrete walled enclosure approximately the size of a small dog kennel (similar to what is found at an animal shelter) with sky high walls, preventing any view of the outside world. It has a small opening at the top partially covered with plexiglass, that leaks when it rains, causing miniature flooding. The person using the "yard" must stand in this flood water during their 90 minutes there. Over the course of the years, these kennel yards have accumulated large concentrations of mildew fungus, up and down the walls and on the concrete kennel floor. The complainants breathe/ingest the spores of this fungus environment, each time they step onto this kennel yard. This further contributes to, and aggravates complaints of respiratory related medical and health conditions. (see above note — A & B)

(E)  SANITATION:

The toilet and sink plumbing system in complainant's assigned housing cells are enjoined. This causes the waste matter in one toilet to come in the toilet of another cell, which backed up. This in turn gets into the air of the cells and is inhaled by the occupants, creating an unhealthy environment. Also the water coming out of the sink turns clothes bluish green in color. (see notes A & B above)

(F)  MEDICAL/HEALTH CARE TREATMENT:

The majority of complainants being kept indefinitely in these state isolation facilities, under extremely hazardous conditions over the years, have been injured, afflicted and suffer from one or more biological, physiological, etc. medical/health conditions. Furthermore, as a result of the complainants being kept enclosed in these small concrete housing unit pods/cells, its common for prison guards to enter and bring their cold/flu viruses, diseases, etc and spread them from host to host, via coughing, sneezing, handling food trays, etc. The state's medical/health employees responsible for treating and caring for complainants medical/health conditions, do not take into

= EXHIBIT =

consideration the adverse effects that years (over a decade) of exposure to these environmental, structural, etc. conditions have had on the complainants medical and overall health. Medication has not remedied, prevented or adequately treated the occupant's conditions, due to failure to consider the effects of the isolation *SHU* conditions within the etiology of the medical problems.

(G)  <u>IDLENESS, DESENSITIVITY & DEHUMANIZATION:</u>

The lack of social interaction with other human beings, under extreme isolation confinement conditions, with no recreational ability, in particular with complainant's families, is cruel and inhuman. It has a debilitating, in fact gradual adverse effect upon the natural innate state of being for the complainants. *(see note A & B above)*

<u>CONCLUSION:</u>

*The public citizenry of the State of California, including the families, relatives and communities of the complainants themselves and the local, county, state and federal elected and appointed officials, each have a vested interest in the violate health & safety conditions which have been described herein. Based upon the foregoing reasons, the complainants submit this official governmental complaint against said state-regulated agency CDC and its condemnable, unsafe, unhealthy, uninhabitable concrete-entombed isolation facilities "C" and "D" at Pelican Bay institution.*

*Respectfully submitted,*
*Complainants*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ALEJANDRO MADRID, et. al., on
behalf of themselves and all others
similarly situated,

         Plaintiffs,

         v.

JEANNE WOODFORD, et. al.,
Director, California Department of
Corrections, et. al.,

         Defendants.

NO. C90-3094 TEH

CLASS ACTION

ORDER

    The Court is in receipt of a *pro se* "Notice of State Prison Officials' Failure to Comply with Court's Ruling in Madrid v. Woodford," attached hereto, which was submitted by Jim Williamson on behalf of himself and several other inmates confined at the Pelican Bay State Prison Security Housing Unit.   The Court construes this "Notice" as a motion seeking relief for SHU inmates under *Madrid*.

    Mr. Williamson and those he seeks to represent are members of the certified class in this case.  As such, they are represented by class counsel.  Accordingly, any motions in this case must be made through class counsel (Prison Law Office, General Delivery, San Quentin, California 94964).  Class members can not file motions *pro se* (i.e. representing themselves or others) seeking relief. Accordingly, and good cause appearing, Mr. William's "motion" must be denied. The Court will, however, forward a copy of the "motion" to the Special Master for his review.

IT IS SO ORDERED.

DATED 9/22/04

                              PHELTON E. HENDERSON
                              UNITED STATES DISTRICT JUDGE

-1-

= EXHIBIT =

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

9  PELICAN BAY STATE PRISON SHU CLASS
10 PRISONERS,      Complainants,
11        V.
12 STATE OF CALIFORNIA, DIR. OF COR-
13 RECTIONS / PELICAN BAY PRISON WARDEN
   et.al.        Defendants,

C-90-3094 T.E.H

NOTICE OF STATE PRISON
OFFICIALS FAILURE TO COM-
PLY WITH COURT'S RULING
IN MADRID V. WOODFORD

15 TO: THE HONORABLE JUDGE THELTON HENDERSON OF NORTHERN DISTRICT COURT

17 COMES NOW Complainants of the above-entitled class case
18 Madrid v. TERHUNE/Woodford, and submits the accompanying
19 CITIZENRY Class Complaint for notification of the conti-
20 nuing exposure/subjecting Complainants class to unlawful/
21 unconstitutional cruel and unusual punitive conditions and
22 mistreatment.

Respectfully Submitted,

25 DATED: 8/4th/04

Jim Williamson. et.al
PBSP-SHU Class Complainants

D-34288

= EXHIBIT =

Sent to SAC. 6/14/07

EXHIBIT

February 6, 2007

Dear Elected and Appointed officials:

Enclosed is a copy of the citizenry complaint being submitted for filing with your office on behalf of the chief complainants and supporters with third party standing addressing the conditions of confinement in California's "solitary housing units" and similar isolation cells.

A prompt and complete response from your respective office is requested. Time is of the essence due to the serious circumstances and conditions detailed in these documents. The dire nature of this situation cannot be overstated. In addition to the cruel and dehumanizing conditions, this form of confinement is quickly becoming a matter of life and death for many of the complainants. The accompanying evidentiary affidavits, exhibit documentary records and citizenry petition support this complaint and call for a serious reevaluation of not only the cases of prisoners listed here, but also the California State Prison system and its use of long term isolation.

As citizens of the state and nation, it is our duty to notify all involved responsible (elected/appointed) officials of the human, constitutional, civil, and statutory/administrative violations and omissions of civil death execution and torture for redress/relief guaranteed by the United States, California and International laws.[1]

Respectfully,

Concerned Citizenry

Ashley Gregory

Ines Gardilcic

Encl: (1) Cit. Comp/Affidavits,
Exhibit and petitions.

---

[1] Calif. Constitution, Article 1, sections 2 (a), 17&24; U.S. Constitution Amendments 1, 8, & 14; Title 42 U.S. codes/ California civil codes; Civil Rights act; Government codes/penal codes/admin code and regulations; U.N. Standard minimum rules for the treatment of prisoners; resolution 633CI (xxiv)/ International covenant on civil and political rights, article 7; convention on the elimination of all forms of racial discrimination/ Universal Declaration of Human Rights.

To: Governor of California
Secretary of C.D.C.R.
Office of Inspector General

United States Northern Dist. Court. Calif.
Attn: John Hagar, Special Mast/
Thelton Henderson, Dist. Judge
Robert Sillen, Fed. Receiver

Senate Select Comm.-Cal. Corr. System
Attn: Senator Gloria Romero

Re: Long Term Isolation/Poor Health Care-Food-Medical Treatment=Death Sentence for
California's Imprisoned Persons Kept In Its Solitary Confinement ("SHU") Facilities
Indeterminately at Pelican Bay/Corcoran State Prisons.

Dear State and Federal Officials:
Please take notice that we, complainants James Williamson (D34288), Paul Jones
(B26077), George Gonzalez (C12696), Ronnie Dewberry (C35671), James Benson
(D63433), Geoffery Franklin (C08545), Paul Redd (B72683) Randall Ellis (C68764), and
similar-situated others, (who have been kept in this state's solitary confinement ("SHU")
facilities for decade(s), are submitting this complaint and signed petition, inclusive of
Affidavits/Declaration, prison records of futilely exhausted administrative appeals* and
requests the following:

The state of California adopt, implement and enforce the 'Findings and
Recommendations' of the U.S. Commission on Safety and Abuse in America's
Prisons Final 2006 Report with its solitary Confinement ("SHU") Facilities, and
as such:

1). End Conditions of Isolation (p.14)
Ensure that complainants and similar-situated other segregated prisoners have
regular and meaningful contact, and free from extreme physical conditions that
cause lasting harm, (pp.52-57) (see accompanying records, affidavits, petition)

2). Make Segregation a Last Resort (p.14)
Make a more productive form of confinement, give complainants and other
segregated prisoners opportunities to fully engage in treatment, work, study, and
other productive activities, and to feel part of a community (pp.57-59)

3). Stop Long-Term Solitary Confinement & Release Complainants, and similar-
situated others, who have been kept warehoused for the last ten (10) to forty (40)
years (and counting);

4). Provide Complainants, et al., with immediate access to:
· Adequate natural sunlight
· Quality health care/medical treatment
· Wholesome nutritional foods/special diets/vitamins

---

* The prison records and other documentation available in support of these issues are too voluminous to
include, but can be provided to interested parties.

1

= EXHIBIT =

Families, Friends, Relatives, et al.
Of Imprisoned Persons Kept in
Isolation Confinement (SHU) for
The Last Ten to Forty Years

(Amicus Curiar for Class Parties)

THE GOVERNMENT OF THE STATE OF CALIFORNIA

Families, Relatives, Friends of and for James Williamson (D34288), Paul Jones (B26077), Richard Johnson (K53293), Charles Coleman (C60680), Harold Shamburger (D16530), Joseph Salvant (C08565), Lois Powell (B59864), Paul Redd (B72683), Randall Ellis (C68764), Ronnie Dewberry (C35671), Kenneth Carter (B52119), Daryl Burnett (B60892), Clyde Jackson (C33559), James Benson (C34599), Michael Reinhart (C39412), Leonard Alexander (B72288), Rueben Williams (B72882), Larry Woodard (C21690), James Harvey (C48884), Michael Cooperwood (C45418), Jeffery Franklin (C08545), Tyrone Robinson (C82030), Hugo Pinell (A88401), Lashawn Taylor (H14167), Johnell Bailey (K03590), Robert Taylor (D03780), Marcus Harrison (H54079), Jay Burton (J45095), George Mosley (C33188)

Plaintiffs,

vs.

State of California (through the persons of California Department of Corrections, Board of Prison Terms,) et al.

Defendants.

Class Action

Petition for Relief

(Violations Constitutional, Statutory, Human, and Civil Rights to Life, Liberty, Education, Equal Protection, Due Process, and Freedom from Discrimination, Cruel and Unusual Punishment)

Families, Friends, Relatives of (for and on behalf) those Imprisoned Persons Kept in Isolation Confinement for last Ten-Forty years

(Amicus Curiar)

14

*EXHIBIT*

_EXHIBIT_

Parties

(Name/Location of those Unjustly Kept in Isolation Confinement)

1. Petitioner Paul Jones, B26077/D10-205, PO Box 7500, Crescent City, CA 95532
2. Petitioner Kenneth Carter, B52119/C5-120, PO Box 7500, Crescent City, CA 95532
3. Petitioner Daryl Burnett, B60892/C5-120, PO Box 7500, Crescent City, CA 95532
4. Petitioner Louis Powell, B59864/C3-117, PO Box 7500, Crescent City, CA 95532
5. Petitioner Richard Johnson, K53293/D10-106, PO Box 7500, Crescent City, CA 95532
6. Petitioner James Benson, D63433/C2-201, PO Box 7500, Crescent City, CA 95532
7. Petitioner Paul Redd, B72683/C2-202, PO Box 7500, Crescent City, CA 95532
8. Petitioner Rueben Williams, B72882/C5-117, PO Box 7500, Crescent City, CA 95532
9. Petitioner Charles Coleman, C60680/D10-202, PO Box 7500, Crescent City, CA 95532
10. Petitioner Leonard Alexander, B72288/D6-209, PO Box 7500, Crescent City, CA 95532
11. Petitioner Joseph Salyani, C08365/D10-104, PO Box 7500, Crescent City, CA 95532
12. Petitioner Ronnie Dewberry, C35671/D6-212, PO Box 7500, Crescent City, CA 95532
13. Petitioner Harold Shamburger, D16530/D10-201, PO Box 7500, Crescent City, CA 95532
14. Petitioner Jeffery Franklin, C08545/C11-219, PO Box 7500, Crescent City, CA 95532
15. Petitioner Clyde Jackson, C33559/D6-111, PO Box 7500, Crescent City, CA 95532
16. Petitioner Michael Rhinehart, C39412/C3-109, PO Box 7500, Crescent City, CA 95532
17. Petitioner James Williamson, D34288/D10-205, PO Box 7500, Crescent City, CA 95532
18. Petitioner Lawrence Woodard, C21690/D8-110, PO Box 7500, Crescent City, CA 95532
19. Petitioner Hugo Pinell, A88401/D3-212, PO Box 7500, Crescent City, CA 95532
20. Petitioner James Harvy, C48884/D6-112, PO Box 7500, Crescent City, CA 95532
21. Petitioner Michael Cooperwood, G46411/C7-123, PO 7500, Crescent City, CA 95532
22. Petitioner Robert Taylor, D03780/D6-111, PO Box 7500, Crescent City, CA 95532
23. Petitioner Johnell Barley, K03390/C8-103, PO Box 7500, Crescent City, CA 95532
24. Petitioner Lashawn Taylor, H14167/D6-212, PO Box 7500, Crescent City, CA 95532
25. Petitioner Marcus Harrison, H54077/D10-122, PO Box 7500, Crescent City, CA 95532
26. Petitioner Randall Ellis, C68764/4B-3L-12, PO Box 3481, Corcoran, CA 93212
27. Petitioner George Mosley, C33188/4B-3L-12, PO Box 3481, Corcoran, CA 93212
28. Petitioner Tyrone Robinson, C82830/4B-3L-05, PO Box 3481, Corcoran, CA 93212
29. Petitioner                    , PO Box 7500, Crescent City, CA 95532

- _EXHIBIT_ -

Class Community Membership, Representation of Human Rights:

Complaints, each and all, comprise of a class of Afrikans/Blacks (New Afrikans) with the same and/or similar historical-racial/national-spirital-social-political-economical-cultural-geographical-environmental background, which embodies their collective inalienable human rights;

Complaints' same shared inalienable Human rights declares their 'quality life' status and assumes among the powers of the earth, the separate and equal station, to which the laws of nature and natures God entitles them, a decent respect to the Freedoms guaranteed to all Humanity, including but not limited to:

(a) The Right to live, have a family, procreate, enjoy life, safety, peace and happiness;

(b) The Right to be Free from racial, political, national and class discrimination by governmental officials and employees;

(c) The Right to be free from being buried alive for decades in the California State governmental isolation confinement and subjected to extreme inhumane, degrading conditions and treatment of torture;

(d) The Right to be free to share in their collective political, spiritual, national/racial, social, cultural and economical beliefs, ideas, expressions, etc., without fear of intrusion, infringement and persecution by governmental officials and employees;

(e) The Right to be free from the racist, arbitrary and punitive application and utilization of California state governmental sanctioned power(s), authority(s) positions, systems, institutions policies, regulations, procedures and patterns of practice against complainants class;

(f) The Right to be free from majority non-Afrikan state prison/parole officials and non-Black employees applying their white/European subjective sentiments, views, etc. in judgments of the Black (New Afrikan) complaints class, when in fact such partial subjectivity is drawn from these state employees' own distinct and separate collective frame of references (that is, their racial class historical experiences, privileges, relations, etc.) All of which are distinct in cultural, economical, political, social background realities and relations to complainant's class background;

(g) The Right to be fairly, equally and fully represented in the government which guarantees "meaningful" access to the government, its representatives, and have our concerns, issues, grievances, complaints, etc., fairly and fully reviewed, addressed and resolved.

Complaint No. 1: No Meaningful Representation of Government

No right is more precious in a so-called free democratic nation than that of having a voice in the government, who formulate, determines and initiate laws under which all is to be governed. Other rights, even the most basic, are illusionary, if the right to "real meaningful" governmental access and full, just and impartial representation is undermined and denied. (See Calif. Cons., Art.1, Sect.2; U.S.C.A. 1st & 14th)

Complaints' class has on numerous occasions over the past years, raised, complained of, presented and attempted to receive governmental redress/relief of these

EXHIBIT

issues and concerns (herein) involving human, constitutional and civil rights violations via governmental officials responsible for regulating the involved governmental department (CDC), agency (BPT) and their employees who's involved (directly or indirectly) with the violations, while acting under color of authority for the state's government. (See class file records)*

All attempted efforts by complainant's class to seek "meaningful" governmental redress and relief (via utilization of the government's established system(s) for aggrieving, appealing, complaining and petitioning the government) was ignored, shunned, diverted and denied. (See class file records)

Within this last year alone, complainants class made several attempts to establish official contact with the government (via its legislative branch with letters, complaints, attending public meetings of its senate subcommittee) responsible for oversight review of the government's penal and parole departments, policies, systems, officials, employees and practices that gave rise to the violations stated herein this subsequent complaint. (See also complainants' class 'letter to Calif. Senate' via Senators Polanco and Romero, Subcommittees)

In July of 2003, California governmental representatives/law makers visited the state's isolation confinement facilities at Pelican Bay State Prison (PBSP-SHU) and held numerous interviews with prisoners there. Yet, Complainants' Class was not represented.

Complaint #2: Violations of Human, Constitutional and Civil Rights

"The right to be free from racial, political, etc., discrimination is guaranteed and protected by international, United States and California laws, treaties, codes, statues, constitutions and regulations. (see United Nations' Universal Declaration of Human Rights' Article 1,et. Seq.; U.S. Constitution Amendments 1st & 14th, Civil Rights Act, Title 42; &Calif. Government, Penal Code, Civil Codes and Regulations, also see Lee v. Washington, 390 U.S. 330, 18 S. Ct. 994)

(A) Political Segregation (via Institutional Racism):

An entire body of politically conscious New Afrikan men within Complainants' Class have been, and continue to be kept in extreme isolation confinement (PBSP/Corcoran-SHU) by the State of Calif. Through its Department of Corrections over several decades, due to CDC state sanctioned discriminatory racial group classification status, unjustly and punitively applied upon these politically-segregated men without evidence of criminal conspiracy/activities or acts of behavioral misconduct/serious disciplinary misconduct violations. (See Robinson v. California, 370 U.S. 660,825 S. Ct. 137; Sitawa N. Jamaa (Dewberry v. California (CDC/BPT) et.al. (2001) U.S. North. Dist. Ct., Case No. _____ "complaint"; Inre: Paul Jones, Jr., Habeas Petition Case No. HCPB 03-5232)

The State of California's Department of Corrections and BPT are the two state governmental agencies and their appointed officials are directly responsible for the overall care, treatment and length of confinement of all persons locked up in the prison system, including this distinct class of New Afrikan/Black men.

Those prison and parole officials and employees are mostly white Anglo-Amerikans, who have been entrusted by the state with the power and authority to decide, formulate, implement and enforce the prison and parole policies, systems and procedural practices on behalf of the governor and CCPOA Union. Throughout the history to the

---

*Due to the class material facts/evidence documentation being voluminous to include with this mailing, so the reader can make these file records available to those willing to grant these issues a just and meaningful

present day these prison and parole officials have conceived, injected and applied their own white collective Eurocentric biases, prejudices, preconceived notions of, and about, Afrikans/Blacks as their frame of reference for establishing their prison and parole policies on treating Afrikan/Black prisoners and their outside supporters. (see Appendix " ")

Accordingly, throughout the years, these white majority penal and parole officials/employees have drafted/conceptualized/formulated and officiated their won Eurocentric-framed subjective sentiments (i.e., views, feelings, biases, opinions, prejudices, etc.,) and judgments into the state governing prison and parole decision-making judgment, classification, validation system and process, resulting in a partial race-class oriented prison/parole "status" (politically motivated) to justify the continuing political segregation of complaints over the decades.

In the development of this discriminatory, arbitrary and punitive governmental race-based classification "status," the officials continue to refer to their partial-created state (CdC/BPT) – record/files documenting the historical racial and class antagonism (inside and outside of prison), in which these employees inject their own biases.

(Some of the politically conscious New Afrikan men within Complainants' Class remains profiled/labeled/classified and politically segregated in the state's isolation confinement facilities (A/C, MCU, MAX B, O-Wing, Ad-Seg and SHU) since the governor issued his state lock-up policy).

This race-based record was utilized by the state to create official "class status" of complainants to profile and validate them as presumed threats to justify keeping them isolated for decades (30 plus years and counting).

The state race-based class status profiling scheme utilized upon complainants began decades ago when these officials first classified complainants as "Black militants," "radicals," "revolutionaries," "nationalist," etc., during the Reagan Administration of the 1960's & 1970's. (CDC Archives; Cal. Senate Archives; Gov. Reagan Exec. Orders; Senate Hearings; & CDC Reports)

What the current CdC/BPT record deliberately omits is its race-based class status scheme toward complainants' politically-segregated class is the decision to keep this class of Afrikan Blacks in isolation confinement facilities, remain politically and racially motivated, based on the following:

- During the late 1960's, early '70's, the California State Prison Populace in general, and Complainants' Class in particular, became increasingly "politicized" as a result of the outside social, radical popular movements permeating the states penal institutions. (CdC reports, Archives-reports to Gov. Ronald Reagan Cal. Prisons and Violence, and Task Force Red. On Revolutionary Organizations by CDC 1971 and 1978); and

- In early 1971-1972, then Cal. Governor Ronald Reagan ordered Complainants' Class of Afrikan/Blacks politically-segregated in isolation confinement facilities, based upon this state's race-based status. (Ibid; "U.S. Congress H.D.R., Subcommittee Rep. #3 Committee on the judiciary. "P.143; Prisoners Refuse and Prison Rights: Calif. p.p. 71-72)

- In 1976, the U.S. Federal Court ruled that the state's (CdC) prison officials was prohibited from keeping Complainants' Class in isolation

*EXHIBIT*

confinement for their political beliefs, ideas and revolutionary literature, and ordered their release. (Spain v. Procunier, 408 Fed. Supp. 534-35)

To counter the federal court's order releasing Complainants' Class, the state implemented, and enforced, a process called "debriefing," which criminalizes a prisoners political beliefs, ideas, under the auspices of no longer being classified "militants, revolutionaries, nationalists," but now are referred to as "gang affiliates" based upon the same racist white officials subjectivity that the state has historically applied upon our class. (CDC Archive Rec; Sitawa J.N. (Dewberry) v. Calif. (CdC/BPT)

In November 1998, the Calif. State Office of Administrative Law found that the debriefing policy was an "underground" regulation being applied by prison officials under 'presumption' that prisoners would commit a 'future' rule violation if released from isolation confinement into the general population. (CDC State Recs. O.A.L. Determination No. _____, dates 11/13/98)

Prison officials immediately asked to counter the serious implications from exposure of their arbitrary and punitive validation debriefing system by instituting and enforcing a "new revised" debriefing procedural process called "inactive" gang 'status'. (CDC State Administrative Bulletin No. 98/0, dated 8/19/98; and 15 C.C.R. 3000, 3341.5 et. seq., and 3378, et. Seq.; D.O.M 51010, et seq.)

The state penal employees involved in the formulation of this group labeling system deliberately included a "class exception" clause that allows for prison officials to continue keeping our designated class in extreme isolation confinement permanently, notwithstanding that they are just as eligible for release as anyone else without any substantiated evidence of "activity," including those released. (Ibid. AB 98/8, pp. 6-7; 15 C.C.R. 3378 and 3379 (d) (3))

Complainants' Class remains classified as a threat because of CdC's class-racial status," when other prisoners in the general population are repeatedly locked up for serious rule violations of stabbings, assaults, batterys, murders, drug trafficking, etc., and are released back to general population after a few months in SHU, our class remains permanently locked up, literally without any serious rule violation having been committed. (CDC Case recs; C.C.R. 3341.5 © (2) (A) & (b))

Complainants' politically-segregated class are being deliberately denied the right to have their "individual behavior conduct" reviewed and considered by the prison officials at classification and BPT hearings, just as all other prisoners in the Calif. Dept. of Corrections. (15 C.C.R. & 3375 (a)

(8) The Stated Policies of CDC Do Not Protect Complainant's Rights

The State of California, through its CDC policies, continues to have serious harmful and inhumane effects upon complainant's entire Afikan/Black class, in violation their human, constitutional, statutory and civil rights.

• (¾). Continuing/Permanent Denials of Parole Release.

The records of the State of Calif. Demonstrates a clear systematic pattern of practice, of denying complainants access to the state's parole requirements services, through its BPT parole-release denials. (Calif. State Parole/Prison Recs.; Complainants'. Class Files/Recs.) Complainant's kept in isolation confinement are not given BPT parole dates.

EXHIBIT

The Calif. BPT determination of politically segregated New Afrikans parole eligibility is predicated upon the CDC automatically excluding this class from any just, impartial or meaningful parole review consideration.

Currently, there are those within Complainant's Class who have served over 20, 30, 40 plus years on their original court sentence that granted them the mandatory right to "possibility of parole," upon completion of the set terms legally effected by the California Adult Authority's matrix for serving out the court's "life with possibility of parole," official sentence, (Cal. State, CDC/BPT, records and Complainants Class Records).

The state's parole officials and governor are responsible for the administration and enforcement of the Board of Prison Terms. These governmental officials draw upon their Non-Afrikan (Whites) collective frame of reference, ideologies, political, social, cultural, religious experience and backgrounds to subjectively determine and deny complainant's Black class any meaningful, impartial parole hearing-release date review and considerations. Hence, making this state parole practice discriminatory, arbitrary, and a complete farce and sham.

The BPT continually deny complainants parole release, after they have served years, over and beyond, the required matrix time period has unlawfully allowed these officials to override the states judiciary sentence from its original court order of life with possibility of parole, which is equivalent to a 'civil death' penalty judgment and sentenced!

Complainants' Class is adversely affected by these state officials changing these "parole opportunity" court judgments to civil death life without parole decisions, because it results in the permanent exclusion of a segment of Complainants' Class from their family, extended family, community which denies complainants their racial class of husbands, brothers, sons, fathers, etc., and opportunity to establish, maintain and enjoy a human, social, emotional bond/relationship, and facilitate the political, social-economic needs of their family and community had they been granted parole release.

Over the past 30 plus years, not a single Black complainant has been granted parole, because of the "racial-class" governmental status attached to them by the State of California (via CDC/BPT).

(C) To Note Access to Governmental Representation and Redress

Based on the material facts stated above, the government knowingly deprives Complainants' Class of a segment of their community's census count, economic funding, resource development potential, governmental-representation, etc.

And as such, they have been systematically denied full meaningful representation in the government to have a voice to present and raise these complaints for redress and relief. The State is unconstitutionally census-counting this class in white rural area districts.

Complainants imprisoned class has been systematically denied fair and meaningful access, review and consideration of their human needs being denied, as presented to the state's CDC/BPT appeal process. (CDC/BPT — Governor Appeal files/records; complainants' class recs.) To date, all of complainants' attempts to aggrieve, complain, appeal and petition the state of California's officials for redress and just relief have been ignored, denied and/or pretexually explained away.

(D) Visiting

EXHIBIT

Complainants' continuously, and permanently being warehoused in the state isolation (SHU) confinement facilities, built in white rural areas in Northern (Del Norte/ Crescent City) and Central (Kings/ Corcoran) California far, far away from their families, relatives, community districts is deliberate and systematically done to keep them separated.

This in turn, makes it difficult, if not impossible, for their families, friends, community supporters to visit, establish and maintain any kind of human and social contact, interaction or semblance of normal relation between them. Just the cost alone ($200-300) to travel, lodge at the hotel constitute a burdensome hardship, aggravated by the fact that the prison officials' visiting policies are designed to discourage complainants from receiving visits, such as only allowing a short visiting period (2 hours), after the complainants traveled several hundreds miles and spent high prices for travel/lodging in the city's rural exploitive business district.

The CdC's systematic deprivation of complainants' access to see, visit, interact and socialize with their politically segregated class goes to:

> "...The essence of what it means to be human; it destroys the social,
> emotional and physical bonds of parent and child, husband and wife, body
> and soul. Nothing could be more fundamental."

(See Bazzetta v. Mc Ginnis, 148 F. Supp. 2d 813 (2001))

The State of California CDC denies Complainants' Class any and all physical contact visits with their families, et al. They cannot take a picture (together or separately) or talk to one another on the telephone.

**(E.) Mail Censorship**

Complainants' Class communicates based on their Afrikan/Black background's historical, racial/national, cultural, political, social and human development and relations, which are totally distinct from white prison officials own background experiences. These state officials have no functional understanding of the average reasoning of Complainants' Afrikan/Black Class. However, these prison employees have institutionalized and enforced mail restriction system to unjustly deny, censor punitively complainants' mail/correspondence under the pretextual auspices of 'status' activity to justify withholding their mail. These letters/mailings are innocuous and do not violate any CDC rules—such as greeting cards, drawings, etc., to and from Complainants' families, relatives, friends, community class. (See records files, re: Complainants' Class grievances, appeals, complaints, etc.)

Prison officials inject their own stigmas and stereotypes upon Complainants' Class when they apply their mail system practices of screening, delaying, withholding, rejecting and outright refusing them the right to stay in contact with, and maintain some semblance of social relationship between the inside and outside world. (Ibid.)

**(F.) Solitary Confinement as Psychological Punishment**

Finally, the cumulative effect of the state keeping complainants in extreme isolation confinement subjected to a variety of psychological, emotional, mind altering practices, policies, programs and systems designed to deprive their natural human senses and attack the mind, body and soul's ability to adapt, cope and function is a deliberate act intended to breakdown Complainants' Class, forcing them to debrief.

"Torture and other cruel, inhuman or degrading treatment or punishment are prohibited under articles of the Universal Declaration of Human Rights, article 7 of the I.C.C.P.R., the United Nations Convention Against Torture and Other

Cruel, Inhuman, or Degrading Treatment or Punishment, and other international and regional human rights instruments. Article 10.1 of the ICCPR states that 'all persons deprived of their liberty shall be treated with humanity and with respect for the inherent dignity of the human person.'"

"A detained or imprisoned person or his counsel shall have the right to make a request or complaint regarding his treatment, in particular in case of torture or other cruel inhuman or degrading treatment, to the authorities responsible for the administration of the place of detention and to higher authorities vesting with reviewing and remedial powers." (International Covenant on Civil and Political Rights)

(C.) Denied Adequate Medical/Healthcare and Treatment

Prisoners shall have access to health services available in the country without discrimination on the grounds of their legal situation." (UN General Assembly Resolution 45/11 of December 1990) "20.1 Every prisoner shall be provided by the Administration at the usual hours with food of nutritional value adequate for health and strength, of wholesome quality and well prepared and served." (Minrule)

Complainants are being discriminated against because of their distinctive Afrikan psychological, biological, background heritage, and cultural factors that contrast the white Amerikan medical healthcare background of which PBSP Administrative department policies and standards are based upon. There is a discriminatory indifference toward complainants that prevent treatment of medical conditions based on the general standards of medical practice. A review of our medical conditions have been exposed and subjected to environmental conditions at PBSP-SHU that affect their natural human growth and development.

Specifically, some are concerned about diabetes, hypertension, bad cholesterol, cancer, Glaucoma and high blood pressure, and depigmentaion from the lack of sunlight and vitamin D. We want the CDC Director to change the medical care/healthcare regulations, policies, and standards-of-practice for Afrikan/Black persons who are imprisoned at PBSP, to include policies fair and sensitive to complainants' medical needs.

Complainants with our skin, eyes, glands, etc., resulting from being denied access to sunlight leaves complainants in a medical dilemma that can easily be remedied if prison officials would factor in our heritage-Afrikan/Black cultural background.

Prison medical/healthcare policies, pattern of practice are cultural insensitive toward persons from diverse national and ethnic backgrounds.

EXHIBIT

Prayer for Relief

Wherefore, we respectfully request:

1) That Defendants be ordered to cease and desist the holding of petitioners in isolation confinement for their political beliefs, ideas and support of human rights, freedoms, and justice efforts both inside and out;

2) That Defendants be ordered to immediately release Petitioners out of isolation confinement to the general prisoner population;

3) That Defendants immediately provide Petitioners with access to educational, vocational, and other program services to enable them to meet the state's eligibility requirements for parole and return home to their families;

4) The Defendants be prohibited from carrying out any further acts of reprisal, harassment, and/or retaliations against Petitioners, their Families, Friends, Relatives, and Supporters, both now and in the future.

Dated: 2-6-07

Respectfully Submitted,

Name of Petitioner

EXHIBIT

To: The Appointed Officials of the U.S. and California Government

From: The Families, Relatives, Friends & Supporters of the Below-Named Persons (wrongly kept in extreme isolation for the last ten to forty years for their political beliefs and ideas)

Re: Cruel and Unusual Punishment: Demand for Immediate Release

—Petitioning the Government for Redress—

We, the People, believe that the following political-conscious persons being kept in extreme isolation confinement for the last ten (10) to forty (40) years (1969 to present) not for violating any laws, but because of their political beliefs and ideas in support of the People's Struggles for Human Rights, Freedom & Justice, both Inside and Out, should be immediately released from their SHU/confinement cages to the general population where they have access to education, vocational, religious, recreational, and other program services to contact their loved ones, etc. and prepare for their release to go home.

Names and Locations of those Unjustly kept in Isolation Confinement:

1. Richard Johnson, K53293/D10-106, PO Box 7500, Crescent City, CA 95532
2. Paul Jones, B26077/D 10-205, PO Box 7500, Crescent City, CA 95532
3. Kenneth Carter, B52119/C5-120, PO Box 7500, Crescent City, CA 95532
4. Daryl Burnett, B60892/C5-120, PO Box 7500, Crescent City, CA 95532
5. Louis Powell, B59864/C3-117, PO Box 7500, Crescent City, CA 95532
6. Rueben Williams, B72882/C5-117, PO Box 7500, Crescent City, CA 95532
7. James Benson, D63433/C10-242, PO Box 7500, Crescent City, CA 95532
8. Paul Redd, B72683/C2-202, PO Box 7500, Crescent City, CA 95532
9. Leonard Alexander, B72288/D6-209, PO Box 7500, Crescent City, CA 95532
10. Joseph Salvant, C08365/D10-104, PO Box 7500, Crescent City, CA 95532
11. Jeffery Franklin, C08545/C11-219, PO Box 7500, Crescent City, CA 95532
12. Lawrence Woodard, C21690/D8-110, PO Box 7500, Crescent City, CA 95532
13. Charles Coleman, C60680/D 10-202, PO Box 7500, Crescent City, CA 95532
14. Harold Shamburger, DJ6530/D10-201, PO Box 7500, Crescent City, CA 95532
15. Ronnie Dewberry, C35671/D6-212, PO Box 7500, Crescent City, CA 95532
16. Clyde Jackson, C33559/D6-111, PO Box 7500, Crescent City, CA 95532
17. Michael Rhinehart, C39412/C3-109, PO Box 7500, Crescent City, CA 95532
18. James Williamsun, D34288/D10-205, PO Box 7500, Crescent City, CA 95532
19. Hugo Pinell, A88401/D3-212, PO Box 7500, Crescent City, CA 95532
20. James Harvey, C48884/D6-112, PO Box 7500, Crescent City, CA 95532
21. Randall Ellis, C68764/4B-3L-12, PO Box 3481, Corcoran, CA 93212
22. George Mosley, C33188/4B-3L-12, PO Box 3481, Corcoran, CA 93212
23. Tyrone Robinson, C82830/4B-3L-5, PO Box 3481, Corcoran, CA 93212

EXHIBIT

24. Michael Cooperwood, C46411/C7-123, PO Box 3481, Corcoran, CA 93212
25. Petitioner Robert Taylor, D03780/D6-111, PO Box 7500, Crescent City, CA 95532
26. Petitioner Johnell Bailey, K03590/C8-103, PO Box 7500, Crescent City, CA 95532
27. Petitioner Lashawn Taylor, H14167/D6-212, PO Box 7500, Crescent City, CA 95532
28. Petitioner Marcus Harrison, H54077/D10-122, PO Box 7500, Crescent City, CA 95532
29. Petitioner                               PO Box 7500, Crescent City, CA 95532

Sign your name and address here:

_____          _____
(Name)                            (Address)

# Pelican Bay SHU: Prisoners and Conditions

Court Findings of Facts: Madrid v.s Gomez. 889 F. Supp. 1228

*The following is an excerpt from the U.S Northern District of California Court Records:*

1. The SHU contains two virtually identical wings: "C" and "D", each divided into cell blocks;

2. Each unit contains eight pods ("A-F") with eight cells in each pod. (Madrid Ruling, p1228)

3. Each pod has two short tiers with four cells on each tier.

4. Each cage is 80 square feet and contains two built in concrete slabs to sleep on and a toilet/ sink.

5. The front cage/ door opening is made of heavy gage perforated metal witch significantly blocks light and vision.

6. Cage doors are controlled electronically.

7. Each pod has a skylight area in the ceiling, partially visible from inside the upper tier cages, which allows some natural light to enter the pod area adjacent to the cages, but primarily lights are florescent.

8. The SHU interior is designed to reduce visual stimulation: the cell blocks are marked by a dull sameness in design and color; the cages are windowless; the walls are white concrete. From within the cage all that the occupants can see through that perforated metal door is another white wall.

9. The end of each pod has a small exercise pen (size of a dog kennel) with cement floor and walls 20 feet high and precludes any view of the out side world. (Madrid, 889 F.S 1228)

10. The exercise pen (aka, "yard") is covered partly by a metal screen and partly by a plastic rain cover and provide access to whatever outside air that may make it down the 20ft. walls (Ibid.)

11. The exercise area's cell-like design and physical attachment to the pod makes them more suggestive of satellite cells than areas for exercise or recreation. (Madrid, 899 F.S 1228)

12. Imprisoned persons in SHU can spend years without seeing any aspect of the outside world, except for a small patch of sky. (Ibid.)

13. Prisoners in SHU can spend years without any aspect of humyn interaction, or with little opportunity for normal social contact with other people; (Id)

14. Imprisoned persons in SHU eat all meals in their cells with the food trays passed through a narrow food port in the cell door. (Ibid.)

15. SHU prisoners are not allowed to participate in prison jobs or any other recreation or educational programs. (Madrid p. 1229)

16. No group social exercise is permitted. Prisoners in single cells exercise alone; those in double cell status can exercise with their cellmates.

17. No recreational equipment provided. (Id.) The door to the yard is controlled electronically.

18. Prisoners in adjoining cages can hear, but not see each other.

=EXHIBIT=

EXHIBIT

## PROOF OF SERVICE BY MAIL

We, Ines Gardilic and Ashley Gregory, are residents of Arcata, in the county of Humboldt, State of California. Our mailing address is PO Box 656, Arcata, CA 95518. We are over the age of eighteen years, and are third party supporter to the below entitled action:

In re Jones, Williamson, Gozanlez, Redd, Johnson, Dewberry, Benson, Franklin, et al, On "Government Misconduct" Citizens Complaint -petition.

On the day of February 6th in the year of 2007, we served the following documents:

"Citizenry "Government Misconduct" complaint with accompanying signed citizenry support petition. Affidavits and Exhibits documentation attached thereto, on the parties listed below by placing true copies of said documents, enclosed in a sealed envelope(s) with postage thereon fully paid, in the United States mail, at a deposit mail box, in Arcata, CA, addressed as follows:

Offices of:

(1) Governor of California/Arnold Schwarzenegger,
    State Capital, First Floor
    <Attn: Citizenry Complaint Filing>
    Sacramento, CA 95814

(2) Secretary of Corrections &
    Rehabilitation/Robert Tilton
    <Attn: Citizenry Complaint Filing>
    1515 S Street, Sacramento, CA

(3) California Senate
    Select Committee on California Corrections
    <Attn: Citizenry Complaint Filing>
    State Capital Sacramento, CA 95814

(4) California Inspector General
    <Attn: Citizenry Complaint Filing>
    P.O. Box 348780
    Sacramento, CA 95834-8780

(5) Northern California District Court
    Attn: Thelton E. Henderson
    Attn: John Hagar, Special Master
    450 Golden Gate Avenue
    San Francisco, CA 94102

(6) California Prison Healthcare receiver corporation
    Attn: Receiver Robert Sillen
    1731 technology drive suite 700
    San Jose, CA 95510

We declare under penalty of perjury that the foregoing is true and correct. Dated this sixth day of February 2007.

Signed _Ashley Gregory_        _Ines Gardilcic_




U.S. POSTAGE
PAID
ARCATA, CA
95521
FEB 06 '07
AMOUNT
$0.95
0003S828-07

EXHIBIT



Matthew L. Cate, Inspector General                                    Office of the Inspector General

March 7, 2007

Ines Gardilcic
P. O. Box 656
Arcata, CA 95518

Dear Ms. Gardilcic:

The Office of the Inspector General has received your correspondence.

Thank you for taking time to help us improve public safety by offering suggestions about prison operations. The information in your letter has been reviewed for consideration of any recommendations that our office may make regarding the operation of California's correctional system.

The Office of the Inspector General appreciates you bringing your concerns to our attention.

Sincerely,

MARION MARRUJO,
Deputy Inspector General

MM:vh:07-0015081-01

Arnold Schwarzenegger, Governor

P.O. Box 348780, Sacramento, California 95834-8780   Phone (800) 700-5952   Fax (916) 928-5974

EXHIBIT

EXHIBIT

EXHIBIT

**EXHIBIT 1**

=EXHIBIT=    LEGAL MAIL
opened

# PELICAN STATE PRISON

**INMATE/PAROLEE**
**APPEAL FORM**
CDC 602 (12/87)

USING D-4    PBSP

(Institution/Parole Region) 1.    Log No.    1. D07-02521    Category 3/9
2.    2.

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification, committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|-----------|------------------|
| Jones, Paul | B26077 | PBSP-SHU | d4-107 |

**A. Describe Problem:** Today, 11-6-07, a "Confidential legal mailing" was returned to me OPENED OUT OF MY PRESENCE! I have dealt with this very same problem at least three (3) times in the past seven years. How clear does CONFIDENTIAL LEGAL MAIL have to be written on the outside of an envelope before these so-called "ERRORS" are no longer made. I do not believe any of it has been "in error."

If you need more space, attach one additional sheet.

**B. Action Requested:** That mail room employees be disciplined for "continuously" opening my legal mail (that is or maybe) that is marked "CONFIDENTIAL LEGAL MAIL"

Inmate/Parolee Signature: Paul Jones    Date Submitted: Nov-6, 2007

**C. INFORMAL LEVEL (Date Received: NOV 07 2007 )**

Staff Response: MAILROOM EMPLOYEE HAS BEEN TO REGARDING MAIL ROOM LEGAL PROCEDURES, + POLICIES.

RECEIVED FEB 11 2008 INMATE APPEALS BRANCH

Staff Signature: Harold    Date Returned to Inmate: 11/8/07

**D. FORMAL LEVEL**
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

In the past you stated that "mailroom employees has been talked to." Apparently whoever is doing the talking isn't having much of an impact if the "employee" continues to OPEN CONFIDENTIAL LEGAL MAIL.

Signature: Paul Jones    Date Submitted: 11/15/07

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

CDC Appeal Number:

NOV 16 2007    JAN 04 2008
1ST ANS-BS    2ND APPEALS
CHU

EXHIBIT

EXHIBIT 2

Exhibit

SUM-100

# SUMMONS
## (CITACIÓN JUDICIAL)

<div style="float:right; border:1px solid; padding:5px;">
FOR COURT USE ONLY<br>
(SOLO PARA USO DE LA CORTE)
</div>

NOTICE TO DEFENDANT: ROBERT HOREL, Warden of P.B.S.P.,
(AVISO AL DEMANDADO) G. STEWART, SGT/COUNSELOR UNIT D4,
MID YAX, P.B.S.P. CAPTAIN S. BRADLEY, SHU SERGEANT
M. CASTELLAW, CAPTAIN, P. DILLARD, Associate Warden,
and DOES 1-20, inclusive, each being sued in their individual
and official capacities
YOU ARE BEING SUED BY PLAINTIFF: PAUL JONES, Jr.
(LO ESTÁ DEMANDANDO EL DEMANDANTE):

---

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

---

The name and address of the court is: DEL NORTE COUNTY SUPERIOR COURT
(El nombre y dirección de la corte es): 450 H Street
Crescent City, Ca 95531

CASE NUMBER: (Número del Caso): CV UJ-06-1359

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: PAUL JONES, Jr. (B26077)
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):

Pelican Bay State Prison, 5905 Lake Earl Dr. P.O. Box 7500-D4/107, Crescent City, Ca 95532

DATE: 05-29-07                    Sandra Linderman                    , Deputy
(Fecha)                          Clerk, by                            (Adjunto)
                                 (Secretario)

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).

[SEAL]
SUPERIOR COURT OF CALIFORNIA
COUNTY OF DEL NORTE

NOTICE TO THE PERSON SERVED: You are served
1. ☒ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):

3. ☐ on behalf of (specify):

under: ☐ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
       ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
       ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
       ☐ other (specify):
4. ☐ by personal delivery on (date):

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 (Rev. January 1, 2004)

SUMMONS

Code of Civil Procedure §§ 412.20, 465

American LegalNet, Inc.
www.USCourtForms.com

33

STATE OF CALIFORNIA
**PELICAN BAY STATE PRISON**
INMATE/PAROLEE HOUSING UNIT D-4
APPEAL FORM
CDC 602 (12/87)

_ENTIDII_

DEPARTMENT OF CORRECTIONS

| | Institution/Parole Region | Log No. | Category |
|---|---|---|---|
| 1. | PBSP | 1. | 10/7 |
| 2. | | 2. | |

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| James, Paul | B26077 | PBSP-Study-107 | d4 107 |

A. Describe Problem: Employee misconduct complaint Re: State CDCR Employees William J. Barlow, Co-Stewart, Warden R. Horel, and Secretary J. Tilton Acting in concert And in their individual and official capacities to ignore, disregard, and failure to comply with clear, established California laws requiring appropriate legal processing of Appellant's Court documents (i.e. Legal Process of Summons Acknowledgement of receipt "transmittal letter" to the Attorney General) pursuant to 15 CCR 3l6b, D.O.M. Art. 18 Section 14010.7, et seq depriving him of his access to the courts C.U.S.C.A. 1st. on July 14, 2007. the above referenced legal court

If you need more space, attach one additional sheet. documents was provided to you (via subordinate service) but you ignored it.

B. Action Requested: That this complaint be executed pursuant to Cal. Pen. C § 832.5 and the matter be rectified by CDCR Secretary and PBSP Warden implementing Appropriate measures to ensure "legal process" of all documents sent on July 14, 2007.

Inmate/Parolee Signature: _Paul James_    Date Submitted: 11/26/

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

_____

_____

Staff Signature: _____    Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

_____

_____

_____

Signature: _____    Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

CDC Appeal Number: _____

NOV 27 2007

35

EXHIBIT I

STATE OF CALIFORNIA – DEPARTMENT OF CORRECTIONS AND REHABILITATION                ARNOLD SCHWARZENEGGER, GOVERNOR

**INMATE APPEALS BRANCH**

1515 S Street, Sacramento, CA 95814
P.O. Box 942883
Sacramento, CA 94283-0001



January 23, 2008

JONES, PAUL, B26077
Pelican Bay State Prison
P.O. Box 7000
Crescent City, CA 95531-7000

RE: IAB# 0717024        LEGAL

Mr. JONES:

The Inmate Appeals Branch, California Department of Corrections and Rehabilitation (CDCR) acts for the Director, Division of Adult Institutions, at the third level of appeal. The Branch examines and responds to inmate and parolee appeals that are submitted on a CDC Form 602, Inmate/Parolee Appeal Form, after the institution or parole region has responded at the Second Level of Appeal.

Institution and parole staff are available to assist you in obtaining additional copies of forms and documents required to submit an appeal. The Inmate library offers resources and assistance to obtain general information regarding regulations, procedures, policies, and government agency addresses. Additionally, your assigned Counselor or Parole Agent, or the Appeals Coordinator can answer any questions you may have regarding the appeals process. The Inmate Appeals Branch appreciates your responsible use of the appeal system to address your grievance.

The Inmate Appeals Branch has received an appeal from you and has determined that it does not comply with the appeal procedures established in California Code of Regulations (CCR) Title 15, Article 8, and is being screened-out and returned to you pursuant to CCR 3084.3 for the following reason(s):

Your appeal was rejected, withdrawn or cancelled. If you disagree with that decision, contact the Appeals Coordinator. You must comply with instructions from that office.

N. GRANNIS, Chief
Inmate Appeals Branch

****PERMANENT APPEAL ATTACHMENT-DO NOT REMOVE****

36                                        EXHIBIT

*EXHIBIT*

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS AND REHABILITATION          ARNOLD SCHWARZENEGGER, GOVERNOR

**INMATE APPEALS BRANCH**

1515 S Street, Sacramento, CA 95814
P.O. Box 942883
Sacramento, CA 94283-0001



January 23, 2008

JONES, PAUL, B26077
Pelican Bay State Prison
P.O. Box 7000
Crescent City, CA 95531-7000

RE: IAB# 0717023     STAFF COMPLAINTS

Mr. JONES:

The Inmate Appeals Branch, California Department of Corrections and Rehabilitation (CDCR) acts for the Director, Division of Adult Institutions, at the third level of appeal. The Branch examines and responds to inmate and parolee appeals that are submitted on a CDC Form 602, Inmate/Parolee Appeal Form, after the institution or parole region has responded at the Second Level of Appeal.

Institution and parole staff are available to assist you in obtaining additional copies of forms and documents required to submit an appeal. The inmate library offers resources and assistance to obtain general information regarding regulations, procedures, policies, and government agency addresses. Additionally, your assigned Counselor or Parole Agent, or the Appeals Coordinator can answer any questions you may have regarding the appeals process. The Inmate Appeals Branch appreciates your responsible use of the appeal system to address your grievance.

The Inmate Appeals Branch has received an appeal from you and has determined that it does not comply with the appeal procedures established in California Code of Regulations (CCR) Title 15, Article 8, and is being screened-out and returned to you pursuant to CCR 3084.3 for the following reason(s):

This appeal issue should be submitted directly to the Appeals Coordinator for review and appropriate action.

*U. Grannis*

N. GRANNIS, Chief
Inmate Appeals Branch

****PERMANENT APPEAL ATTACHMENT-DO NOT REMOVE****

37                                                    *EXHIBIT*

EXHIBIT

State of California
CDC FORM 695
Screening For:
CDC 602 Inmate/Parolee Appeals
CDC 1824 Reasonable Modification or Accommodation Request

RE: Screening at the FIRST Level

November 27, 2007

*JONES, B26077*
*DF04L 000000107U*

Log Number: PBSP-D-
(Note: Log numbers are not assigned to screen out appeals or informal level appeals.)

The enclosed documents are being returned to you for the following reasons:

*You have failed to reasonably demonstrate that the issue you are appealing adversely affects your welfare, pursuant to CCR 3084.1(a).*

*YOU ARE ATTEMPTING TO APPEAL AN ISSUE THAT IS A PROCESS BETWEEN THE LITIGATION OFFICE AND THE AG'S OFFICE. THE LACK OF ACKNOWLEGEMENT YOU DESCRIBE HERE DOES NOT ADVERSELY AFFECT YOUR CONDITION OF CONFINEMENT AND/OR ACCESS TO THE COURTS. YOUR APPEAL IS THEREFORE REJECTED FOR THE ABOVE NOTED REASON.*

Appeals Coordinator
Pelican Bay State Prison

I/m Received this → Written Response Dec. '07
*B.Jones 12/10/07*

Your APPEAL on THIS ISSUE HAS BEEN REVIEWED AND REJECTED. PLEASE RETAIN FOR YOUR RECORDS.
C. WEBER, AC

**NOTE:** Failure to follow instruction(s) will be viewed as non-cooperation and your appeal will be automatically dismissed pursuant to CCR 3084.4(d). This screening decision may not be appealed. If you believe this screen out is in error, please return this form to the Appeals Coordinator with an explanation of why you believe it to be in error, and supporting documents. You have only 15 days to comply with the above directives.

---

**PERMANENT APPEAL ATTACHMENT – DO NOT REMOVE**

---

NOV 27 2007                    38                    EXHIBIT

Dec. 3, 2007

To: CDCR-PBSP (via PBSP Appeal office)

From: Jones, B26077, PBSP-d4-107

Re: submission of additional info. For clarification
on adverse affected issue(s) appealed at 1st level

on 11/26/07, I submitted a CDCR 602 Form Appealing
(via employee Misconduct complaint) the CDCR employees
(W. Barlow, et al.) acts and omissions of ignoring, dis-
regarding and failing to process the legal court docu-
ments mailed to them on 7/14/07 (via substitute
service) (see CDCR 602 Form, Pt. A "PROBLEM" & G.A. 22)
The employee's acts and omissions Adversely Affected
me by obstructing, impairing and depriving me of
having those legal court papers processed and granting
my access to the courts, As a result of them
complying with the CDCR Rules and Regs. for
"legal process" - transmittal letter with the civil
complaint-summons to the Attorney General's
office.
(cal. Code Regs., Tit. 15, 3160; D.O.M. 14010.7.3 & 14010.7.6;
cal. Pen C § 2600 (a); cal. Const. Art. I § 7, 15 & U.S.C.
A. 1st & 14th)

Accordingly, I'm requesting PBSP Administration and
CDCR Secretary James Tilton to process my
CDCR 602 Form, dated 11/26/07, on the First Formal
level.

# EXHIBIT 3

Paul Sangu Jones          — CASE FILE COPY —          Exhibit
D26077
Po Box 7500
Crescent City, CA
95532

November 25, 2007

Re: Jones v. Stewart, et al.
UJV-06-1559

Dear Del Norte County Clerk:

I am the plaintiff in the above-referenced civil action and having the certified summons (dated 5/29/07) and complaint from your office, I had them sent to each individual defendant on June 14, 2007, along with the required 'Acknowledgement of receipt for the served parties to sign and return. But they have not returned it to date of this letter.

It is apparent that these prison parties are knowingly trying to prevent/obstruct my efforts to serve them. Now in early November 2007, your court sent its minute order instructing me to complete some supplemental Judicial Council forms (FW-002 and FW-004) for filing with the court to facilitate expedient resolution of the problems I'm experiencing with trying to have the parties here properly served. But when I looked inside the envelope your assistant sent to this prison there was no such forms enclosed! Is it possible that they were mistakenly placed inside the envelope your assistant sent to the prison's Litigation Coordinator (William Barlow) mailed at the same time, (see "Proof of service dated 11/1/07)? If so, he has not forwarded it to me, likely because of my grievance complaint against him and defendants for obstructing/preventing service of my summons/complaint and returning their acknowledgement of receipts.

So if you could send me those forms that the court referenced in its minute order (dated October 31, 2007), I would appreciate it.

Thank you.

Sincerely,
Paul Sanger Jones

⊔1                                              = EXHIBIT =

Paul Sanger Jones
#246077
PO BOX 7500/du-107
Crescent City, CA
95532

— CASE FILE COPY —

JANUARY 17, 2008

∠EXHIBIT⟩

Re: Jones V. Stewart, et al.
UJ-06-1354

Dear Del Norte County Court Clerk:

I wrote you on November 25, 2007, requesting the judicial forms the Court instructed be sent to me in its October 3rd 2007 Minute Order (see Attached Case File copy of letter)

As to date, I have not heard or received said forms (FW-002 & FW-004) from your office. Could you please send them so that I can complete and return them promptly. Thank You.

Sincerely,

Paul Sanger Jones

P.S. Also, Could you enclose the judicial forms required for Adding/Dismissing Defendants.

=EXHIBIT=

EXHIBIT

Paul Sangu Jones                                          May 7, 2008
   B26077
 P.O. Box 7500
Crescent City CA
         95532                                           = EXHIBIT=

        Re: Jones v. Stewart, et al.
             C-JV-06-1359

Dear Del Norte County Clerk:

I am writing this follow-up inquiry to my two requests
previously submitted regarding the above referenced
matter:

    1) On Nov. 25, 2007, I gave one mailing to
    prison guards, addressed to your office, re-
    questing the status on those two Required
    Judicial Council forms (ie. FW-002 & FW-064)
    which the Court said "in" its Oct 31, 2007 "minute
    order" that I would be receiving;

    2) On Jan. 17, 2008 I again submitted my inquiry
    for those "FW" forms, and a request for leave
    to "add/dismiss defendants" to Amended Complaint.

If you could check into the status of what is the
delay with those two requests, I would truly appreciate
it. I am concerned whether they (P.B.S.P. Staff/Admin) are
allowing my mail out of the prison, following the
attempts by me to serve my court documents on these
defendants, and the court's October 31st Minute order,
which was delivered to me "opened" by a guard.

                              Sincerely,
                              Paul Sangu Jones

                = EXHIBIT =

⇒ EXHIBIT ⇐

## DEL NORTE SUPERIOR COURT
450 H. Street, Room 209
Crescent City, California 95531
(707) 464-8115

TO:   Paul Jones, B-26077                    Date: 05/16/08

### THE SUBMITTED DOCUMENTS ARE RETURNED FOR
### THE FOLLOWING REASONS:

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

### DOCUMENT SUBMITTED TO THE COURT

### ((Request of status of request))

( x )   Other: To date we do not have any requests that you stated you sent to the court previous dates of 11/25/07 or 01/17/08.

( x )   I have enclosed the mentioned documents of FW-002 & FW-004. Also sending a copy of the minute order sent to you previously.

( x )   I don't have record of the forms for "add/dismiss defendant" therefore, unable to send them to you.

( x )   You state that you are questioning the statutes in these required forms FW-002 and FW-004. These forms are not required unless you are requesting additional costs to be waived. For specific information you need to research this further with your law library.

**THE SUPERIOR COURT CLERK'S OFFICE IS PROHIBITED BY LAW FROM OFFERING OR GIVING LEGAL ADVICE. IF YOU HAVE ANY QUESTIONS, YOU MUST CONSULT AN ATTORNEY.**

                              SANDRA LINDERMAN
                              COURT EXECUTIVE OFFICER

                              By _____
                                    Deputy Clerk

⌐ EXHIBIT ⌐

EXHIBIT 4

= EXHIBIT =

CDC 128-B

*1.* NAME: JONES          CDC#: B26077    HOUSING : D4-107

*2.* On  3/27/2008          correspondence was stopped for the above-named inmate.  The mailing is described as follows:

*3.*        (a) ☐ OUTGOING CORRESPONDENCE/ ADDRESSED TO: (b) ☒ INCOMING CORRESPONDENCE / FROM:

*4.*      CHRISSIY MARSHALL
       27 DANLEY CROSSING NANANGO 4615
       QUEENSLAND, AUSTRALIA

*5.* The correspondence was disapproved in accordance with Section 3136(a) as it pertains to 3006(c):
*6.* ☒ It violates regulations or local procedures:
*7.*        ☐ Promotes gang activities [Title 15, 3023 (a)]
*8.*        ☐ Unauthorized business dealings [3024 (a)]
*9.*        ☐ Unauthorized inmate to inmate correspondence [Title 15, 3139]
*10.*        ☐ Unauthorized inmate to parolee / probationer correspondence [Title 15, 3140]
*11.*        ☐ Third party correspondence [OP 205, Attachment 8, #32]
*12.*        ☒ Use of fictitious name or address [U.S.C.S. Title 18, Section 1342, OP 205]
*13.*        ☐ Other (describe): _____
*14.* ☐ It incites physical harm to a person or group of persons
*15.* ☐ It incites disruption of the order in a facility, such as riot, escape, strike, etc.
*16.* ☐ It contains coded messages
*17.* ☐ It contains obscene or sexually explicit material, or portrays nudity
*18.* ☒ It is deemed to be a threat to legitimate penalogical interests.
*19.* ☐ It contains material or literature which would pose a threat to institutional security or the safety of other persons if allowed to be
       possessed by inmates.
*20.* ☒ Additional Information: THE AUTHOR IS USING A NAME FOR JONES NOT RECOGNIZED IN CDCR RECORDS.
*21.* The disposition of the letter is as follows:
*22.* ☒ Retained by Investigative Services Unit for investigation / potential disciplinary or court proceedings.
*23.* ☐ Returned to sender in accordance with Section 3147 (a) (5) (B) or 3147 (a) (6).
*24.* ☐ Placed in Central File in accordance with Title 15, Section 3147 (a) (7).

*25.* Reporting Employee:                    (b)  Correspondence Disapproval Authorized By (Captain level or above):

*26.* J. FUENTE                         (b)  K. BRANDON  CAPT
*27.* Correctional Officer                       Correctional Captain
*28.* Institutional Gang Investigations             Investigative Services Unit

*29.* Correspondents are personally responsible for the content of each item of mail they send into or out of a correctional facility. Any
*30.* violation of laws governing mail will be referred to postal authorities and to appropriate criminal authorities. Violations of law, the
*31.* policies and regulations or of approved facility mail procedures may result in the temporary suspension or denial of correspondence
*32.* between the persons involved. [Section 3132 (a)].  Inmates may appeal the stopped mail utilizing the departmental appeal process.

*33.* cc:    C-File
*34.*        AWC File
*35.*        Investigative Services Unit         PELICAN BAY STATE PRISON
*36.*        Inmate                          SECURITY HOUSING UNIT
*37.*        Sender (incoming correspondence only)        UNIT D-4

*38.* DATE:   3/27/2008    (b)  STOPPED MAIL NOTIFICATION  (c)  GENERAL CHRONO

*39.* DATE FORWARDED TO INMATE: 4/3/08

EXHIBIT

=EXHIBIT=

NAME: JONES        CDC#: B26077      HOUSING : D4-107    CDC 128-B

On  4/18/2008        correspondence was stopped for the above-named inmate.  The mailing is described as follows:

    ☐ OUTGOING CORRESPONDENCE/ ADDRESSED TO:    ☒ INCOMING CORRESPONDENCE / FROM:

SHAKA AT-THINNIN/ BLACK AUGUST ORGANIZING
COMMITTEE
1714 FRANKLIN ST, #100-309
OAKLAND, CA. 94612

The correspondence was disapproved in accordance with Section 3136(a) as it pertains to 3006(c):
☒ It violates regulations or local procedures:
    ☐ Promotes gang activities [Title 15, 3023 (a)]
    ☐ Unauthorized business dealings [3024 (a)]
    ☐ Unauthorized inmate to inmate correspondence [Title 15, 3139]
    ☐ Unauthorized inmate to parolee / probationer correspondence [Title 15, 3140]
    ☐ Third party correspondence [OP 205, Attachment 8, #32]
    ☒ Use of fictitious name or address [U.S.C.S. Title 18, Section 1342, OP 205]
    ☐ Other (describe): _____
☐ It incites physical harm to a person or group of persons
☐ It incites disruption of the order in a facility, such as riot, escape, strike, etc.
☐ It contains coded messages
☐ It contains obscene or sexually explicit material, or portrays nudity
☒ It is deemed to be a threat to legitimate penological interests.
☐ It contains material or literature which would pose a threat to institutional security or the safety of other persons if allowed to be possessed by inmates.
Additional Information: NAME ON RETURN ADDRESS NOT RECOGNIZED BY CDCR RECORDS. HELPS PROMOTE AND FACILITATE BGF ACTIVITIES.
The disposition of the letter is as follows:
☒ Retained by Investigative Services Unit for investigation / potential disciplinary or court proceedings.
☐ Returned to sender in accordance with Section 3147 (a) (5) (B) or 3147 (a) (6).
☐ Placed in Central File in accordance with Title 15, Section 3147 (a) (7).

Reporting Employee:                     Correspondence Disapproval Authorized By (Captain level or above):

_____              _____
L. PUENTE                              K. BRANDON
Correctional Officer                   Correctional Captain
Institutional Gang Investigations      Investigative Services Unit

Correspondents are personally responsible for the content of each item of mail they send into or out of a correctional facility. Any violation of laws governing mail will be referred to postal authorities and to appropriate criminal authorities. Violations of law, the policies and regulations or of approved facility mail procedures may result in the temporary suspension or denial of correspondence between the persons involved. (Section 3132 (a)). Inmates may appeal the stopped mail utilizing the departmental appeal process.

    cc:    C-File
            AWC File
            Investigative Services Unit
            Inmate
            Sender (incoming correspondence only)

DATE:   4/18/2008        STOPPED MAIL NOTIFICATION        GENERAL CHRONO

DATE FORWARDED TO INMATE: 4-24-08

=EXHIBIT=

*EXHIBIT*

NAME:  JONES, P.          CDC#:  B-26077      HOUSING :  DF04-107*M*     CDC 128-B

On  4/25/2008 .          Correspondence was stopped for the above-named inmate.  The mailing is described as follows:

☒ OUTGOING CORRESPONDENCE/ ADDRESSED TO:      ☐ INCOMING CORRESPONDENCE / FROM:

Shaka At Thinnin
1714 Franklin St. #100-309
Oakland, CA 94612

The correspondence was disapproved in accordance with Section 3136(a) as it pertains to 3006(c):
☒ It violates regulations or local procedures
  ☒ Promotes gang activities [Title 15, 3023 (a)]
  ☐ Unauthorized business dealings [Title 15, 3024 (a)]
  ☐ Unauthorized inmate to inmate correspondence [Title 15, 3139]
  ☐ Unauthorized inmate to parolee / probationer correspondence [Title 15, 3140]
  ☐ Third party correspondence [OP 205, Attachment 8, #32]
  ☐ Use of fictitious name or address [U.S.C.S. Title 18, Section 1342, OP 205]
  ☐ Other (describe):

☐ It incites physical harm to a person or group of persons.
☐ It incites disruption of the order in a facility, such as riot, escape, strike, etc.
☐ It contains coded messages.
☐ It contains obscene or sexually explicit material, or portrays nudity.
☒ It is deemed to be a threat to legitimate penalogical interests.
☐ It contains material or literature which would pose a threat to institutional security or the safety of other persons if allowed to be possessed by inmates.

☐ Additional Information:

The disposition of the letter is as follows:
☒ Retained by Investigative Services Unit for investigation / potential disciplinary or court proceedings.
☐ Returned to sender in accordance with Section 3147 (a) (5) (B) or 3147 (a) (6).
☐ Placed in Central File in accordance with Title 15, Section 3147 (a) (7).

Reporting Employee:                              Correspondence Disapproval Authorized By (Captain level or above):


B. THORNTON                                      K. BRANDON
Correctional Officer                             Correctional Captain
Institutional Gang Investigations                Investigative Services Unit

Correspondents are personally responsible for the content of each item of mail they send into or out of a correctional facility. Any violation of laws governing mail will be referred to postal authorities and to appropriate criminal authorities. Violations of law, the policies and regulations or of approved facility mail procedures may result in the temporary suspension or denial of correspondence between the persons involved. [Section 3132 (a)]. Inmates may appeal the stopped mail utilizing the departmental appeal process.

cc:     C-File
      AWC File
      Investigative Services Unit
      Inmate
      Sender (incoming correspondence only)

DATE:    4/25/2008        **STOPPED MAIL NOTIFICATION**             GENERAL CHRONO

Returned to Inmate: 5-6-08 .

= *EXHIBIT* =

EXHIBIT 5

*Paul Sangu Jones B26077*

Chrissiejoy Marshall
Anandra
27 Darley Crossing
Nanango, Qld
4615, Australia

Correctional Captain K Brandon
Investigative Services
Pelican Bay State Prison
PO Box 7000
Crescent City, California 95532 – 7000
USA

COPY                    ∠EXHIBIT⟩

Dear Captain Brandon,

Please find enclosed:

1.    Copy of 'Stopped Mail Notification' dated March 27th, 2008 send to me from   Correctional
      Officer J. Puente and Correctional Captain K. Brandon

2.    Photocopies of proofs of my identification and signed by a Justice of the Peace as sighting the
      originals and includes NSW Police Force ID, within which I was employed for over twenty
      years. I am sure that anyone would be aware that such an security conscious organisation would
      not have employed anyone with a "fictitious name".

3.    Self-addressed envelope, for Airmail delivery, in anticipation that you will find the time to
      answer my questions. As well as ensuring my correct name and address is at least on any return
      correspondence, contrary to on the 'Stopped Mail Notification'.

I have been writing to the inmate named on the 'Stopped Mail Notification' as **Paul Sangu Jones,
B26077** since January 2007. Every letter and card (over fifty mailed items) have been addressed to
'Paul Sangu Jones, B26077'—yet over fourteen months later " THE AUTHOR (guessing that is me) IS
USING A NAME FOR JONES NOT RECOGNIZED IN CDCR RECORDS"

This Notification also states that presumably **my letters** are "Deemed to be a threat" to the study, theory
and/or practice of prison management and criminal rehabilitation.

Lastly, the Notification states a) that the inmate (Paul) has been given a copy of this Notification, though
there is no date noted when the inmate was given this Notification and b) it also states that Paul (the
inmate) may appeal the stopped mail. Further, in early 2007, prior to my full understanding of your
'mail rules', Paul received a couple of 'yellow sheets' stating I had enclosed an item not allowed, for
example stamps and a plastic picture. So, through that procedure, I am sure that nothing enclosed in my
last few letters had any 'prohibited' items enclosed.

Therefore, I would appreciate your effort and time in answering my following questions:

A)    Does this Notification mean that I am no longer allowed to write to Paul at all?

B)    As I actually wrote three letters in March, were all three, or was it a particular letter that is
      "deemed a threat to prison management and criminal rehabilitation"?

C)    Is the 'use of fictitious name' about me, or simply about my choice to include Paul's African
      name 'Sangu' when I write him?

D)    In what way could my writing possibly be 'deemed to be a threat to prison management and
      criminal rehabilitation'?

⌐ ≠ X/T/B/I ~

1  E)  Letters were written on March 2nd, March 6th and March 13th, from me to Paul. Are all these
2      letters being retained by Investigative Services Unit for investigation/potential disciplinary or
3      court proceedings, or just a particular letter?

4  F)  Given that Paul has no control over what I write to him, presumably, the investigation/potential
5      disciplinary or court proceedings would be against me. I am wondering how you plan to
6      commence any investigation, disciplinary or court proceedings against me?

7  G)  Could it be possible that all of this commotion is because I might have insulted the Institutional
8      Gang Investigations (IGI) by reminding Paul not to think I am not writing simply because the IGI
9      hold up his incoming mail for literally weeks at a time?

10 H)  Has Paul actually been given a copy of this 'Stopped Mail Notification' or not?

11  In conclusion, might I suggest that the only threat I am to anyone (though, perhaps this might annoy IGI
12  staff), is that I will be employing an Attorney on Paul's behalf, in an attempt to prove his innocence of
13  being labelled 'an active gang member' on the circumstantial evidence IGI have against him, and also to
14  have him released from prison, as having served well above the amount of time initially set by the
15  sentencing Judge in 1970. Appreciating that Paul and I have discussed these plans in many letters over
16  approximately the last nine months, and I am sure that IGI are well aware of that correspondence, and
17  were at the time of writing....it really does not make sense that mail is now being stopped for such petty
18  reasoning as stated on the 'Stopped Mail Notification'.

19  Please don't insult me by suggesting that staff of the IGI might have Paul's best interests in mind as a
20  reason for him not to receive my letters because, as I am sure the IGI staff are aware, we (Paul and I) are
21  having somewhat of a struggle with our friendship at this point in time. As a trained Psychologist, I am
22  well aware that not receiving my letters would be far worse than receiving them, no matter the content,
23  to his wellbeing. Further, just so that you are aware, no matter the outcome of our present difficulties, I
24  will still employ the Attorney to assist Paul in every way possible.

25  Further, if in fact this is all over me calling Paul by his African name, in the middle of his American
26  name, as an Australian Aboriginal woman, especially that Paul often calls me by my Aboriginal name, I
27  find this petty objection very offensive and highly racially discriminatory on the part of IGI staff.

28  I do sincerely appreciate you taking the time to read my letter and just hope you will be able to answer
29  my questions. In anticipation, thank you.

30  Sincerely

        *Chrissyjoy Marshall*

31  Chrissiejoy Marshall
32  April 9th, 2008

= EXHIBIT =

Paul Sangu Jones B26077

= EXHIBIT =

FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

BRIAN SASS,
          *Petitioner-Appellant,*

        v.

CALIFORNIA BOARD OF PRISON
TERMS; ATTORNEY GENERAL OF THE
STATE OF CALIFORNIA,
          *Respondents-Appellees.*

No. 05-16455

D.C. No.
CV-01-00835-MCE

OPINION

Appeal from the United States District Court
for the Eastern District of California
Morrison C. England, District Judge, Presiding

Argued and Submitted
March 16, 2006—San Francisco, California

Filed August 31, 2006

Before: Alfred T. Goodwin, Stephen Reinhardt, and
Michael Daly Hawkins, Circuit Judges.

Opinion by Judge Goodwin;
Dissent by Judge Reinhardt

10563

= EXHIBIT =

EXHIBIT 6

EXHIBIT

NAME:  WILLIAMSON          CDC#:  D34288     HOUSING :  D4-107       CDC 128-B

On  4/9/2008 _____ correspondence was stopped for the above-named inmate.  The mailing is described as follows:

       ☒ OUTGOING CORRESPONDENCE ADDRESSED TO:    ☐ INCOMING CORRESPONDENCE / FROM:

ASHLEY GREGORY
197 TEDDY AVE.
SAN FRANCISCO, CA  94134

The correspondence was disapproved in accordance with Section 3136(a) as it pertains to 3006(c):
☒ It violates regulations or local procedures:
    ☐ Promotes gang activities [Title 15, 3023 (a)]
    ☐ Unauthorized business dealings [3024 (a)]
    ☐ Unauthorized inmate to inmate correspondence [Title 15, 3139]
    ☐ Unauthorized inmate to parolee / probationer correspondence [Title 15, 3140]
    ☐ Third party correspondence [OP 205, Attachment 8, #32]
    ☒ Use of fictitious name or address [U.S.C.S. Title 18, Section 1342, OP 205]
    ☐ Other (describe): _____
☐ It incites physical harm to a person or group of persons
☐ It incites disruption of the order in a facility, such as riot, escape, strike, etc.
☐ It contains coded messages
☐ It contains obscene or sexually explicit material, or portrays nudity
☒ It is deemed to be a threat to legitimate penological interests.
☐ It contains material or literature which would pose a threat to institutional security or the safety of other persons if allowed to be possessed by inmates.
Additional Information: NAME ON RETURN ADDRESS NOT RECOGNIZED BY CDCR RECORDS.
The disposition of the letter is as follows:
☒ Retained by Investigative Services Unit for investigation / potential disciplinary or court proceedings.
☐ Returned to sender in accordance with Section 3147 (a) (5) (B) or 3147 (a) (6).
☐ Placed in Central File in accordance with Title 15, Section 3147 (a) (7).

Reporting Employee:                        Correspondence Disapproval Authorized By (Captain level or above):

T. PUENTE                                K. BRANDON
Correctional Officer                          Correctional Captain
Institutional Gang Investigations             Investigative Services Unit

Correspondents are personally responsible for the content of each item of mail they send into or out of a correctional facility. Any violation of laws governing mail will be referred to postal authorities and to appropriate criminal authorities. Violations of law, the policies and regulations or of approved facility mail procedures may result in the temporary suspension or denial of correspondence between the persons involved. [Section 3132 (a)].  Inmates may appeal the stopped mail utilizing the departmental appeal process.

cc:      C-File
            AWC File
            Investigative Services Unit
            Inmate
            Sender (incoming correspondence only)

DATE:   4/9/2008        STOPPED MAIL NOTIFICATION      GENERAL CHRONO

DATE FORWARDED TO INMATE:  4-11-08

= EXHIBIT =

=EXHIBIT=

5/24/08

To: Robert Horel, Warden
Pelican Bay State Prison, Admin. Office
5905 Lake Earl Dr./ P.O. Box 7000
Crescent City, CA 95532

Re: Citizen Complaint

Dear Warden Horel

As you may or may not recall, a citizen complaint was filed with your agency on February 6, 2007, which was forwarded to your office for a response in March of 2007. In this complaint submitted on behalf of CDCR prisoners, like Williamson, J (CDCR no. 34288) housed here in your prison SHU, there was of central concern issues raised regarding the mistreatment of prisoners there.

It has been brought to my attention that some non-mailroom employees (i.e. J. Puente, B. Thornton, et. al) have been practicing acts of stealing the lawful mailings of prisoners and myself and others with whom prisoners are corresponding. By usurping CDCR-PBSP's established mail rules, regulations and procedures, these employees are harassing these prisoners for simply exercising their first amendment protected rights to complain, file grievances and petition the government for redress without being subjected to retaliatory acts of harassment and retaliation.

These employees are violating numerous CDCR state and federal laws and should be removed from any post that is allowing such castigatory acts and practices. Furthermore, they should be informed of the CDCR mail rules and regulations including Cal. Code Regulations 3130/PBSP O.P. 205 VI (0), 3147 (a)(6) that is clear that CDCR/PBSP "encourages correspondence" between prisoners and those on the outside. All correspondence which will be handled and processed by the CDCR-PBSP mailroom (which employees Puente, Thornton, et al is not assigned to) and when stopped will be returned to the inmate our mailed out to the correspondence recipient. (CDCR 3147 (a)(6) & PBSP O.P. #205VI, (0).

It is requested that you or the CDCR Secretary James Tilton intervene and rectify this matter promptly by processing Mr. Williamson and other similar-situated PBSP SHU prisoners' incoming and outgoing mail. Your professional cooperation in this matter is appreciated.

*Ashley Gregory*

Ashley Gregory
J. Wiliamson
Bar None

=EXHIBIT=